# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **EZRA SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION FILE NO.** |
| | ) | **1:24-cv-05158-TWT** |
| **v.** | ) | |
| | ) | |
| **DEPUTY MONIQUE TRACEY,** | ) | |
| **DEPUTY RAUL GOMEZ, DEPUTY** | ) | |
| **SHENEQUA JACKSON, and ERICA** | ) | |
| **SANCHEZ,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT ERICA SANCHEZ'S
## BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendant Erica Sanchez ("Defendant Sanchez") submits her Brief in Support of her Motion to Dismiss.

## I.    PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Sanchez requests that this Court dismiss Plaintiff's claims against her because Plaintiff has failed to state any claim upon which relief can be granted. Although Plaintiff's Complaint is unclear, Defendant believes Plaintiff is attempting to allege individual claims for deliberately indifferent medical care against Defendant Sanchez.

Plaintiff has failed to allege facts sufficient to meet the elements of his Section 1983 claim or adequately shown that this Defendant exhibited a deliberate

1

indifference based on her actions. Plaintiff's claim against Defendant Sanchez do not allege factual allegations sufficient to meet the elements of deliberate indifference because Plaintiff has failed to plead an objectively serious deprivation of medical care and a subjective intent to punish through conduct. *See Woods v. Miller*, 215 F. App'x 796, 797 (11th Cir. 2007) (explaining that to state a claim for relief under Section 1983 and the Eighth Amendment that "a prisoner must allege, first, a condition that constituted an objectively 'cruel and unusual deprivation,' and second, that the officials responsible for the condition had a subjective intent to punish."). Plaintiff only alleges conclusory statements, which appear to effectively state that because he attempted suicide in custody, Defendant Sanchez must have committed or somehow participated in a Section 1983 violation. This type of pleading is insufficient and the claim should be dismissed.

Plaintiff's overarching allegations relate to conditions created by deputies at the jail. If Plaintiff's contentions are that the conditions at issue relate to the actions of the deputies, Defendant Sanchez cannot be liable because she had no responsibility for the conditions, no knowledge of the conditions, no control over the conditions, and no authority or time to correct the conditions. Plaintiff's Complaint improperly conflates the knowledge, duties, and actions of Defendant Sanchez, a nurse working on the medical staff, with the deputies working at the jail. When Defendant Sanchez's responsibility and subjective knowledge are decoupled from

the deputies' responsibility and knowledge, the Section 1983 claim against her is not cognizable and must be dismissed.

In addition to the substantive dismissal grounds, Plaintiff's entire Complaint should be dismissed because it is an impermissible shotgun pleading. As discussed below, Plaintiff's pleading does not give Defendant adequate notice of the specific claim against her and the grounds upon which the claim rests and, accordingly, should be dismissed. *McDonough v. City of Homestead*, 771 F. App'x 952, 955 (11th Cir. 2019).

## II.    BRIEF STATEMENT OF FACTS

On November 11, 2024, Plaintiff filed his Complaint against Defendant Sanchez attempting to allege a Section 1983 claim (deliberately indifferent medical care under Eighth and Fourteenth Amendments) and punitive damages. *See* Compl. (Doc.-1), *generally*. Defendant Sanchez was served on January 29, 2025. Feb. 4, 2025 Proof of Service (Doc.-2). According to the Complaint, Defendant Sanchez was an employee of NaphCare, which contracts with Rockdale County, Georgia to provide healthcare services at the Rockdale County Jail ("Jail"). Compl. at ¶8.

The Complaint arises out of the care or treatment of Ezra Smith, who was detained at the Jail on July 8, 2024.[1] *See* Compl., ¶15. On that same day, Mr. Smith

---

[1] The Complaint also details Mr. Smith's history with the Rockdale County Jail and mental health history. [Complaint, ¶¶9-14.]

was placed in Holding Cell 7, awaiting processing. *Id.* At ¶15. "At around 8 p.m. one of the individuals incarcerated in Cell 7 called Deputy Tracey over the intercom to tell her that 'this white guy says he wants to kill himself,' referring to Plaintiff. Deputy Jackson also heard that call. Neither deputy reported the situation to their supervisors or medical staff, nor did they take any action." *Id.* at ¶16. There is no allegation that Defendant Sanchez was present for or made aware of this communication. *See id.*, *generally*.

While the Complaint does not list the timing, sometime thereafter, Plaintiff's mother called the jail and spoke with Deputy Tracey. *Id.* at ¶17. His mother allegedly informed the deputy that he had just gotten out of a crisis center, that she was trying to get Plaintiff into an outpatient center, and that he was suicidal. *Id.* Deputy Tracey then stated that she would look out for Plaintiff, but that booking was currently backed up. *Id.* There is no allegation that Defendant Sanchez was present for or made aware of these communications. *See id.*, *generally*.

Allegedly, Plaintiff became frustrated with the long wait time, and around 1:25 a.m., he started banging on the cell window and kicking on the cell door. *Id.*, at ¶19. Around 1:28 a.m., Deputy Tracey went over to Plaintiff's cell and Plaintiff asked what was going on with his booking. *Id.*, at ¶21-22. Then, "Deputy Tracey told [Plaintiff] that he was acting like a 'spoiled asshole' and that his mother had called about him." *Id.*, at ¶23. According to the Complaint, Plaintiff allegedly "told

Deputy Tracey, in the presence of Deputy Gomez and Nurse Sanchez, that he was going to kill himself. According to Deputy Gomez and Nurse Sanchez, Deputy Tracey replied, "'go kill yourself then.'" *Id*., at ¶24. Allegedly, Deputy Tracey said this four times and also told Plaintiff to "be a man about it." *Id*., at ¶25.

A few minutes after the officers left, Mr. Smith began to hang himself with the cord from the telephone in his cell. *Id*., at ¶28. The screenshot of surveillance video at 1:32:32 a.m. shows Plaintiff's feet, which is purportedly after he attempts to hang himself. *See id.* at ¶¶26-29.

"Approximately 5 minutes after she left Mr. Smith, Deputy Tracey returned to Cell 7 and looked in. She then called for help, and Deputy Jackson grabbed the cell door keys and opened the door." *Id*. at ¶30. When they arrived, Plaintiff's "face was blue, he had blood coming from his nose and urine on his jumpsuit, and the telephone cord was wrapped around his neck." *Id*. at ¶31; *see also* Exh. A (Plaintiff's Naphcare Records) at 51. Deputy Jackson removed the cord and placed him on his back while Defendant Sanchez came in the room and started CPR. *Id*. at ¶¶32-33. Plaintiff had no pulse and was not conscious at that time. *Id*. at ¶33. According to the Complaint, [a]t around 1:39 a.m., staff placed an oxygen mask on Mr. Smith. At almost 1:40 a.m., Mr. Smith was revived and started breathing again." *Id*. at ¶35. Plaintiff was then transported to the hospital via EMS. *Id*. at ¶36.

After this event, Deputy Tracey was terminated from Rockdale County Sheriff's Office *Id*. at ¶39. Further, the agency determined that "Deputies Gomez and Jackson violated jail policies and procedures for 'failure to place [Mr. Smith] within the Suicide Watch protocol' having knowledge that he stated he was going to commit suicide." *Id*.

There is no allegation that Defendant Sanchez knew about Plaintiff and his presence in the Jail before 1:28:47 a.m. or that she was ever made aware of Plaintiff's name or other identifying information sufficient to obtain Plaintiff's medical history or information while he was awaiting processing. Additionally, Plaintiff was not located within Defendant Sanchez's queue for any medical or mental health treatment or assessment. *See* Exh. A at 51. Finally, because Plaintiff had not yet been processed, Defendant Sanchez was not yet responsible for providing medical services to Plaintiff. *See* Compl., ¶¶15, 18-19; Exh. B. (Health Care Services Agreement) at 1.[2]

---

[2] "Contractor agrees to provide health care, dental, mental health and software services to individuals ("inmates") under the custody and control of the Rockdale County Sheriff's Office who have been physically booked within the Rockdale County Jail . . ."

## III.    ARGUMENT AND CITATION OF AUTHORITY

A. Plaintiff Has Not Stated A Cognizable Claim Against Defendant Sanchez.

*1. Legal Standard*

In reviewing whether a plaintiff has stated a claim, the Courts accept "the allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Woods v. Miller*, 215 Fed. Appx. at 797.

"A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth – legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010).

To state a claim for relief under Section 1983, "a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Id.* And for violations of the Eighth and Fourteenth Amendment an inmate must "allege, first, a condition that constituted an objectively 'cruel and unusual deprivation,' and second, that the officials responsible for the condition had a subjective intent to punish." *Id.* (emphasis added). Plaintiff has failed to plead these required elements within his Complaint and his failure requires dismissal.

2.  *Plaintiff's Claims Against Defendant Sanchez Are Insufficient*

    a.  <u>Controlling Precedent for Use and Review of Documents Referred to by Plaintiff.</u>

To make the proper determination relating to this motion, this Court can review Plaintiff's medical records and the Health Care Services Agreement without converting this motion to a motion for summary judgment. "[T]here are two exceptions to this conversion rule: (1) the incorporation-by-reference doctrine and (2) judicial notice." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298 (11th Cir. 2024) *citing and following Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337 (11th Cir. 2005). This Court first must find that the documents are central to the plaintiff's claims; and then that authenticity of the documents cannot be challenged. *Id.* at 1300. Both requirements are met in this case, and the evidence that supports them are in Plaintiff's complaint.

The records are central to Plaintiff's claims because Plaintiff cited or referred to them in his complaint. Compl. at ¶¶12, 33, and 37. He is also attempting to use them – at least in part – as the basis for his claims. *Id.* Plaintiff cannot credibly attack the authenticity of the documents on which they rely. Therefore, this Court can review and use Plaintiff's medical records when deciding this motion to dismiss.

Similarly, this Court can review the Health Care Services Agreement because Plaintiff refers to them in his Complaint and they are public record. The Court may take judicial notice of publicly available documents provided that they are "'not

subject to reasonable dispute' because they [are] 'capable of accurate and ready determination by resort to sources whose accuracy [can]not reasonably be questioned.'" *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (quoting Fed. R. Evid. 201(b)). Not only does Plaintiff refer to and rely upon it within his Complaint and utilize it in support of his claim against Defendant Sanchez, but the document can be verified through multiple sources.[3] *See* Compl. at ¶9. Accordingly, the Court should take judicial notice of and consider both the medical records and Health Care Services Agreement in considering the instant Motion.

### b. *Controlling Precedent for Section 1983 Claims.*

Plaintiff has not properly stated a Section 1983 claim against Defendant Sanchez. To properly allege the purported constitutional violations, Plaintiff must state that Defendant Sanchez was deliberately indifferent to Plaintiff's serious medical needs. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

To successfully plead this claim, Plaintiff must show an "objectively serious deprivation of medical care" and "a subjective intent to punish" by an official responsible for the condition. *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011); *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir.2000). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one

---

[3] The Rockdale County Procurement Division provides a public record of all current, pending, and awarded bids, including copies of documents related to those bids within its document library.

that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. The Eleventh Circuit Court of Appeals has further (and clearly) stated the requisite analysis for a defendant's intent as follows:

> [I]n addition to an "objectively serious" deprivation, a deliberate-indifference plaintiff must show that the defendant acted with "subjective recklessness as used in the criminal law," and that in order to do so, the plaintiff must demonstrate that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm. We add the caveat, likewise prescribed by *Farmer*, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he cannot be found liable under the Cruel and Unusual Punishments Clause if he "responded reasonably to that risk."

*Wade v. McDade*, No. 106 F.4th 1251, 1253 (11th Cir. 2024) (internal citations omitted).

c. *Analysis of Law and Fact.*

Because "not every injury suffered by an inmate at the hands of his jailors violates the Constitution," when applying the pleading rules and Section 1983 jurisprudence to this matter, Plaintiff's claim (Count II) fails against Defendant Sanchez. *See id*. at 1256 (explaining Section 1983 liability analysis). Plaintiff attempts to allege that Defendant Sanchez's responses to Plaintiff's serious medical condition rises to the level of a Section 1983 violation. Plaintiff's complaint states the following, in relevant part:

10

12. Nurse Sanchez was one of the nurses who administered drugs to Mr. Smith in May 2024. She administered or attempted to administer olanzapine and hydroxyzine pamoate to Mr. Smith. The former is an antipsychotic mediation used to treat schizophrenia and bipolar disorder, and the latter helps control anxiety.

47. Specifically, each Defendant, separately, knew or should have known that Mr. Smith faced a substantial risk of serious self-harm because Mr. Smith had reported to the jail a history of previous suicide attempts, including an attempted hanging at the jail by a telephone cord, and because they heard Mr. Smith threaten to commit suicide. Additionally, Deputies Tracey and Jackson heard other detainees tell them that Mr. Smith threatened to commit suicide earlier in the day

. . .

50. Deputy Gomez and Nurse Sanchez knew that Mr. Smith had threatened suicide after slamming and banging on the door and window in his cell. They also heard Mr. Smith express suicidal intentions and heard Deputy Tracey respond, encouraging him to commit suicide.

51. Each ignored and were deliberately indifferent to the above-referenced substantial risks of serious self-harm by failing to act to place Mr. Smith on suicide watch or take other measures to ensure his safety and well-being.

For the purposes of this Motion, Defendant Sanchez does not dispute that a suicidal state of mind is a serious medical condition. Instead, first, Defendant Sanchez disputes that she was responsible for said condition. Plaintiff has failed to plead such and the Health Care Services Agreement further supports that she was not responsible for his condition. As an employee of NaphCare, Defendant Sanchez

was required to provide medical services once Plaintiff was physically booked into the Jail. *See* Exh. B at 1. Plaintiff was never booked. Consequently, Plaintiff was not located within Defendant Sanchez's queue for any medical or mental health treatment or assessment. *See* Exh. A at 51. In fact, Defendant Sanchez was not even aware of Plaintiff's presence until less than four minutes before his suicide attempt. Accordingly, Plaintiff has failed to allege (and cannot allege) that Defendant Sanchez was responsible for Plaintiff's medical condition and dismissal is appropriate.

Even if the Court finds that Plaintiff has sufficiently pled that Defendant Sanchez was responsible for his condition (which he has not), based on *Wade*, Plaintiff must allege sufficient facts (not unsupported legal conclusions) showing that Defendant Sanchez *subjectively knew* that her actions or inactions would cause a substantial risk of serious harm, with the harm in this case being Plaintiff's attempted suicide. *See id.* at 1253 & 1258. Plaintiff cannot meet this burden.

Again, Defendant Sanchez was not aware that Plaintiff was an inmate who had to be assessed. Logically, for Defendant Sanchez to have subjective knowledge that her action would impact Plaintiff, she must be aware of him and his purported conditions. A review of the Complaint shows that during the July Incident that gives rise to this lawsuit, Defendant Sanchez only became aware of Plaintiff at approximately 1:28 a.m., when she was purportedly in "earshot" of his banging on

12

the window and kicking the door.[4] Defendant Sanchez said the following in the

NaphCare Medical Emergency Code Report:

> Prior to this incident, apparently, he was waiting in cell 7
> since previous shift. He was not showing in the booking
> queue to be screened. Patient started banging on door
> wanting to know what is going on with his process.

Exh. A at 51. The facts show that prior to 1:28 a.m., Defendant Sanchez did not

know who, if anyone, was present in the Cell 7 because there was no one in her

queue to assess and no one made her aware of Plaintiff's identifying information.[5]

Therefore, she could not have known about any suicidal ideations, prior treatments,

or prior conditions because she was not aware of Plaintiff. If she did not have any

information about Plaintiff or his conditions, under the *Wade* analysis, she could not

have subjectively appreciated how, if at all, her actions or inactions would impact

him.

Defendant Sanchez did not have time to become aware of Plaintiff, have

knowledge of a serious medical condition, and respond differently. If Defendant

Sanchez does not know that her actions or inactions would cause or allow for

---

[4] Notably, Plaintiff's allegations about past knowledge of suicidal tendencies are an unsupported conclusion because there are no facts that Defendant Sanchez knew of any inmate or his identity in Cell 7 before 1:28 a.m.

[5] Plaintiff's Complaint is contradictory in that it states "[s]pecifically, each Defendant, separately, knew or should have known that Mr. Smith faced a substantial risk of serious self-harm because Mr. Smith had reported to the jail a history of previous suicide attempts, including an attempted hanging at the jail by a telephone cord, and because they heard Mr. Smith threaten to commit suicide." *See* Compl. at ¶47. At the same time, Plaintiff alleges that Defendant Sanchez only heard the banging and the interactions between Deputy Tracey and Plaintiff where Deputy Tracey encouraged Plaintiff to commit suicide. *See id.* at ¶50. Plaintiff is improperly conflating the subjective knowledge of each Defendant.

Plaintiff to hang himself, Plaintiff cannot meet his pleading burden. According to the Complaint, not quite four minutes after Defendant Sanchez became aware that *someone* was in Cell 7, a screenshot shows Plaintiff's feet in camera view. Compl. at ¶28. Logically, this screenshot timing shows that Plaintiff and the deputies were able to have communications, Plaintiff begins to hang himself, and Plaintiff begins to feel the effects in the four-minute period. For Defendant Sanchez, there is not sufficient time for her to *know* that her actions or inactions (assuming she had time to contemplate that there was something that she could or could not do) would cause or allow for Plaintiff's suicide attempt. When Defendant Sanchez's knowledge is not conflated with the deputies' knowledge and unsupported conclusions, the *factual* allegations only show that Defendant Sanchez had a matter of a few minutes to assess and become reasonably aware of Plaintiff and his circumstances. Assuming Plaintiff's allegations are true, there is no showing and no reasonable inference that Defendant Sanchez could have subjectively known the impact of her actions upon the then-unknown inmate.

Relatedly, Defendant Sanchez acted reasonably under the then-existing circumstances. "Even if the defendant actually knew of a substantial risk to inmate health or safety, [s]he cannot be found liable under the Cruel and Unusual Punishments Clause if [s]he responded reasonably to the risk." *Wade*, 106 F.4th at 1262. For this portion of the argument, we will assume that the limited conversations

she heard among Plaintiff and the deputies were sufficient to give Defendant Sanchez enough information to know that Plaintiff had suicidal ideations *and* that her conduct could cause a substantial risk of serious harm. Although the few minutes she had were not enough to have the required subjective knowledge, she acted reasonably. Again, logically, Defendant Sanchez was not a deputy who could remove Plaintiff from Cell 7,[6] but (if the deputies had given her sufficient identifying information – which is not alleged) she could research him, his conditions, and the circumstances to determine the next steps. Before any steps could be reasonably performed, a medical emergency occurred. When this emergency was communicated to her, she started CPR immediately, EMS was called, Plaintiff was resuscitated, and he was alert and stable when EMS arrived. Exh. A at 51. Defendant Sanchez's actions were reasonable and because her actions were reasonable, Plaintiff has failed to plead and cannot plead a viable Section 1983 claim against her. Accordingly, the Complaint should be dismissed against her.

### A. Shotgun Pleading

#### 1. *Legal Standard*

In addition to the substantive attack on the claims, to survive a 12(b)(6) motion to dismiss, a complaint must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires a complaint to include "a short and plain

---

[6] Plaintiff's Complaint states that a deputy had to grab the keys to open the cell. Compl. at ¶30.

statement of the claim showing that the pleader is entitled to relief." Rule 10(b) requires the following:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty, Sheriff's Off.*, 792 F. 3d 1313, 1320 (11th Cir. 2015).

Plaintiff's complaint is an impermissible shotgun pleading that should be dismissed. The Eleventh Circuit has determined that there are four prevailing types of shotgun pleadings,[7] and Plaintiff's complaint has traits of two types criticized by the Courts.

## 2. *Conclusory Allegations*

Plaintiff's Complaint should be dismissed for "being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of

---

[7] *Weiland*, 792 F. 3d at 1321-23. ("The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.")

action." *See id*. at 1322. Throughout Plaintiff's Complaint, he simply states, without the proper support, that the defendants have violated his constitutional rights. As to Defendant Sanchez, as detailed more fully *supra*, Plaintiff makes conclusory statements regarding her subjective knowledge, her actions, and to what extent her purported actions allegedly violated Plaintiff's constitutional rights. The allegations are simply regurgitations of the elements of a cause of action and in contravention to the records. Because the labels and conclusions involving Defendant Sanchez are not sufficient, Plaintiff's Complaint should be dismissed. *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) ("Where the allegations are merely 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' the plaintiff's claim will not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).").

### 3. *Multiple Defendants*

Plaintiff's Complaint, without clarity, lumps all defendants together in the Section 1983 claim without delineating which allegations, if any, apply to Defendant Sanchez. Plaintiff's Complaint makes, without the proper support, conclusory statements regarding the actions of all defendants with no distinction among the other defendants and Defendant Sanchez. Plaintiff also casually lumps together multiple defendants, their actions, their subjective knowledge, the standard of care applicable to them, and the extent to which these purported actions allegedly violated

17

Plaintiff's constitutional rights. Interestingly, Plaintiff separates out allegations against Deputies Tracy and Jackson when lumping other Defendants together, indicating Plaintiff knows how to avoid a shotgun pleading. And yet, Plaintiff still lumps Defendant Sanchez in with other Defendants with no particularity. Because the labels and conclusions involving Defendant Sanchez are not sufficient as detailed *supra*, Plaintiff's complaint should be dismissed.

Each of these sets of deficiencies have caused the unified concerns that courts have worked to avoid, which is when complaints "fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. As such, Plaintiff's complaint is a shotgun pleading that must be dismissed.

## IV.   <u>CONCLUSION</u>

Defendant Sanchez requests that this Court dismiss Plaintiff's Complaint in its entirety as it fails to state claims against her, and it is a shotgun pleading in violation of the Federal Rules of Civil Procedure.

Defendants certify that this brief has been prepared with one of the font and point selections approved by the Court in LR 5.1(B) and the brief does not contain more than 10 characters per inch of type.

Respectfully submitted this 19th day of February, 2025.

/s/Antonio E. Veal
Michael G. Frankson
Georgia Bar No.: 173835
Antonio E. Veal
Georgia Bar No.: 460007
Lindsey Adams
Georgia Bar No.: 288816

*Counsel for Defendant Erica Sanchez*

HUFF, POWELL & BAILEY, LLC
999 Peachtree Street, Suite 950
Atlanta, Georgia 30309
Telephone: (404) 892-4022
Fax: (404) 892-4033
Email: mfrankson@huffpowellbailey.com
Email: aveal@huffpowellbailey.com
Email: ladams@huffpowellbailey.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned counsel certifies that the foregoing DEFENDANT ERICA

SANCHEZ'S BRIEF IN SUPPORT OF MOTION TO DISMISS was electronically

filed using the CM/ECF system which will automatically send e-mail notification of

such filing to all attorneys of record.

James M. Slater
Slater Legal PLLC
2296 Henderson Mill Road, NE, Number 116
Atlanta, Georgia 30345
james@slater.legal

Respectfully submitted this 19th day of February, 2025.

*/s/Antonio E. Veal*
Michael G. Frankson
Georgia Bar No.: 173835
Antonio E. Veal
Georgia Bar No.: 460007
Lindsey Adams
Georgia Bar No.: 288816

*Counsel for Defendant Erica Sanchez*

HUFF, POWELL & BAILEY, LLC
999 Peachtree Street, Suite 950
Atlanta, Georgia 30309
Telephone: (404) 892-4022
Fax: (404) 892-4033
Email: mfrankson@huffpowellbailey.com
Email: aveal@huffpowellbailey.com
Email: ladams@huffpowellbailey.com