UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EZRA SMITH,

Plaintiff,

v.

DEPUTY MONIQUE TRACEY, *et al.*,

Defendants.

Civil Action No.: 1:24-cv-05158-TWT

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT ERICA SANCHEZ'S MOTION TO DISMISS**

Plaintiff Ezra Smith's complaint alleges that Defendant Erica Sanchez, a nurse at the Rockdale County jail, knew that Plaintiff, a person incarcerated there, warned jailers that he was suicidal. She also knew that a deputy responded by that warning by taunting Plaintiff and daring him to commit suicide. Defendant Sanchez knew that Plaintiff was alone in a jail cell, and that he had access to a telephone cord that he could easily use to kill himself. In response, Defendant Sanchez did nothing. Shortly thereafter, Plaintiff wrapped the telephone cord around his neck and was nearly successful in killing himself.

Defendant Sanchez now asks this Court to dismiss this lawsuit against her. Her arguments ignore the pleading standards, improperly rely on evidence outside

the complaint, and ask the Court to construe that evidence in her favor. She also reframes Plaintiff's deliberate indifference claim against her, and, befuddlingly claims that Plaintiff's complaint is a shotgun pleading. All of these arguments ignore the clear factual allegations against her which state a § 1983 claim for deliberate indifference.

## I. STANDARD OF REVIEW

At the pleading stage, a plaintiff need only provide a "short and plain" statement setting forth claims for relief. Fed. R. Civ. P. 8(a)(2). A pleading survives a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). When considering a defendant's motion to dismiss, a court must take all facts stated in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006) (citation omitted). This threshold "is not akin to a 'probability requirement'"—the plaintiff must merely allege "'enough fact to raise a reasonable expectation that the discovery will reveal evidence' of the claim." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## II. STATEMENT OF THE CASE

Ezra Smith, who had a history of mental health disorders and suicidal behavior, was taken into custody at the Rockdale County Jail on or about July 8, 2024. *See* Compl. ¶¶ 9, 15. He was placed in Holding Cell 7, where he was held with others who were waiting to be processed by jail staff. *Id.* at ¶ 15.

At around 8 p.m. that day, one of the other individuals in Holding Cell 7 called over the jail intercom and told Defendant Deputy Tracey that "this white guy says he wants to kill himself," referring to Mr. Smith. *Id.* at ¶ 16. Defendant Deputy Jackson also heard this conversation, but neither deputy reported this situation or took any action. *Id.*

Later that evening, Mr. Smith's mother called the jail and spoke to Deputy Tracey. *Id.* at ¶ 17. She told Deputy Tracey that Mr. Smith had just been released from a mental health crisis center, he was suicidal, and that she had never seen her son like this. *Id.*

Eventually, everyone else in Holding Cell 7 was processed except for Mr. Smith. *Id.* at ¶ 18. He became frustrated and after 1:25 a.m., he started to bang on the window and kick the cell door. *Id.* at ¶ 19. Defendant Sanchez and the named deputies were all present in the area and could hear Mr. Smith banging on the window with his fists and kicking the door. *Id.* at ¶ 20. Deputy Tracey then

approached the cell, followed by Defendant Deputy Gomez, while Defendant Sanchez could hear what was happening. *Id.* at ¶ 21.

Defendant Sanchez recalled that Mr. Smith asked Deputy Tracey why he had not yet been booked and processed. *Id.* at ¶ 22. While able to hear the conversation, Deputy Tracey told Mr. Smith that he was acting like a "spoiled asshole" and that his mother had called about him. *Id.* at ¶ 23. Mr. Smith told Deputy Tracey in the presence of Defendant Sanchez and Deputy Gomez that he was going to kill himself. *Id.* at ¶ 24. According to Defendant Sanchez, Deputy Tracey told Mr. Smith "go kill yourself then." *Id.* According to Deputy Gomez's report, Deputy Tracey said this four times while also telling Mr. Smith "to be a man about it" and that she wanted to see him commit suicide. *Id.* at ¶ 25. Defendant Smith was in earshot of this conversation and had reported its contents. *Id.* at ¶¶ 21–22, 24. Deputy Tracey then made a hanging gesture with her hand to Mr. Smith:



*Id.* at ¶ 26.

The deputies and Defendant Sanchez each knew that there was a telephone in Holding Cell 7 that was attached by a cord. *Id.* at ¶ 27. After the officers left the area, Mr. Smith began to hang himself by wrapping the telephone cord in the cell around his neck. *Id.* at ¶ 28. His face was not captured by the camera in the cell, but the camera footage depicted his feet quickly fluttering around until he eventually stopped moving. *Id.*

After several minutes, Defendant Sanchez and the other defendants noticed that Mr. Smith was no longer banging at the door. *Id.* at ¶ 29. Deputy Tracey went to the cell to look in—about five minutes after she left—and found Mr. Smith with the telephone cord around his neck. *Id.* at ¶¶ 30, 31. Deputy Jackson grabbed the keys and opened the door. *Id.* Mr. Smith's face was blue, blood was coming from his nose, and he had urine on his jumpsuit. *Id.* at ¶ 31. Deputy Jackson unwrapped the cord and Defendant Sanchez entered the cell to perform chest compressions. *Id.* at ¶¶ 32–33. Defendant Sanchez reported that he had no pulse and was not conscious. *Id.* Ultimately, Mr. Smith was revived several minutes later. *Id.* at ¶ 34. He was taken to a hospital and then to a psychiatric facility. *Id.* at ¶ 36. He was diagnosed with myalgia, conjunctival hemorrhage, elevated blood pressure, transaminitis, and major depressive disorder. *Id.* at ¶ 37.

Count I of the complaint alleges Deputies Tracey and Jackson were deliberately indifferent to Plaintiff's serious risk of self-harm in violation of the Fourteenth Amendment. Count II alleges Deputies Tracey, Jackson and Gomez and Defendant Sanchez are liable for their respective failures to appropriately respond to Mr. Smith's serious risk of self-harm after hearing him slam and bang on the cell door and window, threaten suicide, and hear Deputy Tracey encourage him to commit suicide.

## III. ARGUMENT AND CITATION OF AUTHORITY

### a. The Court should reject Defendant Sanchez's invitation to venture outside the four corners of the complaint

Defendant Sanchez submitted Plaintiff's medical records[1] and the health services contract between her employer and Rockdale County in support of her motion to dismiss. *See* Doc. 12. This Court should not consider that evidence when ruling on her Rule 12(b)(6) motion.

---

[1] Defendant's access to and, submission of, 290 pages of Mr. Smith's medical records appears to violate the Health Insurance Portability and Accountability Act. *See* 45 C.F.R. § 164.512(e). Defendant Sanchez does not have Mr. Smith's authorization to use and disclose those records and has not utilized legal process to obtain them. While those records will inevitably be disclosed in discovery pursuant to an appropriate protective order, no protective order is in place, and Mr. Smith has not had the opportunity to lodge any objection to the scope of disclosure of his medical records as he would have if Defendant Sanchez had utilized a lawful process to obtain his records.

Defendant Sanchez relies on the Eleventh Circuit's decision in *Johnson v. City of Atlanta*, 107 F.4th 1292 (11th Cir. 2024), which held that two elements that must be met before a court may consider extrinsic evidence on a Rule 12(b) or (c) motion: the item must be "(1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Id.* at 1300.

While the panel in *Johnson* considered whether body-camera and dashcam footage were central to allegations involving use of force in a police encounter, here Defendant Sanchez argues that Mr. Smith's medical records and her employer's contract with the jail are central to his claims involving her deliberate indifference to his serious risk of self-harm in the moments she observed his erratic behavior and heard his intention to commit suicide and Deputy Tracey's words and gestures in support of that plan. Not so.

A document is not "central" to a plaintiff's complaint just because it may or may not contain relevant information or facts. *See Adamson v. Poorter*, 2007 WL 2900576, at *3 (11th Cir. Oct. 4, 2007). In the deliberate indifference context, sister courts have determined that medical records are inappropriate for consideration at the dismissal stage when they are not critical to supporting or negating the theory of deliberate indifference. *See Williams v. Dixon*, 2024 WL 2387383 (M.D. Fla. May 23, 2024); *see also Cineus v. Fla. Dep't of Corr.*, 2022 WL 4448599 (M.D.

Fla. Sept. 23, 2022). In *Cineus*, for example, the court determined that reliance on medical records was premature without the benefit of discovery. 2022 WL 4448599, at *4. And although the plaintiff had referred to medical records to identify and confirm treatment in that case, the plaintiff did "not otherwise quote or rely on the medical records *to support the deliberate indifference claim against [the prison medical provider]*." *Id.* (emphasis supplied). Indeed, the court concluded that the medical records were not "central" to the claim, because the plaintiff could present testimony by witnesses, rather than introducing medical records, to prove deliberate indifference. *See id.* (citing *Finan. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284–85 (11th Cir. 2007) ("[T]he First Circuit has held, with respect to a complaint alleging libel and other related claims, that a magazine article referred to in the complaint and attached to the defendant's motion to dismiss was central to the plaintiffs' claim because '[p]laintiffs unquestionably would have had to offer a copy of the article in order to prove their case,'" quoting *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988)).

Here too, Mr. Smith's complaint does not rely on his medical records. The only references to the records that relate to Defendant Sanchez are that she had administered antipsychotics and anxiety medication to him during a previous detention at the jail several months earlier. *See* Doc. 1 ¶ 12. While these allegations

establish that Defendant Sanchez had prior knowledge of Mr. Smith's mental health issues, nothing about Mr. Smith's previous treatment is relevant to what she observed nor her failure to respond on the day of his suicide attempt. Nor does Defendant Sanchez claim that the medical records contradict any of the allegations in the complaint, which means that Mr. Smith's allegations control. *See, e.g.*, *Miller v. City of Atlanta, Georgia*, 2022 WL 4587848, at *6 (N.D. Ga. Sept. 29, 2022) ("But having reviewed the law enforcement materials and construing any ambiguities therein in Plaintiffs' favor, the Court concludes that this evidence is not inconsistent with the allegations in the FAC. Accordingly, the Court accepts the well-pleaded allegations as true and construes them in the light most favorable to Plaintiffs.").

Use of these documents at this stage of litigation also violates Rule 12(d), which requires that when a court considers evidence outside the pleadings, it must convert the motion to one for summary judgment. *See also Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413, 415 (5th Cir. 1980).

Defendant Sanchez's submission illustrates the need for Rule 12(d). Sanchez relies on the records to offer her purported subjective awareness and defeat any inferences that could be drawn in Mr. Smith's favor. She claims that "[t]he facts show that prior to 1:28 a.m., Defendant Sanchez did not know who, if anyone, was

present in the Cell 7 because there was no one in her queue to assess and no one made her aware of Plaintiff's identifying information." Doc. 11-1 at 13. Where the Eleventh Circuit in *Johnson* determined that video footage of an incident could supplement a complaint where it was "central" and undisputed, here, Defendant Sanchez offers extrinsic records to explain her state of mind. To allow Defendant Sanchez to do this goes well beyond reviewing video footage of an incident to negate the pleadings. And it is telling that Defendant Sanchez goes to lengths to explain her state of mind through these records while ignoring that there is one document outside the four corners of the Complaint on which Mr. Smith relied and is arguably "central" to the claims—Defendant Sanchez's post-incident statement about the shocking things she observed and ignored before Mr. Smith's suicide attempt. *See* Doc. 1 ¶¶ 21–22, 24 (relying on Defendant Sanchez's statements and observations). But this is not summary judgment or trial, and the Court should decline Defendant Sanchez's invitation to consider irrelevant records and competing evidence.

Finally, while the medical records may not be hearsay, Defendant Sanchez's out-of-court statements in them are. And Defendant Sanchez cannot be the proponent of her own out-of-court statements. Thus, even if the medical records were "central," Defendant Sanchez's hearsay statements in them are subject to

dispute.

To whatever extent the Court considers the documents submitted by Defendant Sanchez, Mr. Smith addresses the substance of that evidence below.

**b. The complaint states a claim against Defendant Sanchez for deliberate indifference to a strong likelihood of self-harm**

A prison official[2] acts with deliberate indifference if she (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness." *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) (citation omitted). In the context of a jail suicide, "deliberate indifference requires that the defendant deliberately disregard a strong likelihood rather than a mere possibility that the self-infliction of harm will occur. [T]he mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1268-69 (11th Cir. 2005) (cleaned up).

A defendant's subjective knowledge of the seriousness of risk of self-harm "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Lancaster v. Monroe Cty., Ala.*, 116 F.3d

---

[2] While Defendant Sanchez was not a detention deputy of the jail, she was acting under color of law by virtue of her employer's contract with the Sheriff's Office. *See, e.g., Ancata v. Prison Health Services, Inc*., 769 F.2d 700 (11th Cir. 1985) (collecting cases).

1419, 1426 (11th Cir. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 840, (1994)).

### 1. Defendant Sanchez had subjective knowledge of a serious risk of self-harm

In *Snow*, the Eleventh Circuit held that evidence was sufficient to show that an officer had subjective knowledge of a strong likelihood that an inmate would commit suicide where the officer knew: (1) the inmate attempted suicide the previous month at a different jail; and (2) the inmate told the officer he was suicidal. *Id.* at 1270.[3]

Here, the complaint alleges that Defendant Sanchez knew Mr. Smith had a

[3] Defendant Sanchez conflates caselaw regarding serious medical needs and the risk of self-harm. *See* Doc. 11-1 at 9–11. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jacoby v. Baldwin Cnty*., 596 F. App'x 757, 763 (11th Cir. 2014) (unpublished) (citation omitted). Mr. Smith is not seeking to hold Defendant Sanchez liable for failing to treat a serious medical condition, but for ignoring the "strong likelihood, rather than a mere possibility, that suicide would result from [her] actions or inaction." *Heggs v. Grant,* 73 F.3d 317, 320 (11th Cir. 1996) (cleaned up). The question here is not whether Defendant Sanchez ignored an obvious serious medical condition but whether she had "knowledge that [Mr. Smith] ha[d] attempted, or even threatened, suicide," as her "failure to take steps to prevent [Mr. Smith] from committing suicide can amount to deliberate indifference." *Jacoby*, 596 F. App'x at 765 (quoting *Greason v. Kemp,* 891 F.2d 829, 835–36 (11th Cir. 1990)). The answer is yes. Construing the allegations in Mr. Smith's favor and ignoring medical records and contracts that have no bearing on what Defendant Sanchez observed, the Court can easily determine that Mr. Smith threatened suicide in Defendant Sanchez's presence after violently banging on the cell door and window only to be urged by Deputy Tracey to go through with it.

serious risk of self-harm. First, she observed Mr. Smith banging violently on the window and door of the cell. *See* Doc. 1 ¶ 20. Second, she heard Plaintiff tell Deputy Tracey that he was going to commit suicide. *Id.* ¶ 24. And third, she witnessed Deputy Tracey urge Mr. Smith to in fact commit suicide by taunting him while making a hanging gesture. *Id.* ¶¶ 24–26, 50.

Defendant Sanchez argues that she needed additional information to respond, which is far beyond what *Snow* or *Greason* require. Despite having heard him threaten suicide and Defendant Tracey's taunting him to do it, she argues that she also needed to know his history of suicide attempts. *Compare* Doc. 11-1 at 12 (arguing she "must be aware of him and his purported conditions") *with id*. at 15 (asserting she needed to "research him, his conditions, and the circumstances to determine next steps" before she could have taken any action). While knowing about his prior suicide attempts is sufficient, it does not make that information necessary to find Defendant Sanchez had subjective knowledge of the risk. *Greason,* 891 F.2d at 835–36 ("Where prison personnel directly responsible for inmate care have knowledge that an inmate has attempted, or even threatened, suicide, their failure to take steps to prevent that inmate from committing suicide can amount to deliberate indifference."); *cf. Hines v. Jones*, 2025 WL 671258, at *3 (11th Cir. Mar. 3, 2025) (district court did not err in concluding no deliberate

indifference where there were no allegations of suicide threat).

According to the complaint, Defendant Sanchez knew that Mr. Smith threatened to commit suicide, had the readily available means to commit suicide, and then was taunted and urged to commit suicide. Therefore, Mr. Smith's allegations demonstrate subjective knowledge of the risk of suicide.

**2. Defendant Sanchez recklessly disregarded that risk by doing nothing in response to it**

Binding precedent shows that doing nothing in light of a known, substantial suicide risk is an unreasonable response that constitutes deliberate indifference. This includes the failure to alert other officers to a suicide risk. *See, e.g.*, *Snow*, 420 F.3d at 1270 (11th Cir. 2005) (holding that failing to alert others at the jail or mitigate a known risk of suicide constituted deliberate indifference); *Greason*, 891 F.2d at 840 (finding a warden deliberately indifferent for failing to institute corrective measures after learning of an inmate's risk of suicide).

Defendant Sanchez agrees she did nothing. Instead, she argues that she owed no duty to Plaintiff because he was not "physically booked into the jail," Doc. 11-1 at 12, and that for various reasons, doing nothing was not an unreasonable response. She asserts that Mr. Smith would have needed to be "processed" before she was responsible to respond to a serious risk of suicide. Doc. 11-1 at 6. In support of this argument, she cites the Health Care Services Agreement that she

attached to her motion. *Id.* There are two glaring issues with this argument. First, the language in the contract she cites, states that her employer agrees to provide services to inmates "under the custody and control of the Rockdale County Sheriff's Office who have been *physically booked* within the Rockdale County Jail." *Id.* (emphasis added). This in no way contradicts Mr. Smith's complaint which alleges Mr. Smith was held in the booking area for several hours.[4] Defendant's additional requirement that someone needs to be "processed" is unsupported by her own evidence. Second, and most importantly, taken to its logical conclusion, Defendant Sanchez argues that she was free to ignore known medical emergencies, indeed she could idly sit and watch someone die in the booking area without any duty to respond by virtue of how far into the booking process the person was. Unsurprisingly, she cites no precedent that supports this unconscionable conclusion.

Should this distorted contractual argument fail, Defendant Sanchez then excuses her failure to act as being reasonable under the circumstances because she did not have enough time or the power to act. Neither is true.

Defendant Sanchez first argues that "there [was] not sufficient time for her

---

[4] Construed in Mr. Smith's favor, the term physically booked would encompass, at a minimum, anyone assigned to the holding cells before classification.

to *know* that her actions or inactions (assuming she had time to contemplate that there was something that she could or could not do) would cause or allow for Plaintiff's suicide attempt." *Id.* at 14 (emphasis in original). She observed the threats, encouragement, and banging on the door and window, and was required to respond. She did nothing for several minutes while Mr. Smith slowly died. The fact that she argues that she may not have "had time to contemplate that there was something that she could or could not do" to prevent Mr. Smith from hanging himself is outrageous.

Next, even if she had time to ponder the effects of her actions, Defendant Sanchez argues she had no power to take action because she "was not a deputy who could remove Plaintiff from Cell 7." Doc. 11-1 at 15. This is wholly unsupported by the record since the complaint makes no claim what actions she could have taken. It is inferred by Defendant, and in her favor instead of Mr. Smith's, from the allegation that "Deputy Jackson grabbed the cell door keys and opened the door." *See id.* (citing Doc. 1 ¶ 30). That said, even if this were true, Defendant Sanchez's argument fails because communicating the risks of inmate harm to other jail employees is a well-established way to mitigate a known harm. For example, in *Nelson v. Tompkins*, 89 F.4th 1289, 1298 (11th Cir. 2024), the court denied qualified immunity to an officer who responded unreasonably to a known

risk of harm because that officer "could have told a classification officer about the risk of harm." The court held that "[i]t is enough to prove that the official had the authority to make recommendations with respect to placement and classification decisions." *Id.* (citing *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 623 (11th Cir. 2007) and *Farmer*, 511 U.S. 825).

Thus, the complaint sufficiently demonstrates that Defendant Sanchez recklessly disregarded Mr. Smith's significant risk of self-harm.

**3. Qualified immunity is unavailable to Defendant Sanchez**

Defendant Sanchez is employed by a private corporation. *See* Doc. 1 ¶ 8. It is long established that, under 42 U.S.C. § 1983, private employees who act under the color of law are not protected by qualified immunity. *See Wyatt v. Cole*, 504 U.S. 158, 169 (1992). *See also Richardson v. McKnight*, 521 U.S. 399 (1997) (holding that privately employed prison guards are state actors but are not entitled to assert the defense of qualified immunity); *Hinson v. Edmond*, 192 F.3d 1342, 1347 (11th Cir. 1999), *op. amended by*, 205 F.3d 1264 (11th Cir. 2000) ("no strong reason appears in this case to distinguish between privately employed prison guards and privately employed prison physicians"). This Court therefore need not address whether the constitutional violation is clearly established.

**c. *Wade v. McDade* does not change the Fourteenth Amendment standard**

Defendant Sanchez argues that *Wade v. McDade* is establishes the "requisite intent" for Mr. Smith's claims. *See* Doc. 11-1 at 10. That is incorrect. *Wade* is an Eighth Amendment case. The question presented to the en banc court was "[w]hat is the standard for establishing liability on an Eighth Amendment deliberate-indifference claim?" *Wade*, 106 F.4th at 1261. *Wade* does not mention the Fourteenth Amendment, nor does it hint at overruling any Fourteenth Amendment precedent. Instead, the decision repeatedly invokes the text and history of the Eighth Amendment. This means that Fourteenth Amendment claims are unaffected by *Wade*.

Defendant Sanchez disagrees, as she repeatedly invokes it to establish Mr. Smith's burden. Doc. 11-1 at 10, 12–14. But *Wade* has not overruled every Fourteenth Amendment case *sub silentio*. This Circuit's Fourteenth Amendment precedent remains binding and dictates the denial of Defendant Sanchez's motion.

That said, even if this Court applied the "new" Eighth Amendment standard from *Wade* to Mr. Smith's Fourteenth Amendment claim, the result would be the same, as it appears that the court in *Wade* merely rephrased the same test that this Circuit previously used, except this time substituting "unreasonable" for the phrase "more than negligent." The subjective knowledge standard analyzed in *Wade*

remains unchanged because this Circuit has always required subjective knowledge. As Judge Jordan's concurrence advised, "courts and attorneys look carefully at prior Eleventh Circuit cases to see if they are consistent with the subjective component of deliberate indifference set out in *Farmer*. If they are consistent, then they should continue to be cited as binding precedent." *Wade*, 106 F.4th at 1265 (Jordan, J., concurring). Every case relied upon by Mr. Smith here uses that standard.

The first district court decision addressing the consequence of *Wade* declined to reconsider its prior ruling denying summary judgment because *Wade* "does not announce a change in the controlling law that dictates a different result," and both the district court and Eleventh Circuit had already applied the subjective standard reiterated in *Wade*. *See Nelson v. Tompkins*, 2024 WL 3558367, at *1 (M.D. Ga. July 25, 2024) (declining to reconsider *Nelson v. Tompkins*, 89 F.4th 1289 (11th Cir. 2024)).

**d. In light of *Wade* and *Kingsley*, this Court should apply the civil recklessness standard adopted by other circuits**

Mr. Smith recognizes that the Court is bound by existing Fourteenth Amendment precedent and the cases cited in this brief. Mr. Smith makes this argument here to preserve it for appeal.

To the extent that *Wade* has any effect on this litigation, it shows that the Court should adopt the Fourteenth Amendment deliberate-indifference standard based on civil recklessness, rather than the criminal recklessness standard that the Supreme Court adopted under the Eighth Amendment in *Farmer*.

There are significant reasons to treat pretrial detainee claims under the Fourteenth Amendment differently than claims by convicted prisoners under the Eighth Amendment. The foundational assumption of *Hamm v. DeKalb Cnty.,* 774 F.2d 1567 (11th Cir. 1985) that the two rights were coextensive was abrogated by the Supreme Court in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), where the court held that the Eighth and Fourteenth Amendments require different standards for excessive force claims because "the language of the two Clauses differs, and the nature of the claims often differs." *Id.*

In the wake of *Kingsley*, many circuits reevaluated the Fourteenth Amendment deliberate indifference standard. Rather than applying the criminal recklessness standard announced in *Farmer* (and reiterated by *Wade*), which requires subjective knowledge of a serious risk of harm, those circuits follow the civil recklessness standard that defendant knew *or should have known* of a substantial risk of harm. *See, e.g.*, *Lawler as next friend of Lawler v. Hardeman Cnty., Tennessee*, 93 F.4th 919, 927 (6th Cir. 2024) ("officers can face liability even

if they did not actually know of a risk of harm to a pretrial detainee. Pretrial detainees need only prove that the officers recklessly disregarded a risk so obvious that they either knew or should have known of it.") (emphasis added). *See also Miranda v. Cty. of Lake*, 900 F.3d 335, 353 (7th Cir. 2018); *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1120, 1122–25 (9th Cir. 2018) (adopting the "knew or should have known" standard).

The Eleventh Circuit has not decided this issue in the wake of *Kingsley*. *See Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Florida*, 871 F.3d 1272, 1279 n.2 (11th Cir. 2017) (declining to decide whether *Kingsley* required the court to reassess its Fourteenth Amendment deliberate indifferent standard). But *Wade*'s reliance on the text of the Eighth Amendment underscores the need to reevaluate the standard used for Fourteenth Amendment claims following *Kingsley* and to apply the "knew or should have known" standard to Fourteenth Amendment claims.

**e. The complaint is not a shotgun pleading**

Finally, Defendant Sanchez asserts that the complaint is a shotgun requiring dismissal. Not so. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And each "party must state its claims or defenses in numbered paragraphs, each limited

as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). A complaint that violates these rules is a "shotgun." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015). A complaint is not a "shotgun," however, if it "give[s] the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Here, Defendant Sanchez argues that the complaint is a shotgun because it contains conclusory allegations and lumps her in with the other defendants. *See* Doc. 11-1 at 16–17. Her arguments fail because the complaint adequately describes with factual support what Defendant Sanchez observed and her failures to respond in light of those observations. Moreover, while Count II of the complaint references conduct committed by all defendants, it also specifically addresses what Defendant Sanchez knew and her deliberate indifference in light of that awareness. *See* Doc. 1 ¶¶ 50 (alleging Defendant Sanchez knew that Plaintiff threatened to commit suicide and Deputy Tracey's encouraging him to commit suicide); 51 (explaining that Defendant Sanchez failed to take any action to prevent Plaintiff's suicide). The complaint provides adequate notice of the claims against Defendant Sanchez and the specific grounds on which they rest. The motion should be denied on this basis.

In any event, should the Court disagree, "the appropriate remedy is to permit at least an initial opportunity to replead the matter to correct the issue." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018).[5]

## IV. CONCLUSION

For all these reasons, Defendant Erica Sanchez's motion to dismiss should be denied.

Dated: March 5, 2025

Respectfully submitted,

**Jeff Filipovits**
Jeff Filipovits
Georgia Bar No. 825553

**Wingo Smith**
Wingo Smith
Georgia Bar No. 147896

SPEARS & FILIPOVITS, LLC
315 W. Ponce de Leon Ave., Ste. 865
Decatur, Georgia 30030
(404) 905-2225
jeff@civil-rights.law
wingo@civil-rights.law

[5] Mr. Smith has not moved to amend his Complaint because he believes the facts alleged are sufficient to state a plausible claim. If this Court determines that the allegations against Defendant Sanchez are not sufficient to show subjective knowledge, Mr. Smith will file a motion to amend following the procedure set forth in *Czeremcha v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 724 F.2d 1552, 1556 (11th Cir. 1984) ("after a complaint is dismissed the right to amend under Rule 15(a) terminates; the plaintiff, however, may still move the court for leave to amend, and such amendments should be granted liberally"), in an effort to address any inadequacy identified by the Court. Mr. Smith recognizes that a request contained in the body of the brief is not the appropriate vehicle to seek leave, and do not seek leave to amend now. *See Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999).

**James M. Slater**
James M. Slater
Georgia Bar No. 169869

SLATER LEGAL PLLC
2296 Henderson Mill Rd. NE #116
Atlanta, Georgia 30345
(404) 458-7283
james@slater.legal

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14-point typeface.

Dated: March 5, 2025.

**James M. Slater**
James M. Slater
Georgia Bar No. 169869

SLATER LEGAL PLLC
2296 Henderson Mill Rd. NE #116
Atlanta, Georgia 30345
(404) 458-7283
james@slater.legal