## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **EZRA SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION FILE NO.** |
| | ) | **1:24-cv-05158-TWT** |
| **v.** | ) | |
| | ) | |
| **DEPUTY MONIQUE TRACEY,** | ) | |
| **DEPUTY RAUL GOMEZ, DEPUTY** | ) | |
| **SHENEQUA JACKSON, and ERICA** | ) | |
| **SANCHEZ,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT ERICA SANCHEZ'S
## <u>REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS</u>

Defendant Erica Sanchez ("Defendant Sanchez") submits her Reply Brief in Support of her Motion to Dismiss.

## I.    <u>INTRODUCTION</u>

Although it was unclear from Plaintiff's initial pleading, he concedes that he is not bringing a deliberate indifference claim based on the theory that he had a serious medical condition – suicidal ideations – and that Defendant Sanchez was deliberately indifferent in providing care or treatment for that condition. *See* Plf's Response at p. 12, note 3 (stating, in part, "Mr. Smith is not seeking to hold Defendant Sanchez liable for failing to treat a serious medical condition, but for ignoring the 'strong likelihood, rather than a mere possibility, that suicide would

1

result from her actions or inaction.'"). Therefore, because Plaintiff is effectively not opposing Defendant Sanchez's request to dismiss the aspect of liability, to the extent Plaintiff's Complaint can be interpreted to seek relief in a manner other than stated in his concession, this Court should dismiss that portion of it and not allow relief based on any other deliberate indifference analysis.

As to Plaintiff's remaining theory of recovery, it fails because his allegations fail to show that Defendant Sanchez had actual knowledge of a strong likelihood that he would self-harm. Although we do not concede that there was even a mere possibility of self-harm (because hindsight should not determine what was possible), at best, when only Defendant Sanchez's limited, real-time knowledge is considered, there could only be a mere possibility of self-harm. Also, even if Plaintiff has sufficiently alleged knowledge, these allegations do not show that Defendant Sanchez disregarded the information in a manner that exhibits even negligence, much less more than mere negligence – they show that Defendant Sanchez did not have time to act. Therefore, the Court should dismiss the claims against Defendant Sanchez.

## II.    ARGUMENT AND CITATION OF AUTHORITY

### A. This Court can and should consider Mr. Smith's medical records and the Health Care Services Agreement without converting this Motion to a motion for summary judgement.

Plaintiff's argument encouraging this Court to disregard Mr. Smith's medical records are not persuasive. To make the proper determination relating to this motion, this Court can review Plaintiff's medical records and the Health Care Services Agreement without converting this motion to a motion for summary judgment. "[T]here are two exceptions to this conversion rule: (1) the incorporation-by-reference doctrine and (2) judicial notice." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298 (11th Cir. 2024) *citing and following Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337 (11th Cir. 2005). This Court first must find that the documents are central to the plaintiff's claims; and then that authenticity of the documents cannot be challenged. *Id.* at 1300. Both requirements are met in this case, and the evidence that supports them are in Plaintiff's complaint.

The records are central to Plaintiff's claims because Plaintiff cited or referred to his prior medical history while at Rockdale County Jail in his complaint.[1] Compl. at ¶¶ 11, 12, 13, 22, 31, and 47. He is also attempting to use them – at least in part –

---

[1] Plaintiff refers to a potential HIPAA violation, but Plaintiff has placed his medical health, treatment, and record at issue in the proceeding, which requires an implicit HIPAA waiver when litigating this matter; he has cited to his medical records, which allows Defendant Sanchez to cite the remainder of the records as necessary; and by filing a claim against Defendant Sanchez based on her actions as an employee or agent of Naphcare, her (and Naphcare's) use of the records they created that are filed under seal do not implicate HIPAA.

as the basis for his claims. *Id.* Plaintiff cites to *Adamson* in support of his contention that the medical records are not central to his Complaint. However, within the same ruling, the Court noted that the underlying premise of a document being central to the complaint is that "if the document was indeed so central to the claim that it served as a basis for the complaint, then plaintiffs must have already been aware of it, and thus do not need the protection of the 10-day notice period [required by a motion for summary judgment conversion]." *Adamson v. Poorter*, No. 06-15941, 2007 WL 2900576, at *3 (11th Cir. Oct. 4, 2007). Plaintiff cannot say he was unaware of the medical records because he referred to them and utilized them in support of his Complaint. Accordingly, the medical records are clearly central to his claims.

Further, Plaintiff relies upon *Williams* and *Cineus* in support of his contention that the medical records should not be considered. However, Plaintiff fails to mention that in *Williams*, Plaintiff disputed the authenticity of the medical records, which led to the Court's decision not to consider them for the motion to dismiss. Moreover, in *Cineus,* the parties disputed multiple material facts[2] within the medical records, which again led to the Court's decision not to consider them. Plaintiff has not disputed the authenticity of the medical records here and, therefore, Plaintiff's

---

[2] Plaintiff does not contest or dispute the facts or statements within the medical records. Although Plaintiff mentions that Defendant Sanchez's statement is hearsay, it would be admissible under the doctrine of completeness because Plaintiff has referenced (and would likely introduce) other parts of her statements. *See* Fed. R. Evid. 106.

argument is meritless. Therefore, this Court can review and use Plaintiff's medical records when deciding this motion to dismiss.

Similarly and for the same reasons detailed *supra*, this Court can review the Health Care Services Agreement because Plaintiff refers to it in his Complaint and it is public record. The Court may take judicial notice of publicly available documents provided that they are "'not subject to reasonable dispute' because they [are] 'capable of accurate and ready determination by resort to sources whose accuracy [can]not reasonably be questioned.'" *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (*quoting* Fed. R. Evid. 201(b)). Not only does Plaintiff refer to Defendant Sanchez's duties in his Complaint and utilize it in support of his claim against Defendant Sanchez, but the document can be verified through multiple sources.[3] *See* Compl. at ¶8. The Health Care Services Agreement was referenced, in part, to show when Plaintiff became Defendant Sanchez's patient, when she should have become aware of any mental health or medical conditions that would have required treatment, or why Plaintiff remained in the holding cell without being seen by her. If the Court accepts Plaintiff's aforementioned concession regarding his deliberate indifference claim and dismisses the same, the Health Care Services Agreement does not need to be used for some of the purposes referenced above.

---

[3] The Rockdale County Procurement Division provides a public record of all current, pending, and awarded bids, including copies of documents related to those bids within its document library.

Accordingly, the Court should take judicial notice of and consider both the medical records and Health Care Services Agreement in considering the instant Motion.

**B. Plaintiff has not properly stated a Section 1983 claim against Defendant Sanchez.**

To properly allege the purported constitutional violations, Plaintiff must state that Defendant Sanchez was deliberately indifferent to Plaintiff's serious medical needs. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011). In the context of an attempted detainee suicide, "deliberate indifference requires that the defendant deliberately disregard a strong likelihood rather than a mere possibility that the self-infliction of harm will occur. [T]he mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1268-69 (11th Cir. 2005) (cleaned up).

The Eleventh Circuit Court of Appeals has further (and clearly) stated the requisite analysis for a defendant's intent in *Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (internal citations omitted). There, the Eleventh Circuit held that "in order to show that a defendant acted with 'subjective recklessness as used in the criminal law,' a deliberate-indifference plaintiff must demonstrate that the defendant was actually aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Id.*, 1261. Plaintiff's argument that *Wade* does not apply to deliberate

indifference cases arising out of the Fourteenth Amendment is unavailing.[4] Though Plaintiff is correct in pointing out that his claims arise out of the Fourteenth Amendment rather than the Eighth Amendment, "[n]evertheless, in regard to providing pretrial detainees with such basic necessities as . . . medical care[,] the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Cook ex rel Estate of Tessier v. Sheriff of Monroe Cnty.*, Fla, 402 F.3d 1092, 1115 (11th Cir. 2005) (quotations and citations omitted). As such, the analysis announced in *Wade* is controlling in this case.[5]

### a. <u>Plaintiff has waived all other deliberate indifference theories of recovery.</u>

Because "not every injury suffered by an inmate at the hands of his jailors violates the Constitution," when applying the pleading rules and Section 1983 jurisprudence to this matter, Plaintiff's claim (Count II) fails against Defendant Sanchez. *See id*. at 1256 (explaining Section 1983 liability analysis). Plaintiff has now clarified his contention – he is only claiming that Defendant Sanchez failed to properly respond Plaintiff's interactions and statements about committing suicide

---

[4] Plaintiff's position is largely a distinction without a difference in this case because in suicide cases, he must be able to show that a defendant subjectively knew about his "strong likelihood" to self-harm and that his disregard allowed the self-harm to occur. *See Cook*, 402 F.3d at 1117 ("Deliberate indifference, in the jail suicide context, is not a question of the defendant's indifference to suicidal inmates or suicide indicators generally, but rather it is a question of whether a defendant was deliberately indifferent to an individual's mental condition and the likely consequences of that condition. For this reason, absent knowledge of a detainee's suicidal tendencies, our cases have consistently held that failure to prevent suicide has never been held to constitute deliberate indifference.").

[5] For the same reasons, the Court should disregard Plaintiff's argument that the civil recklessness standard should be applied to Fourteenth Amendment deliberate indifference standards.

and the deputies' statements in response to the same. *See* Plf's Response at p. 12, note 3. Therefore, any claim relating to Defendant Sanchez's purported failure to provide adequate medical or mental health treatment based on knowledge of Plaintiff's alleged conditions should be dismissed.

> b. <u>Defendant Sanchez did not have knowledge of a strong likelihood that Plaintiff would self-harm.</u>

As to Plaintiff's remaining claim – that Defendant Sanchez deliberately disregarded a strong likelihood of the self-infliction of harm – it also fails. The Eleventh Circuit has reasoned that knowledge of prior suicide attempts, without more, are insufficient to put an officer "on notice of a strong likelihood rather than a mere possibility that the self-infliction of harm will occur." *Snow*, 420 F.3d at 1269. Furthermore, it "is a question of whether a defendant was deliberately indifferent to an individual's mental condition and the likely consequences of that condition [and] absent knowledge of a detainee's suicidal tendencies, cases have consistently held that failure to prevent suicide has never been held to constitute deliberate indifference." *Cook*, 402 F.3d at 1117. Plaintiff's complaint states the following, in relevant part:

> 12. Nurse Sanchez was one of the nurses who administered drugs to Mr. Smith in May 2024. She administered or attempted to administer olanzapine and hydroxyzine pamoate to Mr. Smith. The former is an antipsychotic mediation used to treat schizophrenia and bipolar disorder, and the latter helps control anxiety.

47. Specifically, each Defendant, separately, knew or should have known that Mr. Smith faced a substantial risk of serious self-harm because Mr. Smith had reported to the jail a history of previous suicide attempts, including an attempted hanging at the jail by a telephone cord, and because they heard Mr. Smith threaten to commit suicide. Additionally, Deputies Tracey and Jackson heard other detainees tell them that Mr. Smith threatened to commit suicide earlier in the day

. . .

50. Deputy Gomez and Nurse Sanchez knew that Mr. Smith had threatened suicide after slamming and banging on the door and window in his cell. They also heard Mr. Smith express suicidal intentions and heard Deputy Tracey respond, encouraging him to commit suicide.

51. Each ignored and were deliberately indifferent to the above-referenced substantial risks of serious self-harm by failing to act to place Mr. Smith on suicide watch or take other measures to ensure his safety and well-being.

Defendant did not have adequate knowledge of a strong likelihood of Plaintiff's self-harm. As mentioned in our initial brief, Defendant was not aware of who was present in the cell because the person was not in her queue, and she did not have contact with Plaintiff.[6] There is no allegation that Defendant Sanchez was aware of anyone being present in the cell – let alone *who* was present – until less than four minutes before Plaintiff's suicide attempt. Therefore, she could not have

---

[6] The Health Care Services Agreement supports this contention because Defendant Sanchez was required to provide medical services once Plaintiff was physically booked into the Jail and there is no allegation that his booking ever occurred. *See* Exh. B at 1.

had prior knowledge of any suicide attempts or threats prior to the time she allegedly overheard the interactions among Plaintiff and the deputies.

As to the interactions between Plaintiff and the deputies, in the proper context, Defendant Sanchez did not have knowledge of a strong likelihood for self-harm. It is important to know the timing of *Defendant Sanchez's* actual knowledge. The allegations of Defendant Sanchez's knowledge are that Plaintiff (whose identity was unknown to her) was in the cell for an extended period, he (identity still unknown to her) was banging on the door about this extended process, Plaintiff threatened suicide, and Deputy Tracey allegedly encouraged him to do so. In this short period of time and with this limited information, Defendant Sanchez only had knowledge of a mere possibility of the commission of self-harm (this assumption is based only on the fact that Plaintiff attempted to commit suicide because Defendant Sanchez does not concede that circumstances show any possibility of the commission of self-harm). An inmate yelling and banging about the delay with his booking, a threat to commit suicide that was apparently based on the delay,[7] and seemingly inappropriate responses from deputies who did not take Plaintiff seriously is not sufficient knowledge. When Plaintiff's conclusory statements are ignored – as they must be – the factual allegations do not support a viable Section 1983 claim.

---

[7] Defendant Sanchez's statement in the Medical Emergency Code Report explains Defendant Sanchez's observations: "Patient started banging on door wanting to know what is going on with his process."

If we assume that Defendant Sanchez obtained sufficient knowledge from the information discussed above, Plaintiff's allegations remain insufficient. There is no *factual* allegation that Defendant Sanchez disregarded the purported risk of suicide in a way that constitutes negligence, much less actions or omissions greater than negligence. *See Cook*, 402 F.3d at 1115 (explaining that "the plaintiff has to show that the defendant had (1) subjective knowledge of a risk of serious harm; and (2) disregarded that risk; (3) by conduct that is more than mere negligence"). Plaintiff alleges that Defendant Sanchez "ignored" and was deliberately indifferent to the purported knowledge she obtained. First, the conclusory statement that she was deliberately indifferent is inapposite because it is not a factual allegation (or a legal conclusion supported by facts). Second, the term "ignore" implies that Defendant Sanchez actively refrained from doing something, which is also not supported by Plaintiff's allegations. When stripped of the editorializations, the allegations are that Defendant Sanchez did not do anything. Although the motivations for the inaction are not relevant to this Motion, there are no facts that explain her intent. Between the less-than-four minutes when Defendant Sanchez heard the interactions *between Plaintiff and the deputies* and until the time that Plaintiff began to hang himself,[8] Defendant Sanchez's purported inaction must rise to the level of something more

---

[8] Although we do not know at what time Plaintiff started to self-harm, Plaintiff's Complaint alleges that at 1:32 a.m., he felt the effects of his actions. *See* Compl. at ¶28.

than negligence. If anything, and as to Defendant Sanchez, the allegations show that there was not sufficient time for any actions of consequence.[9] Almost immediately after the Plaintiff-deputies interactions, Plaintiff began to hang himself, and when his actions were reported to Defendant Sanchez, she provided necessary emergency care that saved Plaintiff's life. Plaintiff's allegations do not show a disregard that is sufficient even for negligence, much less more than negligence.

### C. Shotgun Pleading

Defendant Sanchez maintains her positions that Plaintiff's Complaint is an improper shotgun pleading and Plaintiff has failed to dispute the same within his Response. Moreover, Defendant's misunderstanding of the allegations within the Complaint and Plaintiff's need to clarify the allegations against Defendant Sanchez within his Response further supports that Plaintiff's Complaint is a shotgun pleading.

### III.    CONCLUSION

Defendant Sanchez requests that this Court dismiss Plaintiff's Complaint in its entirety as it fails to state claims against her, and it is a shotgun pleading in violation of the Federal Rules of Civil Procedure. Defendant Sanchez's actions did not show deliberate indifference because under the circumstances of this case and based on the knowledge she obtained, she responded reasonably.

---

[9] Interestingly, in his response brief, Plaintiff acknowledges that the Complaint does not contain any references to actions that Defendant Sanchez should have taken. Plf's Response at p. 16.

Defendants certify that this brief has been prepared with one of the font and point selections approved by the Court in LR 5.1(B) and the brief does not contain more than 10 characters per inch of type.

Respectfully submitted this 19th day of March, 2025.

/s/Antonio E. Veal
Michael G. Frankson
Georgia Bar No.: 173835
Antonio E. Veal
Georgia Bar No.: 460007
Lindsey Adams
Georgia Bar No.: 288816

*Counsel for Defendant Erica Sanchez*

Huff, Powell & Bailey, LLC
999 Peachtree Street, Suite 950
Atlanta, Georgia 30309
Telephone: (404) 892-4022
Fax: (404) 892-4033
Email: mfrankson@huffpowellbailey.com
Email: aveal@huffpowellbailey.com
Email: ladams@huffpowellbailey.com

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that the foregoing DEFENDANT ERICA SANCHEZ'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS was electronically filed using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

James M. Slater
Slater Legal PLLC
2296 Henderson Mill Road, NE, Number 116
Atlanta, Georgia 30345
james@slater.legal

Jason Waymire
Williams & Waymire, LLC
Bldg. 400, Suite A
4330 South Lee Street
Buford, GA 30581
jason@wmwlaw.com

Timothy Buckley
Eric O'Brien
Buckley, Christopher & Hensel, P.C.
2970 Clairmont Road, NE Suite 650
Atlanta, GA 30329
tbuckley@bchlawpc.xom
eobrien@bchlawpc.com

Respectfully submitted this 19th day of March, 2025.

/s/Antonio E. Veal
Michael G. Frankson
Georgia Bar No.: 173835
Antonio E. Veal

14

Georgia Bar No.: 460007
Lindsey Adams
Georgia Bar No.: 288816

*Counsel for Defendant Erica Sanchez*

HUFF, POWELL & BAILEY, LLC
999 Peachtree Street, Suite 950
Atlanta, Georgia 30309
Telephone: (404) 892-4022
Fax: (404) 892-4033
Email: mfrankson@huffpowellbailey.com
Email: aveal@huffpowellbailey.com
Email: ladams@huffpowellbailey.com