IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EZRA SMITH,

    Plaintiff,

    v.

ERICA SANCHEZ, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:24-CV-5158-TWT

**ORDER**

This is a civil rights case. It comes before the Court on Defendant Erica Sanchez's Motion to Dismiss [Doc. 11]. This Motion is DENIED. Sanchez also filed a Motion to Stay, which is DENIED as well [Doc. 25].

### I.    Background[1]

Plaintiff Ezra Smith suffers from serious mental health disorders and has a history of suicidal ideation and behavior. (Compl. ¶ 9). During the summer of 2024, he was arrested several times and taken to the Rockdale County Jail. (*Id.* ¶¶ 10, 13, 14). Defendant Sanchez is a nurse who was working at the jail during Smith's May and July 2024 bookings. (*Id.* ¶¶ 8, 12, 20).

First, in May 2024, Smith was charged with reckless conduct and was booked in the Rockdale County Jail. (*Id.* ¶ 10). The Sheriff's Office reported

---

[1] The facts below are taken from the complaint and must be accepted as true and construed in the light most favorable to Smith at this stage in the litigation.

that "he had grabbed a firearm and put it in his mouth, head, and waving around acting suicidal." (*Id.* (quotation omitted)). Nursing staff at the jail observed his mental agitation and noted that he was paranoid and had a history of suicide ideation and attempts. (*Id.* ¶ 11). Sanchez administered antipsychotic and anti-anxiety drugs to Smith that night. (*Id.* ¶ 12).

Then, in June 2024, Smith was again arrested and taken the Rockdale County Jail (*Id.* ¶ 13). However, he was not accepted at the jail because "he was not well enough to be booked" and instead went to a crisis center for mental health treatment. (*Id.* ¶¶ 13, 14). On July 8, 2024, Smith was released from his treatment center and was taken back to the Rockdale County Jail. (*Id.* ¶ 14). The events of that night instigated this lawsuit.

Upon his arrival at the jail, Smith was taken to booking and put in a holding cell to wait to be processed by jail staff. (*Id.* ¶ 15). Throughout the night, he expressed mental distress; for example, a fellow detainee in the holding cell called Defendant Deputy Monique Tracey to inform her that Smith "says he wants to kill himself." (*Id.* ¶ 16). Smith's mother also called the jail and told Deputy Tracey that Smith had just gotten out of mental health treatment and that he was suicidal. (*Id.* ¶ 17). As the night went on, Smith became increasingly frustrated with being held in booking and began banging on the window and kicking the door of the holding cell. (*Id.* ¶ 19). The complaint alleges that all of the Defendants, including Sanchez, could hear Smith's

2

disturbances. (*Id.* ¶ 20).

Deputy Tracey then approached Smith. Smith asked her about the status of his booking, and Deputy Tracey allegedly told Smith that he "was acting like a 'spoiled asshole' and that his mother had called about him." (*Id.* ¶ 23). In response, Smith told Deputy Tracey that he was going to kill himself. (*Id.* ¶ 24). Deputy Tracey responded, "go kill yourself then." (*Id.* ¶ 24). She repeated this four times, adding that "she wanted to see him do it and to 'be a man about it.'" (*Id.* ¶ 25). She also made a hanging gesture with her hand to Smith. (*Id.* ¶ 26). The officers then left Smith. (*Id.* ¶ 28). The entirety of this exchange was heard by Defendant Deputy Gomez and Sanchez. (*Id.* ¶¶ 21–26).

A few minutes later, Smith hung himself with a telephone cord that was present in his cell. (*Id.* ¶ 28). Deputy Tracey returned to his cell and saw the scene. (*Id.* ¶ 30). She called for help, and Deputy Jackson opened the door. (*Id.*). The complaint alleges that "Smith's face was blue, he had blood coming from his nose and urine on his jumpsuit, and the telephone cord was wrapped around his neck." (*Id.* ¶ 31). Sanchez began performing chest compressions because Smith had no pulse and was not conscious. (*Id.* ¶ 33). Eventually, Smith began breathing again and was taken to the hospital and then to behavioral services. (*Id.* ¶¶ 35, 36).

Smith brings this lawsuit against Deputy Tracey, Deputy Gomez, Deputy Jackson, and Nurse Sanchez. He brings two counts of Deliberate

3

Indifference under the Fourteenth Amendment. Sanchez moves to dismiss the claim against her, arguing that Smith fails to state a claim and that his complaint is a shotgun pleading. The Court will assess the merits of these arguments below.

## II.     Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); FED. R. CIV. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon

which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

#### A.  Consideration of Extraneous Documents

Before addressing the substance of this motion, the Court must first determine whether it will consider Smith's medical records and the Health care Services Agreement that Sanchez submitted as support for her motion to dismiss.

Ordinarily, a court cannot consider documents outside of the pleadings without converting a motion to dismiss into a motion for summary judgment. FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). There are two exceptions: (1) judicial notice, and (2) incorporation by reference. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298 (11th Cir. 2024).

First, incorporation by reference. The Eleventh Circuit has clarified that courts may consider documents that were not attached to a complaint under the incorporation-by-reference doctrine if the documents are "(1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Id.* at 1300. Sanchez argues that the Court ought to consider Smith's medical records according to incorporation by reference because he

5

referred to them in his complaint and uses them as the basis for his claims.

The Court disagrees and will not presently consider the medical records. Though there are references to medical conditions throughout the complaint, the Court disagrees with Sanchez's characterization that this means that the medical records are central to Smith's claims. After all, "[a] document is not 'central' merely because it is directly responsive to a factual allegation." *Adamson v. Poorter*, 2007 WL 2900576, at *3 (11th Cir. Oct. 4, 2007). As other courts in this circuit have held, because Smith can prove his deliberate indifference claims without introducing the medical records (for example, by having witnesses testify), the records are not central to the claim. *See Cineus v. Fla. Dep't of Corr.*, No. 8:21-cv-1659-MSS-SPF, 2022 WL 4448599 (M.D. Fla. Sept. 23, 2022) (declining to consider medical records with a deliberate indifference claim because "[a]t trial, Cineus may present testimony by witnesses, instead of introducing the medical records, to prove the deliberate indifference claim. Because Cineus may prove the deliberate indifference claim without relying on the medical records, the records are not central to the claim" (citations omitted)); *Williams v. Dixon*, No. 3:22-cv-1221-MMH-MCR, 2024 WL 2387383, at *5 (M.D. Fla. May 23, 2024) (holding that the Court would not consider medical records on a motion to dismiss because "[t]he documents are not central to the claims since Williams may present witness testimony to prove the Centurion Defendants were deliberately indifferent to his serious

medical needs" (citation omitted)).

Next, the Court will not consider the Health Services Agreement. For the reasons explained above, this document is not central to Smith's claims. And the Court will not take judicial notice of the document, as this issue has not been fully developed by the parties, and it is not clear how to access this record. *See Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC,* 369 F.3d 1197, 1205 (11th Cir. 2004) (explaining that "the taking of judicial notice of facts is, as a matter of evidence law, a highly limited process. The reason for this caution is that the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court" (quotations omitted)); *Lodge v. Kondaur Cap. Corp.,* 750 F.3d 1263, 1273 (11th Cir. 2014) (affirming district court's denial of judicial notice "because the Lodges wholly failed to provide the necessary information."). And in any event, consideration of these documents would not alter the resolution of this motion.

In sum, the discovery process is the better avenue for admission of these documents. Accordingly, the Court will assess the Motion to Dismiss based on the complaint alone.

### B. Deliberate Indifference

#### 1. Legal Standard[2]

This case presents the interesting situation where the parties disagree on the appropriate legal standard. Smith brings his deliberate indifference claim under the Fourteenth Amendment, as he was a pretrial detainee and "the Eighth Amendment governs claims of inmates, while the Due Process Clause of the Fourteenth Amendment governs claims of pretrial detainees." *Jamison v. United States Marshals Serv.*, 2024 WL 4524681, at *1 n.2 (11th Cir. Oct. 18, 2024) (citation omitted). "A prison official acted with deliberate indifference if [she] (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness." *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) (citation omitted). "[I]n a prison suicide case, deliberate indifference requires

---

[2] As an initial matter, Sanchez is potentially subject to liability under 42 U.S.C. § 1983, even though she is privately employed. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (holding that privately employed medical defendants "would be subject to liability pursuant to 42 U.S.C. § 1983" if "their actions resulted in a deprivation of Ancata's constitutional rights" because "[w]here a function which is traditionally the exclusive prerogative of the state (or here, county) is performed by a private entity, state action is present." (citations omitted)). But she is not entitled to qualified immunity, as she is a private prison healthcare provider. *See Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999) (holding that "[f]or the same reasons that the *Richardson* Court declined to extend the doctrine of qualified immunity to privately employed prison guards, we decline to extend qualified immunity to this privately employed prison physician"), *amended*, 205 F.3d 1264 (11th Cir. 2000).

that the defendant deliberately disregard a strong likelihood rather than a mere possibility that the self-infliction of harm will occur. [T]he mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1268–69 (11th Cir. 2005) (quotation marks and citation omitted). Importantly, "[l]iability attaches only if the officer 'knows of and disregards an excessive risk' of suicide." *Jacoby v. Baldwin Cnty.*, 596 F. App'x 757, 765 (11th Cir. 2014) (per curiam) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). That said, "if the defendant actually knew of a substantial risk to inmate health or safety, he cannot be found liable ... if he responded reasonably to the risk." *Edgar v. Brunson*, 2024 WL 4371611, *5 (11th Cir. Oct. 2, 2024) (quotation omitted).

The dispute arises from Sanchez referencing the Eleventh Circuit's language in *Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024), which established that

> [I]n addition to an "objectively serious" deprivation, a deliberate-indifference plaintiff must show that the defendant acted with "subjective recklessness as used in the criminal law," and that in order to do so, the plaintiff must demonstrate that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm.

*Id.* at 1253 (citations omitted). Smith objects to Sanchez's claim that *Wade* establishes "the requisite intent" for this case. (Smith's Resp. in Opp'n to Sanchez's Mot. to Dismiss, [Doc. 20], at 18). Smith argues that this case is

9

distinct from *Wade* because it involves the Fourteenth Amendment while *Wade* is an Eighth Amendment case. (*Id.*). Accordingly, he contends the standard established in *Wade* is inapplicable. Smith argues that the standard for pretrial detainee Fourteenth Amendment claims should be civil recklessness, which only requires that a defendant knew or should have known of a substantial risk of harm, rather than the criminal recklessness standard, which requires actual knowledge of a substantial harm, adopted in *Wade* for Eighth Amendment claims. (*Id.* at 20).

Sanchez responds that "[Smith's] position is largely a distinction without a difference in this case because in suicide cases, he must be able to show that a defendant subjectively knew about his 'strong likelihood' to self-harm and that his disregard allowed the self-harm to occur." (Sanchez's Reply Br., [Doc. 26], at 7 n.4 (quoting *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1117 (11th Cir. 2005)). Sanchez is correct that the distinction does not affect the analysis in the prison suicide context, and therefore, the Court need not reach the issue of the appropriate standard for Fourteenth Amendment cases.

### 2. Subjective Knowledge

To state a claim for deliberate indifference, Smith must allege that Sanchez was subjectively aware of the risk of suicide. *Snow*, 420 F.3d at 1268 ("To establish a defendant's deliberate indifference, the plaintiff has to show

that the defendant had . . . subjective knowledge of a risk of serious harm." (quotation mark and citation omitted)).³

Smith alleges the following facts about Sanchez's involvement with Smith's suicide attempt:

- "Nurse Sanchez was one of the nurses who administered drugs to Mr. Smith in May 2024. She administered or attempted to administer olanzapine and hydroxyzine pamoate to Mr. Smith. The former is an antipsychotic medication used to treat schizophrenia and bipolar disorder, and the latter helps control anxiety." (Compl. ¶ 12).

- "All Defendants were present and could hear Mr. Smith banging on the window with his fists and kicking the door." (*Id.* ¶ 20).

- "Nurse Sanchez was also in earshot" of Deputy Tracey's conversation with Smith. (*Id.* ¶ 21).

- "According to Nurse Sanchez and Deputy Gomez, Mr. Smith asked what was going on with booking." (*Id.* ¶ 22).

---

³ In his response brief, Smith clarifies that he is seeking to hold Sanchez liable for "ignoring the "strong likelihood, rather than a mere possibility, that suicide would result from [her] actions or inaction." (Smith's Resp. in Opp'n to Sanchez's Mot. to Dismiss, at 12 n.3). He contends that "[t]he question here is not whether Defendant Sanchez ignored an obvious serious medical condition but whether she had "knowledge that [Smith] ha[d] attempted, or even threatened, suicide," as her "failure to take steps to prevent [Smith] from committing suicide can amount to deliberate indifference." (*Id.*).

11

- "Mr. Smith told Deputy Tracey, in the presence of Deputy Gomez and Nurse Sanchez, that he was going to kill himself. According to Deputy Gomez and Nurse Sanchez, Deputy Tracey replied, 'go kill yourself then.'" (*Id.* ¶ 24).

- Also, in this conversation, Deputy Tracey "said this four times while also saying that she wanted to see him do it and to 'be a man about it'" and further "made a hanging gesture with her hand to Mr. Smith." (*Id.* ¶¶ 24, 25).

- "All Defendants knew that there was a telephone in Cell 7, which was attached by a cord." (*Id.* ¶ 27).

- After Smith hung himself in the cell, "Nurse Sanchez then came into the cell to perform chest compressions. At that time, she reported that Mr. Smith had no pulse and was not conscious." (*Id.* ¶ 33).

Smith contends that these allegations constitute subjective knowledge of a risk of suicide; Sanchez disagrees.

    Smith is clearly correct. The complaint states facts that plausibly demonstrate Sanchez's subjective awareness of Smith's risk of suicide. Viewing the facts in the light most favorable to Smith, the complaint alleges that Sanchez was aware of Smith's erratic behavior in the cell and heard Smith tell Deputy Tracey that he was going to commit suicide. These circumstances

demonstrate that Sanchez was aware of a suicide threat; indeed, Sanchez does not seem to contest this. *See* (Sanchez's Reply Br., at 10) (describing "the allegations of Defendant Sanchez's knowledge" include Smith "threaten[ing] suicide, and Deputy Tracey allegedly encourage[ing] him to do so").

Further, the complaint alleges that Sanchez knew that Smith had the means to commit suicide within his cell based on the presence of the telephone. *Gish v. Thomas*, 516 F.3d 952, 954–55 (11th Cir. 2008) ("To be deliberately indifferent to a strong likelihood that the prisoner will commit suicide, the official must be subjectively aware that the *combination* of the prisoner's suicidal tendencies and the feasibility of suicide in the context of the prisoner's surroundings creates a strong likelihood that the prisoner will commit suicide."). Lastly, the complaint alleges that Sanchez heard Deputy Tracey's conversation with Smith where she allegedly taunted him and encouraged him to commit suicide.

The Court finds that these circumstances clearly demonstrate that Sanchez was on notice that Smith was suicidal.[4] The complaint easily passes the subjective knowledge prong of the deliberate indifference standard. *Cole v. Jones*, No. 2:21-cv-26-RAH-KFP, 2024 WL 1601210, at *5 (M.D. Ala. Mar. 13, 2024) (finding that an officer had subjective knowledge of a prisoner's suicide

---

[4] The Court bases this holding only on the circumstances recounted here. The Court therefore need not address questions of Sanchez's knowledge of Smith's prior suicide attempts.

13

risk based on the prisoner telling the officer "directly that he intended to kill himself" and based on the presence of razor blades), *report and recommendation adopted*, No. 2:21-cv-26-RAH, 2024 WL 1343114 (M.D. Ala. Mar. 29, 2024); *Watson v. White*, No. 3:24-cv-265-MCR-HTC, 2024 WL 5691297, at *3 (N.D. Fla. Dec. 30, 2024) (finding the prisoner "alleged facts sufficient to show there was a strong likelihood of suicide" based on a prisoner's threat of suicide in the presence of defendants (citation omitted)), *report and recommendation adopted*, No. 3:24-cv-265-MCR-HTC, 2025 WL 1372844 (N.D. Fla. May 12, 2025).

### 3. Response to Risk

Next, Smith must allege that Sanchez disregarded the risk of suicide by conduct that is more than negligent. *See Snow*, 420 F.3d, at 1268. Sanchez did nothing in response to Smith's suicidal threats. She did not notify other prison officials of the suicide risk; she did not attempt to have Smith moved to a cell that did not contain a potential instrument of suicide; she did not use her own medical knowledge to try to help Smith's obvious mental distress. As Sanchez herself acknowledges, "the allegations are that Defendant Sanchez did not do anything." (Sanchez's Reply Br., at 11).

Sanchez's response was certainly more than negligent, and Smith sufficiently states a claim for deliberate indifference. *See Greason v. Kemp*, 891 F.2d 829, 835–36 (11th Cir. 1990) ("Where prison personnel directly

14

responsible for inmate care have knowledge that an inmate has attempted, or even threatened, suicide, their failure to take steps to prevent that inmate from committing suicide can amount to deliberate indifference." (citations omitted)); *Snow*, 420 F.3d, at 1270 (holding that a defendant's decision to "not take any action to prevent [a detainee's] suicide" could amount to deliberate indifference in violation of the Fourteenth Amendment); *Smith as next friend of H.K. v. Bains*, 2025 WL 627521, at *4 (N.D. Ga. Feb. 26, 2025) (holding that the defendants' decision to do "nothing to mitigate [the] risk" of a prisoner's suicide was "not reasonable"); *Cole*, 2024 WL 1601210, at *7 (holding that when a defendant "had knowledge that Cole was suicidal" and "failed to protect Cole from a suicide attempt or to take preventive steps before Cole sliced his arm, ultimately disregarding the risk" constituted more than grossly negligent conduct that could amount to deliberate indifference).

Sanchez's argument to the contrary fails. She argues that she did not have enough time to "research [Smith], his conditions, and the circumstances to determine the next steps" and that "[b]efore any steps could be reasonably performed, a medical emergency occurred." (Sanchez's Mot. to Dismiss, at 15). The Court rejects this argument. Viewing the facts in the light most favorable to Smith, the complaint alleges circumstances where Sanchez had sufficient time to act—whether it be notifying other prison officials or helping Smith directly—before he made his suicide attempt. (Compl. ¶¶ 24–30). At this stage

15

in the litigation, the Court finds that there are sufficient factual allegations to support the claim that Sanchez's conduct was grossly negligent.

Sanchez also argues that her conduct was reasonable because she "was not a deputy who could remove Plaintiff from Cell 7." (Sanchez's Mot. to Dismiss at 15). This argument fails because removing Smith from the cell was not the only option available to Sanchez. The Court agrees with Smith's point that one alternative option would have been to tell another official about the risk of harm. *Cf. Nelson v. Tompkins*, 89 F.4th 1289 (11th Cir. 2024) (finding that "[i]t is enough to prove that the official had the authority to make ... *recommendations* with respect to placement and classification decisions" when assessing whether an officer's decision to do nothing was a reasonable response to a risk of harm).

Regardless, there is not enough information yet to determine if Sanchez's argument is accurate; discovery is needed. This argument fails as well. In sum, Smith has sufficiently stated a claim for deliberate indifference against Sanchez.

### C. Shotgun Pleading

Lastly, Sanchez argues that Smith's complaint is a shotgun pleading that ought to be dismissed. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320–23 (11th Cir. 2015). This argument is meritless.

First, the Court rejects Sanchez's contention that the complaint makes

conclusory allegations that "are simply regurgitations of the elements of a cause of action and in contravention to the records." (Sanchez's Mot. to Dismiss, at 17). As detailed above, Smith's complaint sufficiently states a claim for deliberate indifference that is supported by a robust factual record that includes dates, quotes, time-stamps, and photographs.

Next, Sanchez asserts that Smith's complaint "lumps all defendants together in the Section 1983 claim without delineating which allegations." (*Id.*). This is wrong. While Count II does reference actions taken by all the Defendants, it specifies the precise conduct of Sanchez's that the claim is based on. Further, the fact section extensively details Sanchez's individual involvement and provides plenty of individualized factual support for the claim.

Smith's complaint is clear, abides by the Federal Rules of Civil Procedure, and adequately gives the Defendants notice of the claims against them. *See Dawson v. City of Jacksonville*, 2023 WL 6972546, at *1 (11th Cir. Oct. 23, 2023) (per curiam) (noting that the purpose of the pleading standards is to "require the pleader to present his claims discretely and succinctly, so that, his adversary can discern what he is claiming and frame a responsive pleading" (quoting *Weiland*, 792 F.3d at 1320)). Accordingly, Sanchez's shotgun pleading argument fails.

17

### IV.     Conclusion

For these reasons, Defendant Sanchez's Motion to Dismiss [Doc. 11] is DENIED, and her Motion to Stay [Doc. 25] is DENIED.

SO ORDERED, this ___27th___ day of June, 2025.

                                                   THOMAS W. THRASH, JR.
                                                   United States District Judge