UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EZRA SMITH,<br><br>    Plaintiff,<br><br>v.<br><br>DEPUTY MONIQUE TRACEY, *et al.*,<br><br>    Defendants. | Civil Action No.: 1:24-cv-05158-TWT |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Pursuant to Rules 15 and 16(b), Plaintiff Ezra Smith files this motion for leave to file the attached proposed Amended Complaint, which seeks to add a state-law claim against Defendants Monique Tracey, Shenequa Jackson, and Raul Gomez for the negligent performance of their ministerial duties. Specifically, during these proceedings, Mr. Smith has learned from Deputy Tracey's post-incident Merit Review Board hearing that the Rockdale County Sheriff's Office instituted a nondiscretionary policy regarding mental health emergencies, which required these deputies to take action after hearing Mr. Smith threaten suicide. As grounds, and for good cause shown, Mr. Smith states:

## I.     BACKGROUND

### A. Facts common to original and proposed amended complaint

Plaintiff Ezra Smith's complaint alleges that on July 8, 2024, he was detained at the Rockdale County Jail after being released from a mental health treatment center. *See* Compl. ¶ 14; *see also* Proposed Amended Complaint ("PAC") ¶ 15. Upon his arrival at the jail, Mr. Smith was taken to booking and put in a holding cell to wait to be processed by jail staff. Compl. ¶ 15; PAC ¶ 16. Throughout the night, he expressed mental distress; for example, a fellow detainee in the holding cell called Defendant Tracey to inform her that Mr. Smith "says he wants to kill himself." Compl. ¶ 16; PAC ¶ 17. Mr. Smith's mother also called the jail and told Defendant Tracey that Mr. Smith had just gotten out of mental health treatment and that he was suicidal. Compl. ¶ 17; PAC ¶ 18. As the night went on, Mr. Smith became increasingly frustrated with being held in booking and began banging on the window and kicking the door of the holding cell. Compl. ¶ 19; PAC ¶ 20. All the Defendants could hear Mr. Smith's disturbances. Compl. ¶ 20; PAC ¶ 21.

Defendant Tracey then approached Mr. Smith. Mr. Smith asked her about the status of his booking, and Defendant Tracey told Mr. Smith that he "was acting like a 'spoiled asshole' and that his mother had called about him." Compl. ¶ 23; PAC ¶ 24. In response, Mr. Smith told Defendant Tracey that he was going to kill himself.

Compl. ¶ 24; PAC ¶ 25. Defendant Tracey responded, "go kill yourself then." *Id.* She repeated this four times, adding that "she wanted to see him do it and to 'be a man about it.'" Compl. ¶ 25; PAC ¶ 26. She also made a hanging gesture with her hand to Mr. Smith. Compl. ¶ 26; PAC ¶ 27. The entirety of this exchange was heard by the other defendants. Compl. ¶¶ 21–26; PAC ¶¶ 22–27. The officers then left Mr. Smith, knowing that there was a telephone with a cord in that cell and Ms. Sanchez returned to her duties at her computer. Compl. ¶¶ 27–28; PAC ¶¶ 28–29.

A few minutes later, Mr. Smith hung himself with a telephone cord that was present in his cell. Compl. ¶ 28; PAC ¶ 29. Defendant Tracey returned to his cell and saw the scene. Compl. ¶ 30; PAC ¶ 31. She called for help, and Defendant Jackson opened the door. Compl. ¶ 30; PAC ¶ 31. Mr. Smith's face was blue, he had blood coming from his nose and urine on his jumpsuit, and the telephone cord was wrapped around his neck. Compl. ¶ 31; PAC ¶ 32. Nurse Sanchez began performing chest compressions because Smith had no pulse and was not conscious. Compl. ¶ 33; PAC ¶ 34. Eventually, Mr. Smith began breathing again and was taken to the hospital and then to behavioral services. Compl. ¶¶ 35–36; PAC ¶ 37–38.

### B. Additional facts supporting breach of ministerial duty claim

As a result of the incident, Defendant Tracey was terminated from the Rockdale County Sheriff's Office following a Merit Review Board hearing, and

Defendants Gomez and Jackson were disciplined. PAC ¶ 40. At the Merit Review Board hearing, a major for the Rockdale County Sheriff's Office explained that its General Order 5.22, which establishes that threat of suicide is a mental health emergency, is a nondiscretionary policy, meaning detention deputies are not permitted to evaluate the legitimacy of the threat of self-harm, but instead are required to escalate the situation to a mental health professional. PAC ¶¶ 41–42.

Based on the evidence of this policy, which was only learned through discovery in this case, Mr. Smith seeks leave to bring a state-law claim against Defendants Tracey, Jackson, and Gomez for their negligent performance of a ministerial duty.

## II.  ARGUMENT

### A. Applicable legal standard

Rule 15 provides that a party may amend its pleading with "the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, a district court will look to determine whether (1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed"; (2) "allowing amendment would cause undue prejudice to the opposing party"; or (3) "amendment would be futile" when considering whether to grant leave under Rule 15(a)(2). *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)

(per curiam). Where the time to amend a pleading under the scheduling order has lapsed, the good cause standard under Rule 16(b) applies as well. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 n.2 (11th Cir. 1998).

Finally, unless "there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988).

**B. This request is based on facts learned during discovery**

The Court should permit Mr. Smith leave to file the proposed amended complaint for good cause shown because its sole purpose is to add a theory of relief against the deputies that was learned through the discovery process.

Specifically, in response to Mr. Smith's discovery requests, the Defendants turned over the video recordings of Defendant Tracey's post-incident Merit Review Board hearing. It was during that hearing that Major Welch of the Rockdale County Sheriff's Office explained that the agency interprets General Order 5.22 to establish a nondiscretionary duty for detention deputies to escalate suicide threats to a mental health professional. Had Mr. Smith learned that the agency interpreted this general order to establish a nondiscretionary duty prior to filing suit, he would have raised the ministerial duty claim in his original complaint. *Cf. Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (affirming denial of motion for leave to amend because information was available to the plaintiff at time of filing

5

initial complaint).

Because this information was only discovered during these proceedings, leave to amend is appropriate under both Rules 15 and the good cause standard under Rule 16(b).

To determine whether good cause is met, courts look to whether the schedule could not have been met "despite the diligence of the party seeking" relief. *Harris v. Reverse Mortg. Solutions, Inc.*, 800 Fed. Appx. 708, 711 (11th Cir. 2020) (citing *Sosa*, 13 F.3d at 1418 (quotations omitted). For example, a party has not been diligent when seeking leave to amend a complaint after the month-long pendency of a motion for summary judgment, *see Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1367 (11th Cir. 2007), or where information providing the basis for the proposed amendment was available to the party before the deadline to amend, *see id.*; *accord Sosa*, 133 F.3d at 1419. Instead, where litigants diligently pursue their rights but cannot meet deadlines for reasons other than their own negligence, courts should exercise their discretion to modify the scheduling order and permit leave to amend. *Payne v. Ryder Sys.*, 173 F.R.D. 537, 539 (M.D. Fla. 1997).

Here, the deadline to amend the complaint was thirty days after the filing of the parties' Joint Preliminary Report, or May 2, 2025. (Doc. 32 at 8–9). At that time, discovery had only just begun and Mr. Smith did not have the several-hour hearing record, during which his counsel would learn of the agency's interpretation

of the general order. For this reason, Mr. Smith has demonstrated good cause to amend his complaint.

### C. The claim is not futile and Defendants will not be prejudiced

Mr. Smith's claim for the negligent breach of a ministerial duty against the detention deputies is based on established law and there is no prejudice to defendants if Mr. Smith is permitted to assert this claim.

Under Georgia law, law enforcement officers are entitled to official immunity from suit and liability unless they "negligently perform a ministerial act or act with actual malice or an intent to injure when performing a discretionary act." *Roper v. Greenway,* 294 Ga. 112, 751 S.E.2d 351, 352 (2013); *see also* Ga. Const. art. I, § II, par. IX(d). Georgia law is clear that an agency's clear and definite policy creating a nondiscretionary duty is sufficient for a breach of ministerial duty claim.  *Grammens v. Dollar,* 287 Ga. 618, 697 S.E.2d 775, 777-78 (Ga. 2010); *see also Roper,* 751 S.E.2d at 353 ("Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty."). Here, the policy, as explained by Major Welch, is that once a detainee or inmate threatens suicide or self-harm, a detention deputy *must* escalate the threat to a mental health professional. There is no discretion in this policy for the officer or deputy to determine whether they subjectively believe the threat is illegitimate.

Thus, the claim is not futile. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (futility means the proposed amendment is "subject to dismissal").

And there is also no prejudice where this additional claim is based on the same operative facts as Mr. Smith's Fourteenth Amendment claims and discovery is ongoing. *Tampa Bay Water v. HDR Engineering, Inc.*, 731 F.3d 1171, 1186 (11th Cir. 2013) (prejudice is likely to exist if amendment involves new theories that require additional discovery; affirming denial of motion for leave because it was filed after discovery closed) (quoting *Bryant*, 252 F.3d at 1164); *In re Air Crash Near Rio Grande Puerto Rico on Dec. 3, 2008*, 2012 WL 3962906, at *4 (S.D. Fla. Sept. 11, 2012) (no prejudice where "the underlying basis for the newly asserted claim is identical to the claim already brought").

To the extent the Defendants believe they need additional time to complete discovery based on this additional claim, Mr. Smith would not object to the same.

### III.   CONCLUSION

For all these reasons, the Court should permit Mr. Smith leave to file the attached proposed amended complaint.

*[Signature Blocks to Follow]*

Dated: September 26, 2025

                                    Respectfully submitted,

| | |
|---|---|
| SPEARS & FILIPOVITS, LLC<br>315 W. Ponce de Leon Ave., Ste. 865<br>Decatur, Georgia 30030<br>(404) 905-2225<br>jeff@civil-rights.law<br>wingo@civil-rights.law<br><br>SLATER LEGAL PLLC<br>2296 Henderson Mill Rd. NE #116<br>Atlanta, Georgia 30345<br>(404) 458-7283<br>james@slater.legal | **Wingo Smith**<br>Wingo Smith<br>Georgia Bar No. 147896<br><br>Jeff Filipovits<br>Georgia Bar No.  825553<br><br>**James M. Slater**<br>James M. Slater<br>Georgia Bar No. 169869 |

9

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14-point typeface.

Dated: September 26, 2025.

|  |  |
|---|---|
| SLATER LEGAL PLLC<br>2296 Henderson Mill Rd. NE #116<br>Atlanta, Georgia 30345<br>(404) 458-7283<br>james@slater.legal | **James M. Slater**<br>James M. Slater<br>Georgia Bar No. 169869 |