IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EZRA SMITH, | ) | |
| | ) | CIVIL ACTION FILE NO. |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | 1:24-cv-05158-TWT |
| MONIQUE TRACEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT TRACEY'S STATEMENT OF MATERIAL FACTS**

COMES NOW Defendant Tracey in the above-styled action, and, pursuant to the Local Rules file this *Statement of Material Facts* in in support of her Motion for Summary Judgment as follows:

1. Plaintiff Ezra Smith was detained in the Rockdale County Jail on July 8, 2022. Smith Dep. at 26.

2. Defendant Monique Tracey was a detention officer. Tracey Dep. at 15:6-9.

3. Tracey had to work in booking because it was so busy and backed up. Tracey Dep. at 39:8-9.

4. Tracey's shift began at approximately 3:00 p.m. Tracey Dep. at 39:19-20.

5. At approximately 8:00 p.m. there were numerous inmates in the holding cell with Smith. Smith Dep. at 29.

6. An inmate pressed the intercom button, and Deputy Tracey answered the intercom. Tracey Dep. at 57.

1

7. An inmate other than Smith jokingly made a statement about a "white guy" wanting to kill himself. Tracey Dep. at 57:20-21; Smith Dep. at 147.

8. By video Tracey could see inside Holding Cell 7 and all of the inmates including Smith were standing around laughing. Tracey Dep. at 60:13-14.

9. Plaintiff testified the call was "formed as a joke." Smith Dep. at 148:14-15.

10. Tracey could see on the video monitor that Smith was denying what was said about him. Tracey Dep. at 57-58, 59-60.

11. Deputy Tracey told the inmates to stop playing with the intercom; she could clearly see that inmate Smith was not in danger and she continued working. Tracey Dep. at 59-60.

12. Deputy Tracey did not believe Smith was a risk for suicide. Tracey Dep. at 87-88.

13. Shortly after 10:30 p.m., Smith's mother called the jail and spoke to Officer Tracey. Tracey Dep. at 74-75; Pittman Dep. at 34 & Ex. 1 (call log).

14. Tracey had other work going on so she was only half listening. Tracey Dep. at 51:15 52:13.

15. The call lasted under 10 minutes. George Dep. at 34.

16. Eventually all of the inmates in Holding 7 were cleared out, except for Smith. Holding Cell Video at 1:25:00.

17. Plaintiff had already been dressed in an orange jail uniform. Holding Cell

2

Video at 1:25:00.

18. Smith started kicking the door and striking the door with his head. Smith Dep. at 37, 60; Tracey Dep. at 49.

19. Officer Tracey went to the cell in an attempt to defuse the situation and get Plaintiff to stop banging his head. Tracey Dep. at 49.

20. According to Plaintiff, in the heated discussion that followed Tracey told him she spoke to his mother, knew everything about him, thought he was a "piece of shit" and "need[ed] to kill himself." Smith Dep. at 48:11-15, 52:14-16.[1]

21. Plaintiff claims he stated he was going to "do it." Smith Dep. at 54:20-22.

22. Nurse Sanchez could hear this discussion and believes she heard Plaintiff's assertion that he would attempt suicide. Sanchez Dep. at 69:14-15.

23. According to Plaintiff this back and forth repeated several times. Smith Dep. at 55:4-6.

24. Plaintiff asserts Deputy Tracey told him he would be there for hours. Smith Dep. at 53:9-12.

25. Deputy Tracey left the window and went back to a desk. Booking Area Video at 1:29:32 *et seq*.

26. Plaintiff asserts that shortly after that he pressed the intercom and stated he

---

[1] Defendant Tracey denies telling Smith to kill himself (Tracey Dep. at 64:15), but under the summary judgment standard Plaintiff's testimony is credited.

3

was suicidal. Smith Dep. at 57:16-18.

27. Plaintiff claims that Deputy Tracey yelled something about killing himself. Smith Dep. at 58:1-6.

28. Plaintiff continued to yell and bang in the cell. Smith Dep. at 67-68; Holding Cell Video at 1:29:32 *et seq*.

29. Video shows that roughly two (2) minutes after Deputy Tracey had left the window, Plaintiff went to the cell area where a telephone was mounted to the wall. Holding Cell Video at 1:31:24; see Jackson Bodycam Video at 1:36:25 (showing telephone configuration).

30. From the video camera mounted in the holding cell, only Plaintiff's feet could be seen. Holding Cell Video at 1:31:40 *et seq*.

31. The Holding Cell Video shows that Plaintiff's feet moved continuously for some time but eventually stopped moving. Holding Cell Video at 1:31:40 *et seq*.

32. Plaintiff had wrapped the telephone cord around his neck and eventually passed out. Smith Dep. at 63:17-24.

33. Deputy Tracey believed the phone cords had been shortened in the past so as to prevent inmates using the cord for self-harm. Tracey Dep. at 56-57, 84:17-19.

34. Within five (5) minutes of leaving the cell window, Deputy Tracey realized

that Plaintiff had stopped yelling and banging, so she went to his cell to investigate. Booking Area Video at 1:33:55 *et seq.*; Tracey Dep. at 41; Jackson Dep. at 79-80.

35. Deputy Tracey saw that Plaintiff was in the cell with the phone cord wrapped around his neck. Tracey Dep. at 41.

36. Deputy Tracey yelled for the keys to be brought to open the cell. Tracey Dep. at 41.

37. Deputy Jackson opened the cell and removed the phone cord from Plaintiff's neck. Jackson Bodycam Video at 1:34:30 *et seq.*

38. Deputy Tracey yelled for the nurse. Sanchez Dep. at 92:18-20, 85:20.

39. Plaintiff was unconscious. Jackson Bodycam Video at 1:34:30 *et seq.*

40. Nurse Sanchez and Deputy Jackson did chest compressions on Plaintiff. Jackson Bodycam Video at 1:35 *et seq.*

41. Soon Plaintiff was revived. Tracey Dep. at 42:8-12.

42. Plaintiff's only non-transitory physical injury from trying to strangle himself consisted of ruptured blood vessels in his eyes. Plaintiff Response to Gomez Interrogatory 12.

43. Rockdale Sheriff's Jail Policy 5.22 (I)(A) is somewhat unclear, but arguably it provides that an inmate's suicide threat should be reported to a "Mental Health Professional" who then is supposed to interview the inmate and

review the medical chart at some unspecified time. Exhibit 1 (Policy 5.22).

44. An "emergency" mental health referral was supposed to be acted upon within 25 hours. Sanchez Dep. at 25:1-10.

45. In cases when events occur "other than normal working hours" so that there is no mental health professional on site—which was the circumstance in this case—Subsection (I)(A)(2) provides that "Jail staff will notify the Medical Department … ." *Id*.; Tracey Dep. at 24-25.

46. In this case Nurse Sanchez was notified because she was close by and heard Plaintiff's suicidal statement(s). Tracey Dep. at 26:2-8; Sanchez Dep. at 69:14-15.

Respectfully submitted,

WILLIAMS & WAYMIRE, LLC

/s/ *Jason Waymire*
Jason C. Waymire
Georgia Bar No: 742602
Attorney for Defendant Tracey

4330 South Lee St., NE
Building 400, Suite A
Buford, Ga 30518-3027
Telephone: (678) 541-0790
Facsimile: (678) 541-0789
jason@wmwlaw.com