UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EZRA SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) | 1:24-cv-05158-TWT |
| v. | ) | |
| | ) | |
| DEPUTY MONIQUE TRACEY, DEPUTY | ) | |
| RAUL GOMEZ, DEPUTY SHENEQUA | ) | |
| JACKSON, and ERICA SANCHEZ, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT RAUL GOMEZ AND SHENEQUA JACKSON'S BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

COME NOW Deputy Raul Gomez (hereinafter "Deputy Gomez") and Deputy Shenequa Jackson (hereinafter "Deputy Jackson") (hereinafter collectively "Deputies Gomez/Jackson"), named defendants in the above-referenced matter, and, pursuant to Fed. R. Civ. Proc. 56 and Northern District Local Rule 56.1, submit this Brief in Support of their Motion for Summary Judgment, and show the Court as follows:

## INTRODUCTION

Plaintiff Ezra Smith ("Plaintiff") initiated the present action on November 11, 2024, by filing a complaint that alleged, *inter alia*, that Deputy Monique Tracey (hereinafter "Deputy Tracey"), Nurse Erica Sanchez (hereinafter "Nurse Sanchez") and Deputies Gomez/Jackson were deliberately indifferent to Plaintiff's "substantial

risks of serious self-harm." <u>See</u> Docs.1; 71,[1] <u>generally</u>.  Plaintiff brings his action

pursuant to 42 U.S.C. § 1983, claiming that Defendants violated his rights under the

Fourteenth Amendment of the United States Constitution, and he also alleges

violations under Georgia law.  Doc. 71, Counts I-III.

As neither Deputy Gomez nor Deputy Jackson had subjective knowledge of a

*strong likelihood* that Plaintiff's self-infliction of harm would occur, Deputies

Gomez/Jackson now respectfully request that this Court grant their Motion for

Summary Judgment on Plaintiff's claims.

## STATEMENT OF FACTS

In May 2024, Plaintiff was booked into the Rockdale County Jail ("County

Jail") and, after evaluation, was admitted into mental health observation/suicide

watch.  Doc. 71, ¶¶ 11-12.  Plaintiff was released and was arrested again and

transported back to the County Jail on July 8, 2024.  <u>Id</u>., ¶¶ 14-15.  At that time,

Plaintiff did not ask to be placed on suicide watch, despite being aware of same.

Plaintiff's depo., p. 117, 1-3.  Specifically, he did not ask to be placed on suicide

watch "because [he] was fine."[2] Plaintiff's depo., p. 117, l. 3.  Plaintiff was placed

---

[1] Plaintiff's amended complaint was filed on November 25, 2025.  Doc. 71.
[2] A nurse would typically only see inmates during booking if there was an emergency.  Jackson depo., p. 47, ll. 1-4.

in Holding Cell 7 with several other inmates/detainees while they were being processed by County Jail staff. Doc. 71, ¶ 16.

Booking was very busy when Plaintiff was being detained. Jackson depo., p. 55, ll. 7-10; Gomez depo., p. 22, ll. 4-6. Deputy Jackson was initially assigned to the kitchen but was then told to report to booking. Jackson depo., p. 17, ll. 23-25 – p. 18, ll. 1-2. Deputy Gomez was also assigned to booking and Deputy Tracey was assigned a security role and movement. Jackson depo., p. 60, ll. 4-8; Gomez depo., p. 21, ll. 23-25. Security role and movement officer would generally assist with tasks in booking. Jackson depo., p. 63, ll. 8-17. Deputy Gomez was primarily working on fingerprinting. Jackson depo., p. 62, ll. 9-13; Gomez depo., p. 35, ll. 17-24. Plaintiff was in the holding cell prior to Deputies Gomez/Jackson's arrival for their shift; however, there was nothing in the pre-shift debriefing that indicated any issues had been identified with Plaintiff. Jackson depo., p. 20, ll. 12-25 – p. 21, ll. 1-7; Gomez depo., p. 76, ll. 19-23; p. 77, ll. 19-21.

At some point, an inmate announced on the holding cell intercom box that Plaintiff allegedly stated that he was thinking about committing suicide. Jackson depo., p. 72, ll. 11-16. Deputy Jackson and/or Deputy Tracey then reported to the holding cell and found all of the inmates laughing, including Plaintiff, and confirmed that nobody needed assistance or a suicide watch. Jackson depo., p. 73, ll. 1-7; p. 81, ll. 1-3; p. 82, ll. 15-23. Plaintiff, familiar with suicide services available,

specifically stated that he was not suicidal.[3]  Jackson depo., p. 82, ll. 24-25 – p. 83, l. 1; Tracey depo., p. 58, ll. 16-18.   Deputy Gomez does not recall an inmate calling in through the intercom.  Gomez depo., p. 45, ll. 17-23; IA File, attached hereto as Exhibit A, p. 2.   Under general practices up to that time, it was up to a deputy's discretion whether to report when an inmate states that they are suicidal.  Jackson depo., p. 82, ll. 17-24.   An officer would initially assess and get control of the situation.  Gomez depo., p. 73, ll. 3-7; Tracey depo., p. 22, ll. 2-13.   If it was determined the inmate is actually threatening suicide, it should be reported.  Tracey depo., p. 26, ll. 2-13.

Booking took a long time because of a significant number of inmates requiring booking; Plaintiff was the last person in the holding cell and began banging on the door.[4]  Jackson depo., p. 77, ll. 9-12; Gomez depo., p. 69, ll. 9-13.  Deputy Tracey then went over to the holding cell to check on Plaintiff and began arguing with Plaintiff.  Jackson depo., p. 78, ll. 4-10; Gomez depo., p. 50, ll. 2-3; p. 69, ll. 14-18.

---

[3] Plaintiff admittedly has a history of joking about committing suicide but not actually attempting suicide – Plaintiff would tie a blanket around his neck but was aware it would not result in suicide. Plaintiff's depo., p. 103, ll. 10-23; p. 105, ll. 8-16.

[4] During the relevant time, Deputy Jackson did not look at Plaintiff's file. Jackson depo., p. 83, ll. 11-13.   Deputy Jackson did not tell Deputy Tracey that she would not process Plaintiff's file.   Jackson depo., p. 96, ll. 10-24. She also did not tell Deputy Gomez to leave Plaintiff unprocessed.  Jackson depo., p. 96, l. 1 – p. 97, ll. 1-2; Gomez depo., p. 78, ll. 18-23.

Deputy Jackson was not aware of what they were saying to each other.  Jackson depo., p. 78, ll. 8-14; IA File, p. 3.  It seemed like a normal disruption/dispute that Deputy Tracey would handle/report by herself and not one that indicated Plaintiff would attempt to harm himself.  Gomez depo., p. 81, ll. 20-25; p. 82, ll. 12-16. Plaintiff does not have any other knowledge about what Deputy Gomez was aware of other than the interaction between Plaintiff and Tracey, generally.  Plaintiff's depo., p. 112, ll. 4-17.  Plaintiff only had minor dispute interactions with Deputy Jackson.  Plaintiff's depo., p. 114.  However, Plaintiff claims that Deputy Jackson heard the interaction between Deputy Tracey and Plaintiff but that Deputy Tracey instructed Deputy Jackson to turn off the intercom/communication.  Plaintiff's depo., p. 115; p. 116, ll. 10-13.  Nurse Sanchez observed some disagreement between Deputy Tracey and Plaintiff but did not see Deputy Gomez or Deputy Jackson involved in the interaction. Sanchez depo., p. 110.

Deputy Jackson was not aware of the context of the argument and told Deputy Tracey to stop the argument.  Jackson depo., p. 79, ll. 8-11; Gomez depo., p. 49, ll. 23-25; Tracey depo., p. 46, ll. 9-11.  Even with the arguing, Deputy Tracey did not believe that Plaintiff was suicidal and did not communicate any concerns about suicide to Deputies Gomez/Jackson.  Tracey depo., p. 87, ll. 21-23.   At this time, Deputy Gomez was at the fingerprinting machine with another inmate and was not paying attention to the holding cell.  Gomez depo., p. 50, ll. 19-24.

Deputy Tracey then went back to the booking platform; checked the cell camera; could not see Plaintiff and went back to the cell; and, found Plaintiff kneeling by the phone. Jackson depo., p. 79, ll. 24-25 – p. 80, ll. 1-5. Deputy Gomez secured the inmate he was working with and responded to the holding cell. Gomez depo., p. 52, ll. 13-22.

Plaintiff did, then, in fact, attempt to hang himself by wrapping the telephone cord around his neck. Doc. 71, ¶ 32. County Jail staff promptly responded and were able to revive Plaintiff. Id., ¶¶ 33-36. Following an internal investigation, it was determined suicide-prevention procedures could have begun after Plaintiff and Deputy Tracey were arguing. Gomez depo., p. 66, ll. 5-9. However, at the time Deputy Gomez did not believe he needed to intervene and report the argument between Deputy Tracey and Plaintiff. Gomez depo., p. 86, ll. 7-16. It was determined that Deputy Tracey violated the "5.22 – Suicide Prevention and Intervention" policy and she was terminated. Doc. 71, ¶¶ 40-42; IA File, p. 5. Deputies Gomez/Jackson were issued a written reprimand. Id.

## ARGUMENT AND CITATION OF AUTHORITY

### I.    Standard on Motion for Summary Judgment.

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden

of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Burger King Corp. v. E-Z Eating, 41 Corp., 572 F.3d 1306, 1313 (11th Cir. 2009).  In the absence of a material issue of fact, the burden shifts to the non-movant. Id.  "For factual issues to be considered genuine, they must have a real basis in the record." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1303 (11th Cir. 2009).

"A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). While the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Id. The nonmoving party does not "satisfy its burden if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." Jones v. UPS Ground Freight, 683 F.3d 1283, 1292 (11th Cir. 2012).

## II.    **Deputies Gomez/Jackson did not personally participate in the events leading to Plaintiff's self-infliction of harm to be held liable under § 1983.**

Without some degree of personal participation in the alleged deprivation of a plaintiff's rights by the defendant in a suit under § 1983, no liability can exist. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).  In other words, there must be an affirmative link between the individual defendant's actions and the alleged deprivation of a constitutional right.  Rizzo v. Goode, 423 U.S. 362 (1976). Moreover, "when individuals are being sued in individual capacities for damages for personal injuries, the causation inquiry must be more refined and focused than that undertaken . . . where only declaratory and injunctive relief [are] sought for constitutional violations..."  Williams v. Bennett, 689 F.2d 1370, 1383 (11th Cir. 1982).

In the case *sub judice*, Deputies Gomez/Jackson must have "either directly participated in the unconstitutional conduct" or there must be "a causal connection…between the…actions and the alleged constitutional violation." Keith v. DeKalb Cty., 749 F.3d 1034, 1047(11th Cir. 2014).  Neither exist here.   First, although Deputies Gomez/Jackson were posted in the County Jail and overheard the argument between Deputy Tracey and Plaintiff, nothing suggests Deputies Gomez/Jackson directed or were personally involved in the alleged unconstitutional conduct or requested directly to become involved or respond to Plaintiff. Id.;  See

Smith v. LePage, 834 F.3d 1285, 1298 (11th Cir. 2016).   Deputies Gomez/Jackson did not respond to Plaintiff's cell; did not hear him state that he was suicidal; Plaintiff previously relayed to Deputy Jackson that he was not suicidal; and, nothing shows that Deputies Gomez/Jackson had subjective knowledge of a *strong likelihood* that Plaintiff's self-infliction of harm would occur.   Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1115 (11th Cir. 2005).

Second, self-infliction of injury is an independent intervening cause, which may suffice to break the causal connection between the conduct of the corrections officer and any injury sustained by an inmate. Id. at 1120. While causation is not defeated, and the officer is not relieved of liability, if the intervening cause "was foreseeable or reasonably might have been foreseen by the wrongdoer," Id., Plaintiff's own conduct and limited interactions with Deputies Gomez/Jackson eliminated foreseeability. The key inquiry is whether "it was reasonably foreseeable that harm would befall [Plaintiff] either directly or indirectly as a result of the actions and omissions of the [Deputies Gomez/Jackson]." Id. Again, no facts tie Deputies Gomez/Jackson personally to subjective knowledge of a *strong likelihood* that Plaintiff's self-infliction of harm would occur.

Plaintiff had very limited interactions with Deputies Gomez/Jackson. Plaintiff's depo., p. 112, ll. 4-17; p. 114; p. 115; p. 116, ll. 10-13.  During one of the interactions with Deputy Jackson, Plaintiff even specifically stated that he was not

suicidal.  Jackson depo., p. 82, ll. 24-25 – p. 83, l. 1; Tracey depo., p. 58, ll. 16-18.

During the argument between Deputy Tracey and Plaintiff, Deputy Jackson was not

aware of what they were saying to each other.  Jackson depo., p. 78, ll. 8-14; IA File,

p. 3.  Deputy Gomez believed it was just a normal officer/inmate argument that

Tracey would handle/report by herself and included no indication that Plaintiff

would actually attempt to harm himself: not in the interactions with Deputies

Gomez/Jackson.  Gomez depo., p. 81, ll. 20-25; p. 82, ll. 12-16.   As such, it was

not reasonably foreseeable that harm would befall Plaintiff either directly or

indirectly as a result of the actions and omissions of Deputies Gomez/Jackson.

Cook, 402 F.3d 1092.  Accordingly, the claims against Deputies Gomez/Jackson are

without merit and should be dismissed.

### III.   **Deputies Gomez/Jackson, in their individual capacities, are entitled to qualified immunity.**

#### A.   **Qualified Immunity Standard.**

Government officials acting in their discretionary duties are entitled to

qualified immunity from individual capacity suits.  Charles v. Johnson, 18 F.4th 686

(11th Cir. 2021) (citing Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002)).

Qualified immunity protects them from suit unless they violate "clearly established

statutory or constitutional rights of which a reasonable person would have known."

Id. (citing Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Harlow v. Fitzgerald,

457 U.S. 800, 818 (1982)). Qualified immunity is a question of law for the courts, even when asserted on summary judgment. <u>Post v. City of Ft. Lauderdale</u>, 7 F.3d 1552, 1557 (11th Cir. 1993) (<u>citing</u> <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)). Thus, qualified immunity protects a government official from being sued for damages under § 1983 unless preexisting law clearly establishes the unlawfulness of his actions, such that any reasonable official in his position would be on notice that his conduct was unlawful. <u>Hunter v. Leeds, City of</u>, 941 F.3d 1265, 1278 (11th Cir. 2019) (<u>citing</u> <u>Morton v. Kirkwood</u>, 707 F.3d 1276, 1280 (11th Cir. 2013).

In order to enjoy qualified immunity, a public official must first prove that she was acting within the scope of her discretionary authority when the allegedly wrongful acts occurred. <u>Penley v. Eslinger</u>, 605 F.3d 843, 849 (11th Cir. 2010). A government official acts within her discretionary authority if the actions were (1) undertaken pursuant to the performance of her duties and (2) within the scope of her authority. <u>Maughon v. City of Covington</u>, 505 Fed. Appx. 818, 820 (11th Cir. 2013). A Court looks to the general nature of a defendant's action, not the specific alleged unconstitutional conduct. <u>Id.</u> at 821.

Here, Plaintiff alleges that Deputies Gomez/Jackson violated his Fourteenth Amendment rights while he was detained at the County Jail. Doc. 71, generally. As such, Deputies Gomez/Jackson's actions alleged in Plaintiff's Complaint were undertaken pursuant to the performance of their duties and within the scope of their

authority and, thus, were indisputably within the scope of their discretionary authority.  See Jackson v. West, 787 F.3d 1345, 1352 (11th Cir. 2015); Smithers v. Tweedy, 375 Ga. App. 877 (2025), cert. denied (Nov. 18, 2025) (Deputy who worked at jail as wing control officer had "discretionary duty" to monitor facility through video surveillance cameras, and thus was entitled to qualified immunity with respect to wrongful death action); see, e.g., Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (officer conducting arrest was clearly "acting within the course and scope of his discretionary authority").

Once the defendant establishes that she was acting within her discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate.  Charles, 18 F.4th at 698 (citing Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Lee, 284 F.3d at 1194)).  Plaintiff must satisfy a two-part test to meet the burden. See e.g., McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009).  The Court is required to grant qualified immunity unless the plaintiff can demonstrate two things: (1) that the facts, when construed in the plaintiff's favor, show that the official committed a constitutional violation and, if so, (2) that the law, at the time of the official's act, clearly established the unconstitutionality of that conduct.  Singletary v. Vargas, 804 F.3d 1174, 1180 (11th Cir. 2015).

"Clearly established" means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable officer would understand that what she

is doing is unlawful. <u>Charles</u>, 18 F.4th at 698 (cit. omitted).  The critical inquiry is whether the law provided a law enforcement officer with fair warning that his conduct violated the Constitution.  <u>Coffin v. Brandau</u>, 642 F.3d 999, 1013 (11th Cir. 2011).  Qualified immunity protects from suit all but the plainly incompetent or one who is knowingly violating the federal law. <u>Donald v. Norris</u>, 131 F.4th 1255, 1263 (11th Cir. 2025).

### B.    <u>Plaintiff cannot show evidence that Deputies Gomez/Jackson violated his Fourteenth Amendment rights.</u>

"[I]n a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under ... the ... fourteenth amendment, the plaintiff must show that the jail official displayed 'deliberate indifference' to the prisoner's taking of his own life."  <u>Cook</u>, 402 F.3d at 1115; (quoting <u>Edwards v. Gilbert</u>, 867 F.2d 1271, 1274–75 (11th Cir.1989)). "To establish a defendant's deliberate indifference, the plaintiff has to show that the defendant had '(1) subjective knowledge of a risk of serious harm; [and] (2) disregard[ed] ... that risk; (3) by conduct that is more than mere negligence.'" <u>Id</u>. (cit. omitted). This Court has held, in a prison suicide case, deliberate indifference requires that the defendant deliberately disregard "a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur." <u>Id</u>. (emphasis in original). "[T]he mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners."

Id.

The record in this case is utterly devoid of any evidence that Deputies Gomez/Jackson had any such specific knowledge. Rather, when Deputy Jackson initially approached Plaintiff to assess whether he needed assistance, Plaintiff was laughing and stated that he was not suicidal. Jackson depo., p. 73, ll. 1-7; p. 81, ll. 1-3; p. 82, ll. 15-23; p. 82, ll. 24-25 – p. 83, l. 1; Tracey depo., p. 58, ll. 16-18. Deputy Gomez has no knowledge of this interaction. Gomez depo., p. 45, ll. 17-23; IA File, p. 2. At the time of the argument, Deputy Jackson was not aware of what they were saying to each other. Jackson depo., p. 78, ll. 8-14; IA File, p. 3. Deputy Gomez believed that, as a more experienced deputy, Deputy Tracey would handle/report by herself and not that Plaintiff would attempt to harm himself. Gomez depo., p. 81, ll. 20-25; p. 82, ll. 12-16.

Accordingly, Deputies Gomez/Jackson did not have the requisite knowledge of a strong likelihood that the self-infliction of harm will occur to constitute a constitutional violation. Plaintiff cannot satisfy the first prong of the shifted qualified immunity analysis. Schmelz v. Monroe County, 954 F.2d 1540, 1545 (11th Cir.1992) ("[n]o matter how defendants' actions might be viewed, the law of this circuit makes clear that they cannot be liable under § 1983 for the suicide of a prisoner who never had threatened or attempted suicide and who had never been considered a suicide risk.").

**C.    The rights at issue were not clearly established.**

Under the second prong of the test, even assuming a constitutional violation, a defendant is entitled to qualified immunity unless the plaintiff can show that his rights were "clearly established" at the time of the subject incident.  Singletary v. Vargas, 804 F.3d 1174, 1184 (11th Cir. 2015) (citing Plumhoff v. Rickard, 134 S.Ct. 2012, 2023 (2014)).  In assessing the second prong, the Court asks, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Maughon, 505 Fed. Appx. at 821.  "The salient question is whether the state of the law at the time of an incident provided 'fair warning' to the defendant[ ] that [his] alleged conduct was unconstitutional." Singletary, 804 F.3d at 1184 (citing Tolan v. Cotton, 134 S.Ct 1861, 1866 (2014)).  Here, materially similar precedent from the Eleventh Circuit did not provide fair warning of unconstitutional conduct to Deputies Gomez/Jackson (see supra Sec. III B); rather, Eleventh Circuit precedent supports that Deputies Gomez/Jackson's conduct complied with the Fourteenth Amendment. Id.; Cook, 402 F.3d 1092; Tweedy, 375 Ga. App. 877

Based on Deputies Gomez/Jackson's lack of subjective knowledge of a *strong likelihood* that Plaintiff's self-infliction of harm would occur, it is clear that Deputies Gomez/Jackson did not violate any of Plaintiff's clearly established constitutional rights.  Rather, Deputy Jackson witnessed Plaintiff laughing and denied any suicidal

thoughts.  Jackson depo., p. 82, ll. 24-25 – p. 83, l. 1; Tracey depo., p. 58, ll. 16-18.

Deputy Tracey, without knowledge or participation by Deputies Gomez/Jackson,

escalated the situation, which rapidly evolved and led to an intentional act committed

by Plaintiff.  Cook, 402 F.3d at 1120 ("Self-infliction of injury, however, is treated

as an independent intervening cause, which may suffice to break the causal

connection between the conduct of the corrections officer and any injury sustained

by the inmate.").  As such, it was not "clearly established" at the time of the subject

incident that Deputies Gomez/Jackson's actions constitute a violation of Plaintiff's

rights under the Fourteenth Amendment.

## IV.    The Court should not exercise supplemental jurisdiction of Plaintiff's state law claims.

Deputies Gomez/Jackson are also entitled to official immunity as to Plaintiff's

state law claims.  See Ga. Const. of 1983, Art. I, § II, ¶ IX(d); Gilbert v. Richardson,

264 Ga. 744, 753, 452 S.E.2d 476, 483 (1994). However, to the extent any of

Plaintiff's state law claims are not dismissed, the Court should not exercise

supplemental jurisdiction over same.  The doctrine of supplemental jurisdiction or

pendant jurisdiction permits "federal courts to decide certain state-law claims

involved in cases raising federal questions" when doing so would promote judicial

economy and procedural convenience. Ameritox, Ltd. v. Millennium Labs., Inc., 803

F.3d 518, 530 (11th Cir. 2015) (cit. omitted); See 28 U.S.C. § 1367(c)(3) (permitting

district courts to decline to exercise supplemental jurisdiction over state-law claims when "the district court has dismissed all claims over which it has original jurisdiction").

Here, as discussed above, Plaintiff's federal claims are subject to dismissal and the Court should decline to exercise supplemental jurisdiction.

## V.    Plaintiff is not entitled to punitive damages or attorney's fees under 42 U.S.C. § 1988.

42 U.S.C. § 1988(b) provides, in pertinent part:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

Thus, §1988 only authorizes fee awards to "prevailing parties." Ellis v. Wright, 293 Fed. Appx. 634, 634 n.1 (2008) (citing 42 U.S.C. § 1988). A party is not a prevailing party until they have prevailed on the merits of at least one of their claims. Id.  As Plaintiff cannot prevail on his § 1983 action, he is not entitled to attorney's fees under 42 U.S.C. § 1988.

Under federal law, although punitive damages may be awarded against government officials sued in their individual capacity, Kentucky v. Graham, 473 U.S. 159, 167 n.13 (1985), "the evidence must [show] that the defendant was

motivated by an evil motive or intent, or there must be reckless or callous indifference to federally protected rights." <u>Anderson v. City of Atlanta</u>, 778 F.2d 678, 688 (11th Cir. 1985). As discussed above, Plaintiff cannot show that Deputies Gomez/Jackson violated Plaintiff's rights or that they acted with an evil motive or intent. As such, Plaintiff is not entitled to punitive damages under federal law.

<u>**Conclusion**</u>

WHEREFORE, for all the reasons herein, Deputies Gomez/Jackson respectfully request that this Honorable Court grant their Motion for Summary Judgment as to Plaintiff's remaining claim against them.

This 9th day of December, 2025.

Respectfully submitted,

**BUCKLEY CHRISTOPHER & HENSEL, P.C.**

<u>/s/ Timothy J. Buckley III</u>
TIMOTHY J. BUCKLEY III
Georgia State Bar No. 092913
ERIC J. O'BRIEN
Georgia State Bar No. 383754
Attorneys for Defendants Gomez & Jackson

2970 Clairmont Road, NE
Suite 650
Atlanta, Georgia 30329
(404) 633-9230
(404) 633-9640 (facsimile)
tbuckley@bchlawpc.com
eobrien@bchlawpc.com

-18-

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on December 9, 2025, I filed and served DEFENDANT RAUL GOMEZ AND SHENEQUA JACKSON'S BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT upon all parties to this matter using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

| | |
|---|---|
| Jeff Filipovits, Esq.<br>Wingo Smith, Esq.<br>Spears & Filipovits, LLC<br>315 W. Ponce de Leon Ave., Ste. 865<br>Decatur, Georgia 30030<br>jeff@civil-rights.law<br>wingo@civil-rights.law | James M. Slater, Esq.<br>Slater Legal PLLC<br>2296 Henderson Mill Rd. NE #116<br>Atlanta, Georgia 30345<br>james@slater.legal |
| Jason C. Waymire, Esq.<br>Williams & Waymire<br>4330 South Lee Street<br>Bldg. 400, Suite A<br>Buford, Georgia 30581<br>jason@wmwlaw.com | Michael G. Frankson, Esq.<br>Antonio E. Veal, Esq.<br>Lindsey Adams, Esq.<br>Huff, Powell, & Bailey, LLC<br>999 Peachtree Street, Ste. 950<br>Atlanta, Georgia 30309<br>mfrankson@huffpowellbailey.com<br>aveal@huffpowellbailey.com<br>ladams@huffpowellbailey.com |

Respectfully submitted,[5]


**{Signature on the following page.}**

---

[5] This is to further certify that this document was prepared in Times New Roman font, 14 point, in compliance with Local Rule 5.1(C).

-19-

**BUCKLEY CHRISTOPHER &
HENSEL, P.C.**

/s/ Timothy J. Buckley III
TIMOTHY J. BUCKLEY III
Georgia State Bar No. 092913
ERIC J. O'BRIEN
Georgia State Bar No. 383754
Attorneys for Defendants

2970 Clairmont Road, NE
Suite 650
Atlanta, Georgia  30329
(404) 633-9230
(404) 633-9640 (facsimile)
tbuckley@bchlawpc.com
eobrien@bchlawpc.com