# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| EZRA SMITH, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION FILE NO. |
| ) | 1:24-cv-05158-TWT |
| v. ) | |
| ) | |
| DEPUTY MONIQUE TRACEY, ) | |
| DEPUTY RAUL GOMEZ, DEPUTY ) | |
| SHENEQUA JACKSON, and ERICA ) | |
| SANCHEZ, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT ERICA SANCHEZ'S
## STATEMENT OF MATERIALS FACTS NOT AT ISSUE

Defendant Erica Sanchez files her Statement of Material Facts Not at Issue pursuant to Fed. R. Civ. P. 56 and L.R. 56.1(B)(1). Defendant Sanchez submits the following:

1. Defendant Sanchez was a Licensed Practical Nurse who worked for NaphCare in the Rockdale County Jail. (Erica Sanchez Dep. T. 7:24-25; 8:1-23.)

2. Defendant Sanchez is BLS (Basic Life Support) certified and worked in correctional care from 2018 through the date of her deposition either at Armor, Wellpath, or NaphCare. (*Id.* at 10:11-25; 11:1-25; 12:1-25; 12:1-25; 13:1-25; 14:1-25; 16:1-19.)

3. Defendant Sanchez explained the general intake process at the Rockdale County Jail as it related to NaphCare: There is an initial screening when an offender is first arrested and enters the jail. At that time, medical staff inquires about chronic medical issues, suicidal ideations, and whether an offender should be taken to a hospital or allowed to enter the jail. There is a separate screening after an offender is official booked into the jail. (*Id.* at 37:5-20.)

4. Defendant Sanchez does not know about an inmate or know that she needs to conduct her initial screening until after the official booking occurs and the inmate is placed in her queue. (*Id.* at 96:22-25; 97:1-21.)

5. Defendant Sanchez arrived at the Rockdale County Jail on July 8, 2024, around 7:15 p.m. for her shift (*Id.* at 50:4-11.), she was not assigned to the initial screening area (*Id.* at 51:6-9.), and did not know whether Plaintiff went through the initial screening process. (*Id.*)

6. Plaintiff had not yet gone through the second or booking screening that occurs after he would have been officially booked into the jail. (*Id.* at 51:13-20.)

7. Earlier in the night deputies approached the cell where Plaintiff and other inmates were located, inquired about anyone being suicidal, and the inmates responded by laughing and stating that none of them were suicidal. (Shanequa Jackson Dep. T. 72:19-25; 73:1-7; 74:5-25; 75:1-4.)

8. Deputy Jackson did not "report" the incident because "they were all in there joking and playing. It seemed as if they were just saying stuff to get our attention, to get them to get us to move faster." (*Id.* at 80:21-25; 81:1-3.)

9. Plaintiff agreed that he told other inmates that he was suicidal on July 8, 2024, because he thought about it, so he joked about. (Plaintiff's Dep. T. 77:19-25; 78:1-25; 79:1-16.)

10. Plaintiff also explained that "too often" he jokes about suicide; but nevertheless, he should be taking seriously because "there's a little truth in every joke;" and that someone cannot know when he is joking if he has told them he was joking. (Plaintiff's Dep. T. 84:16-25; 85:1-25; 86:1-5).

11. Defendant Sanchez could not hear all the communications between or among the deputies and Plaintiff.

    a. She cannot hear when someone calls on the intercom from booking or from the holding cells. (Sanchez Dep. T. 63:12-15.)

    b. No one talked to her about Plaintiff or told her anything Plaintiff may have said. (*Id.* at 63:16-26; 64:1-22-25; 65:1-3.)

12. Deputy Jackson described the interaction between Deputy Tracey and Plaintiff as the two "yelling at each other." (Jackson Dep. T. 77:5-25.)

13. Deputy Gomez agreed that Plaintiff and Deputy Tracey were yelling at each other. (Raul Gomez Deposition T. 50:1-18.)

14. Defendant Sanchez explained that she would have assessed an inmate if an officer told her that he wanted to kill himself or herself. (*Id.* at 12-21.)

15. Defendant Sanchez did not become aware of Plaintiff being housed in the jail until she entered his cell to perform CPR (*Id.* at 67:20-25.), and she was not made aware of anyone remaining in the respective holding cell until the person who was later identified as Plaintiff was kicking the door. (*Id.*)

16. Defendant Sanchez could hear an audible exchange between Deputy Tracey and Plaintiff, but she could not hear all of Plaintiff's statements. (*Id.* at 68:20-25; 69:1-17; 70:16-25; 71:1-1.)

17. Defendant Sanchez explained that based on her corrections experience and inmates commonly feigning suicidal ideations, she did not feel Plaintiff was suicide risk, and she felt it was more behavioral based on the exchange between Plaintiff and Deputy Tracey. (*Id.* at 74:5-25; 75:1-16; 99:19-25; 100:1-3; 106:21-25; 107:1-25; 108:1-25; 109:1-10.)

18. Consistent with Defendant Sanchez's experience and explanation, Deputy Jackson explained by Plaintiff purported suicidal ideations were not deemed credible. (Jackson Dep. T. 81:17-24; 82:15-23; 83:1.)

19. Deputy Gomez explained that he did not Plaintiff was actually suicidal because "they were just arguing with each other, like, a normal argument." (Gomez Dep. T. 82:12-16.)

20. Plaintiff agrees that he and Deputy Trace had "a lot of back-and-forth confrontation." (Plaintiff's Deposition T. 48:5-8)

21. Plaintiff stated that he would commit certain acts to get the attention of jail staff.

    a. Hitting head against glass and wall: Plaintiff's Dep. T. 60:1-25; 61:1-25; 62:1-16; 100:25; 101:1-8

    b. Pressing Intercom Button: *Id.* at 35:24-25; 36; 1-25; and

    c. Kicking Door: *Id.* at 1-16.

22. Plaintiff stated that he attempted to commit suicide after the deputies no longer responded to his requests and because "Tracey" told him to do it and that he was only "considering it" because it is "always there." (Plaintiff's Dep. T. 62:17-25; 63:1-16; 67:6-25; 68:1-10)

23. Deputy Tracey did not believe Plaintiff was actually suicidal. (Monique Tracey Deposition T. 87:9-25; 88:1-6.)

24. Defendant Sanchez further explained what behavioral meant: "Meaning he's not getting his way or he's not – he's not getting his way. He's not being told what he wants to know." (*Id.* at 77:2-13.)

25. Defendant Sanchez began CPR and was part of the team who revived Plaintiff after he attempted to commit suicide. (*Id.* at 82:1-25; 85:3-18.)

Respectfully submitted this 9th day of December, 2025.

*/s/Antonio E. Veal*
Michael G. Frankson
Georgia Bar No.: 173835
Antonio E. Veal
Georgia Bar No.: 460007

*Counsel for Defendant Erica Sanchez*

HUFF, POWELL & BAILEY, LLC
999 Peachtree Street, Suite 950
Atlanta, Georgia 30309
Telephone: (404) 892-4022
Fax: (404) 892-4033
Email: mfrankson@huffpowellbailey.com
Email: aveal@huffpowellbailey.com

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that the foregoing DEFENDANT ERICA SANCHEZ'S STATEMENT OF MATERIALS FACTS NOT AT ISSUE was electronically filed using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

James M. Slater<br>
Slater Legal PLLC<br>
2296 Henderson Mill Road, NE, Number 116<br>
Atlanta, Georgia 30345<br>
james@slater.legal

Respectfully submitted this 9th day of December, 2025.

/s/Antonio E. Veal
Michael G. Frankson
Georgia Bar No.: 173835
Antonio E. Veal
Georgia Bar No.: 460007

*Counsel for Defendant Erica Sanchez*

HUFF, POWELL & BAILEY, LLC
999 Peachtree Street, Suite 950
Atlanta, Georgia 30309
Telephone: (404) 892-4022
Fax: (404) 892-4033
Email: mfrankson@huffpowellbailey.com
Email: aveal@huffpowellbailey.com