IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EZRA SMITH,

      Plaintiff,                    Civil Action No.:

v.                              1:24-cv-05158-TWT

DEPUTY MONIQUE TRACEY, *et al.*,

      Defendants.

## UNIFIED STATEMENT OF ADDITIONAL MATERIAL FACTS RELEVANT TO DEFENDANTS TRACEY, JACKSON, AND GOMEZ'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, Plaintiff Ezra Smith provides the following additional material facts as to Defendants Tracey, Jackson, and Gomez, which present a genuine issue for trial.

*Background*

1. On July 6, 2024, Plaintiff was released from a psychiatric hospital after being treated for suicidal ideations. Smith Dep. 92:17.

2. On July 8, 2024, after his release from treatment, Plaintiff was transported to the Rockdale County Jail to be detained for a for a probation violation. Pittman George Dep. 27:13–28:5.

3.　On July 8, 2024, Plaintiff was being held in a booking cell with 9 to 10 other detainees. Tracey Dep. 58:19-23; Gomez Dep. 29:18-21.

4.　On July 8, 2024, Defendants Gomez, Tracey, and Jackson were assigned to the booking area of the jail. Jackson Dep. 58:24–59:8; Tracey Dep. 39:6-15; Gomez Dep. 21:23-25.

5.　Among the duties of Defendants Gomez, Tracey, and Jackson were to process inmates who were held in the booking cells. Jackson Dep. 59:24–60:15; Tracey Dep. 39:16-20.

*Initial suicide warning from inmates*

6.　While Plaintiff was held in the holding cell, he was thinking about committing suicide and talked about it with the other inmates in his cell. Smith Dep. 77:19–78:1; 79:2–7.

7.　Specifically, Plaintiff told the other inmates that he planned to kill himself in front of his wife. Doc. 89-1, Declaration of Ezra Smith ("Smith Decl.") ¶¶ 5-6.

8.　Although Plaintiff often joked about committing suicide, he only did so because he was actively considering committing suicide. Smith Dep. 79:2–4; 84:16–23; 103:15–104:16.

9.   Although Plaintiff told the other inmates that he was joking about killing himself in front of his wife, one of the inmates decided to tell detention officers about Plaintiff's statements. Smith Dep. 78:7–10, 85:17–25.

10.  As a result, some of the detainees called out on the intercom that, "He's going to kill himself. This white guy says he's going to kill himself." Tracey Dep. 57:17-21, 58:19-25, 59:9-20; Jackson Dep. 70:11–16, 71:19–21.

11.  The intercom system allows inmates to communicate with detention officers who are at the desk of the holding area. Jackson Dep. 71:21–72:14.

12.  Defendant Jackson heard the report over the intercom that Plaintiff was suicidal. Jackson Dep. 72:19–22.

13.  Defendant Jackson falsely claims that after the initial suicide report, they checked on the booking cell and Plaintiff and others were laughing. Jackson Dep. 71:25–72:7. Defendant Jackson also falsely claims that, after the initial report that Plaintiff was suicidal, Plaintiff was laughing and joking. Jackson Dep. 81:13–23.

14.  In reality, neither Defendant Jackson nor any other detention officer went to the cell to check on Plaintiff. See generally Doc. 89-6, Ezra Smith Booking Area 07-09-2024.mp4. Neither Defendant Tracey nor Jackson

3

approached the booking cell; they both stayed on their platform. Tracey Dep. 60:11-25.

15. Plaintiff never told any of the officers that he was joking. Smith Decl. ¶ 7.

*Call from Plaintiff's mother*

16. After the report that Plaintiff was suicidal from other inmates, Plaintiff's mother called the jail and spoke to Defendant Tracey. Tracey Dep. 50:15–51:9, 59:1-4.

17. Defendant Tracey put Plaintiff's mother's call on speaker phone in the booking area. Tracey Dep. 52:6-7.

18. Plaintiff's mother told Defendant Tracey that her son was just released from a crisis center because of his suicidal behavior and that he "didn't feel like he had a reason to go on." Pittman George Dep. 37:15–38:8.

19. Plaintiff's mother told Defendant Tracey she was worried about Plaintiff and gave her the backdrop on everything that had happened with Plaintiff's wife leaving him and his suicidal ideations. Pittman George Dep. 35:23–36:12, 37:15-23.

20. Plaintiff's mother told Defendant Tracey she was "worried about" Plaintiff and asked Defendant Tracey to look out for him because it was possible he could hurt himself. Pittman George Dep. 36:7-12.

21. In response, Defendant Tracey told Ms. Pittman George that she would
    look out for Plaintiff. Pittman George Dep. 37:15-23.

*Plaintiff is left alone in the cell*

22. At about 1:00 a.m., all other inmates in the holding cell had been processed
    and Plaintiff was the only one who remained in the cell. Jackson Dep.
    74:16–19; Gomez Dep. 80:13–23.

23. After other inmates were removed from Cell 7, Defendants Tracey and
    Jackson got to a final folder for processing—Plaintiff's blue folder. Tracey
    Dep. 39:21-40:24.

24. Defendant Tracey asked Defendant Jackson whose folder it was, to which
    Defendant Jackson replied, "I'm not doing that folder." Tracey Dep. 40:10-
    17. According to Defendant Tracey, the folder was being moved from table
    to table. Tracey Dep. 53:24-25.

25. Defendant Jackson told Defendant Tracey that Plaintiff was "a prick. He
    can stay there." Tracey Dep. 40:18-24. Jackson told Defendant Tracey to
    just leave the folder, that it was "that prick's folder," that Plaintiff was a
    "white privilege prick." Tracey Dep. 54:1–55:1.

26. Defendant Jackson told Defendant Tracey that Plaintiff had previously "showed out in court," Tracey Dep. 40:18-24, and that Plaintiff "got in front of the Court and started acting stupid." Tracey Dep. 54:4-7.

27. Defendant Jackson told Defendant Tracey to leave Plaintiff in the cell, to "forget him." Tracey Dep. 46:4-11.

28. Plaintiff became increasingly depressed after he was left alone in the holding cell. Smith Dep. 45:19–25.

29. Once alone, Plaintiff started banging on his cell door. Jackson Dep. 75:9–12; Tracey Dep. 40:25-41-7.

30. Defendants Tracey, Jackson, and Gomez could each hear Plaintiff banging and mule kicking the door. Tracey Dep. 49:4-13.

31. Plaintiff then started to kick the cell door to get the officers' attention. Smith Dep. 46:10–13.

32. Defendant Tracey knew that there was a phone with a cord in Cell 7. Tracey Dep. 84:17–85:14.

33. Defendant Gomez knew that there was a phone with a cord in Cell 7. Gomez Dep. 80:21–81:3.

34. Jackson knew that the holding cells had phones inside of them. Jackson Dep. 27:10–12.

35. Jackson knew that the phones in the holding cells had metal cords. Jackson Dep. 28:2–10.

36. Defendants Jackson, Gomez, and Tracey each knew that Plaintiff was alone in Cell 7. Gomez Dep. 80:21-23; Tracey Dep. 40:25-41-7, 46:4-11.

37. As shown in the below screenshot, the phone cord in Cell 7 was long enough to wrap around a person's neck. Doc. 89-9, Jackson Body Camera at 00:00:34.



38. Plaintiff was kicking and repeating "I'm going to kill myself" and "let me out." Tracey Dep. 49:17–50:6.

39. In response, Defendant Jackson told Defendant Tracey that Plaintiff could "bang all night. He can do it all night." Tracey Dep. 41:1-7.

40. Defendant Gomez knew that Plaintiff stated that he wanted to kill himself. Gomez Dep. 49:17-25, 50:11-12.

41. Defendant Jackson told Defendant Tracey, referring to Plaintiff, that "All he's going to do is cry 52. I'm not dealing with him." Tracey Dep. 57:7-15.

42. 52" refers to the code for suicide. Tracey Dep. 60:4-10; Gomez Dep. 18:7-9.

43. Defendant Jackson denies stating to Defendant Tracey that she didn't want to deal with Plaintiff because he'd "cry 52" meaning that he would claim to be suicidal. Jackson Dep. 96:3–8.

*Tracey urges Plaintiff to kill himself*

44. After Plaintiff had been kicking his cell door and banging his head against the door, Defendant Tracey approached the holding cell. Smith Dep. 46:10–13.

45. Defendant Jackson then saw Defendant Tracey go to the cell door and observed Plaintiff and Defendant Tracey yelling at each other. Jackson Dep. 76:5–10.

46. Plaintiff asked Defendant Tracey why he was the only person in the cell who hadn't been processed and asked if he could make a phone call. Smith Dep. 47:9–14.

47. Defendant Tracey told Plaintiff not to kick the door and then told Plaintiff she had spoken with Plaintiff's mother. Smith Dep. 47:25–48:12.

48. Defendant Tracey insinuated and gestured to Plaintiff that his mother was crazy. Smith Dep. 48:11–25.

49. Defendant Tracey also told Plaintiff to take the number of hours he had been in Cell 7 and double it and that's how long he'd have to sit in booking before being processed. Smith Dep. 52:17–53:7. Plaintiff understood this as a threat. Smith Dep. 53:8-15.

50. Defendant Tracey then told Plaintiff that he was a "piece of shit," told him to kill himself multiple times, and gestured that he should hang himself. Smith Dep. 48:11–25; Doc. 89-2, Verified Response No. 7 to Defendant Gomez's First Set of Interrogatories.

51. As shown in the below screen shot, at about 1:28 a.m., Defendant Tracey gestured that Plaintiff should hang himself and told him to commit suicide. Doc. 89-6, Ezra Smith Booking Area 07-09-2024.mp4 at 01:28:41; Smith Dep. 55:2–8. At that point, Defendant Tracey knew that Plaintiff had stated that he was suicidal. Smith Dep. 49:1–3.

52. Plaintiff was upset because he was the last one in the cell, she heard him say he was suicidal, and she heard Defendant Tracey tell him to "do it" and

made a choking noise at Plaintiff. Doc. 89-11, Merit Board Hearing - M.

Tracey-20240830_100444-Meeting Recording.mp4 at25:24–25:55.



53. Defendant Jackson heard Plaintiff scream to Deputy Tracey that he was

suicidal. Jackson Dep. 82:2–6.

54. Defendant Jackson did not take any action after hearing Plaintiff say that

he was suicidal because she "figured he was just upset." Jackson Dep.

82:7–10.

55. Defendant Gomez was initially standing next to Defendant Tracey as she

encouraged Plaintiff to commit suicide. Doc. 89-6, Ezra Smith Booking

Area 2 07-09-2024.mp4 at 01:28:28. Defendant Gomez heard Plaintiff say

he was suicidal. Gomez Dep. 81:4-6.

56.   The exchange between Defendant Tracey and Plaintiff was loud and heard throughout the booking area of the jail. Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 00:37:02.

57.   Defendant Jackson heard Deputy Tracey yell "do it" to Plaintiff while she was standing outside of the booking cell. Jackson Dep. 76:15–19.

58.   Defendant Jackson heard Plaintiff yell to Defendant Tracey that he was suicidal. Jackson Dep. 76:20–23.

59.   Defendant Gomez did not report what he saw and heard. Gomez Dep. 83:23-25.

60.   Defendant Sanchez heard the following exchange between Defendant Tracey and Plaintiff: Defendant Tracey said things like "stop kicking on the fucking door" and being very nasty, Tracey said "your fucking mommy was calling up here asking about you," and in response to Plaintiff stated that he was going to kill himself, Defendant Tracey said "Don't talk about it, be about it. Fucking do it." Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 00:40:15.

*Plaintiff again reports he is suicidal to Jackson*

61. After Defendant Tracey left the cell door, Plaintiff used the intercom to speak with a female officer at the booking desk. Smith Dep. 57:7–58:9, 58:23–59:17.

62. Plaintiff knew that he spoke with a female officer, and that the officer was not Defendant Tracey. Smith Dep. 57:7–58:9, 58:23–59:17. Defendant Gomez is a male officer. Jackson Dep. 59:25–60:2. The only other female officer on duty was Defendant Jackson. Gomez Dep. 25:15-21.

63. Plaintiff told Defendant Jackson that he was suicidal. Smith Dep. 57:7–58:9; 58:23–59:17.

64. Defendant Tracey told Defendant Jackson to tell Plaintiff to kill himself and then told Defendant Jackson to hang up the intercom. Smith Dep. 57:7–58:9; 58:23–59:17.

65. Defendant Jackson hung up the intercom. Smith Dep. 57:7–58:9; 58:23–59:17.

66. According to Defendant Tracey, Defendant Jackson knew that Plaintiff had previously tried to hang himself in Cell 6, that "he did the same thing." Tracey Dep. 55:9-21.

67. Defendants Tracey and Jackson then stopped answering the intercom, and Plaintiff began hitting his head against the cell door and then the cell wall. Smith Dep. 59:10–17; 61:23–62:2.

68. When Plaintiff started banging on the glass with his head, Defendant Tracey said, "Oh, my God. He's doing it with his head." Tracey Dep. 49:6-13. Defendant Jackson or Gomez responded "He's got a hard head. He's fine." Tracey Dep. 49:12-21.

*Plaintiff attempts suicide*

69. No one who heard Plaintiff tell Defendant Tracey he was suicidal, heard Defendant Tracey to repeatedly tell Plaintiff to kill himself, and heard Plaintiff state that he was going to kill himself checked on him for approximately five minutes. Doc. 89-6, Ezra Smith Booking Area 07-09-2024.mp4 at 01:29:10–01:34:15.

70. Minutes after Defendant Tracey urged Plaintiff to kill himself, Plaintiff stopped hitting his head against the cell wall, he took the phone cord in the cell, wrapped it around his neck, lowered his body, and hung himself. Smith Dep. 62:17–25.

71. The video feed from the holding cell shows Plaintiff wrapping the telephone around his neck, then his head and body move off-screen until

only his prone legs and feet can be seen. Doc. 89-6, Holding Cell Video

01:31:13–01:31:46.

72.   After Defendant Tracey no longer heard any noise from Plaintiff she to

check inside the cell. Tracey Dep. 41:15-17.

73.   When Defendant Sanchez responded to Plaintiff's suicide attempt, she

observed that Plaintiff had turned blue and that he didn't have a pulse. His

nose was bleeding and he had urinated on himself. Sanchez Dep. 82:13–18.

74.   Defendant Tracey described Plaintiff as "purple," that his eyes were

"crystal," and there was blood coming out of his eyes and ears. Tracey

Dep. 41:15-20. The following image depicts Plaintiff just after the cell was

breached:



75.  Plaintiff was eventually revived and taken by ambulance to the hospital.
Doc. 89-2, Verified Response No. 7 to Defendant Gomez's First Set of
Interrogatories.

76.  Following the incident, Plaintiff was diagnosed with myalgia, conjunctival
hemorrhage, elevated blood pressure, transaminitis, and major depressive
disorder. Doc. 89-2, Verified Response No. 12 to Defendant Gomez's First
Set of Interrogatories. Plaintiff continues to suffer from back pain,
difficulty raising his left arm above his head, difficulty breathing, and head
trauma and pain. *Id.*

77.  Plaintiff also continues to experience psychological trauma, including
anxiety. *Id.* Following the incident, Plaintiff continued to have suicidal
ideations, which increased because the experience of dying at the jail made
him feel like death was easy. *Id.* Plaintiff has battled with thoughts of
committing self-harm again, particularly because of the ease in which he
was able to do it at the jail in July 2024. *Id.*

*Policies governing the Rockdale County Sheriff's deputies*

78. Defendant Tracey served as a detention deputy for the Rockdale County Sheriff's Office ("RCSO") at the Rockdale County Jail for approximately 16 years prior to her termination. Tracey Dep. 15:3-19.

79. As part of her duties as a detention deputy at RCSO, Defendant Tracey received annual training on suicide protocols and intervention. Tracey Dep. 19:12-20.

80. Defendant Tracey was also trained on RCSO General Order 5.22. Tracey Dep. 23:23–24:14.

81. According to General Order 5.22, "Any inmate who threatens or attempts self mutilation or suicide will be viewed as a mental health emergency." Doc. 74-1, General Order 5.22; Tracey Dep. 24:15-23.

82. RCSO detention staff have no discretion in determining the legitimacy of a suicide threat. Doc. 89-10, Merit Board Hearing - M. Tracey-20240823_090650-Meeting Recording.mp4 at 1:18:00-20:00, 51:02-51:15.

83. Defendant Tracey understood General Order 5.22 to mean that when a detainee threatens suicide, the detention deputy should view such threat as

a mental health emergency and not assess whether the threat was legitimate or not legitimate. Tracey Dep. 26:2-13; Doc. 74-1.

84. Defendant Tracey recognizes that under RCSO policy, when when an inmate threatens suicide, deputies do not have any discretion. They can't decide whether it is a legitimate, bona fide, sincere threat of suicide that the deputy is to immediately take that threat and escalate it to somebody to a mental health professional that's on duty. Doc. 89-10, Merit Board Hearing - M. Tracey-20240823_090650-Meeting Recording.mp4 at 1:19:03– 1:19:47.

85. Suicide prevention protocols can be implemented by either medical staff or jail personnel. Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 00:50:33.

86. Defendant Tracey also recognizes that deputies do not have the discretion to determine whether an inmate's threat of suicide is a joke, or whether they are laughing. The threat must still be communicated to medical personnel. Doc. 89-10, Merit Board Hearing - M. Tracey-20240823_090650-Meeting Recording.mp4 at 1:19:47–1:20:08.

87. Defendant Jackson also understood that regardless of her personal opinion on whether the threat of suicide was legitimate, if someone threatens

suicide there are certain protocols that must be taken. Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4at 33:48-34:09. She also understood that when she heard Plaintiff's threats and Defendant Tracey's taunts at the cell door that, based on her training under the policies and procedures of the RCSO, she was required to treat that as a medical emergency. Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4at 34:10-34:32.

88. Defendant Gomez understood the importance of following RCSO procedures in the jail. Gomez Dep. 14:6-17. He also understood that he had a duty to follow RCSO policies and procedures. Gomez Dep. 14:3-5.

89. As part of her training on suicide intervention and prevention, Defendant Tracey and other RCSO detention deputies would role play intervention, which included methods to restrain the detainee, dress them in the appropriate gear, shower them, take them to see a nurse, and then place them in a padded suicide prevention cell. Tracey Dep. 20:20–21:5.

*Ability to avoid harm*

90. The booking area at the Rockdale County Jail had two padded cells. Tracey Dep. 21:6-10.

91. While the booking cells at the Rockdale County Jail had a phone with a cord, the padded cells did not. Tracey Dep. 21:13-18.

92. If Plaintiff had been placed on suicide watch, he would have been moved to a different cell. Jackson Dep. 83:7–16.

93. There were suicide watch cells available the evening of Plaintiff's suicide attempt. Jackson Dep. 85:2–4.

94. Officers are authorized to place an individual on suicide watch without waiting for medical staff to approve the decision. Jackson Dep. 85:11-23.

*Defendants concealing/denying*

95. Defendant Sanchez stated that she did not take any action to place Plaintiff on suicide watch because "everything happened so fast." Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 00:50:50.

96. Defendant Tracey denies that she said "do it" to Plaintiff. Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 01:03:00. Defendant Jackson claims that she has the discretion in determining whether to report a threat of suicide. Jackson Dep. 80:8–13. But she agreed with the Merit Board that she had none. Doc.

89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 33:48-34:09.

97. Defendant Jackson denies that she tried to delay processing Plaintiff's folder or commenting about his "white privilege" or that he would "cry 52." Compare Tracey Dep. 54:1–55:1 & 57:7-15 with Jackson Dep. 96:17-21 & 97:3-5.

98. Defendant Jackson claims she went up to the cell and spoke to Plaintiff when the other inmates called on the intercom earlier in the day. Jackson Dep. 72:19–73:15. Defendant Tracey denies this ever happened. Tracey Dep. 60:11-25.

99. Defendant Jackson also omitted what Tracey said to Plaintiff in her initial incident report. Doc. 89-3, Incident Report.

100. Defendant Tracey stated that Defendant Gomez came up after the incident, laughing. Tracey Dep. 42:13-16. According to her, when she asked why he was laughing, he said "I can't believe you was just telling him to do it, and he did it" and that he couldn't believe Plaintiff was "dumb enough to do it." Tracey Dep. 42:17-24. Defendant Gomez thought it was "hilarious" that Plaintiff attempted suicide. Tracey Dep. 61:21-25.

Dated: January 9, 2026

Respectfully submitted,

SPEARS & FILIPOVITS, LLC
315 W. Ponce de Leon Ave., Ste. 865
Decatur, Georgia 30030
(404) 905-2225
jeff@civil-rights.law
wingo@civil-rights.law

**Jeff Filipovits**
Jeff Filipovits
Georgia Bar No.  825553

**Wingo Smith**
Wingo Smith
Georgia Bar No. 147896

**James M. Slater**
James M. Slater
Georgia Bar No. 169869

SLATER LEGAL PLLC
2296 Henderson Mill Rd. NE #116
Atlanta, Georgia 30345
(404) 458-7283
james@slater.legal