IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EZRA SMITH,<br><br>    Plaintiff,<br>v.<br><br>DEPUTY MONIQUE TRACEY, *et al.*,<br><br>    Defendants. | Civil Action No.:<br><br>1:24-cv-05158-TWT |

# PLAINTIFF'S RESPONSE TO DEFENDANT TRACEY'S STATEMENT OF MATERIAL FACTS

Plaintiff Ezra Smith responds to Defendant Monique Tracey's Statement of Material Facts Not at Issue (Doc. 84-1) as follows:

1.  Plaintiff Ezra Smith was detained in the Rockdale County Jail on July 8, 2022. Smith Dep. at 26.

    **Undisputed.**

2.  Defendant Monique Tracey was a detention officer. Tracey Dep. at 15:6-9.

    **Undisputed.**

3.  Tracey had to work in booking because it was so busy and backed up. Tracey Dep. at 39:8-9.

    **Undisputed.**

1

4. Tracey's shift began at approximately 3:00 p.m. Tracey Dep. at 39:19-20.

**Undisputed.**

5. At approximately 8:00 p.m. there were numerous inmates in the holding cell with Smith. Smith Dep. at 29.

**Undisputed.**

6. An inmate pressed the intercom button, and Deputy Tracey answered the intercom. Tracey Dep. at 57.

**Undisputed.**

7. An inmate other than Smith jokingly made a statement about a "white guy" wanting to kill himself. Tracey Dep. at 57:20-21; Smith Dep. at 147.

**Disputed**. Plaintiff did not refer to the other inmate's call as a joke. Plaintiff testified that, to him, his statement about committing suicide "was kind of a joke." Smith Dep. 77:19–1. Plaintiff did not communicate to Defendant Tracey or any other detention officer or jail staff that his statement about suicide was a joke. See Doc. 89-1, Ezra Smith Decl. ¶¶ 6–7.

8. By video Tracey could see inside Holding Cell 7 and all of the inmates including Smith were standing around laughing. Tracey Dep. at 60:13-14.

**Disputed.** Plaintiff testified that he was not standing around and laughing. Smith Dep. 147:23–148:5. It is impossible to determine from the video feed from

the holding cell whether which inmates, if any, were joking or what they were joking about. *See* Doc. 89-5, Ezra Smith Holding Cell 7 07-08-2024.mp4 at 04:00:00–05:00:00. A jury who views this video could easily reject Defendant Tracey's claim that it showed that the initial suicide report was a joke.

9.   Plaintiff testified the call was "formed as a joke." Smith Dep. at 148:14-15.

**Disputed**. Plaintiff did not refer to the other inmate's call as a joke. *See* Doc. 89-1, Declaration of Ezra Smith ¶¶ 5–7. Plaintiff testified that, to him, his statement about committing suicide "was kind of a joke." Smith Dep. 77:19–1.

10.   Tracey could see on the video monitor that Smith was denying what was said about him. Tracey Dep. at 57-58, 59-60.

**Disputed**. Plaintiff testified that he did not shake his head or otherwise deny that he was having suicidal thoughts. Smith Dep. 147:16–148:5. And the video of the holding cell does not support Defendant Tracey's statement. *See* Doc. 89-5, Ezra Smith Holding Cell 7 07-08-2024.mp4 at 04:00:00–05:00:00. Plaintiff also did not tell any of the deputies, including Tracey, that he was joking. Smith Decl. ¶ 7.

Deputy Tracey told the inmates to stop playing with the intercom; she could clearly see that inmate Smith was not in danger and she continued working. Tracey Dep. at 59-60.

**Disputed in part**. It is impossible for Defendant Tracey to determine whether the suicide threat was legitimate based solely on the video evidence. *See* Doc. 89-5, Ezra Smith Holding Cell 7 07-08-2024.mp4 at 04:00:00–05:00:00.

11. Deputy Tracey did not believe Smith was a risk for suicide. Tracey Dep. 87-88.

**Disputed and immaterial.** Whether Deputy Tracey believed Plaintiff was a risk for suicide is immaterial to Plaintiff's state law claims because she did not have any discretion not to act under the Sheriff's policy. Defendant Tracey recognizes that deputies do not have the discretion to determine whether an inmate's threat of suicide is a joke, or whether they are laughing. The threat must still be communicated to medical personnel. Doc. 89-10, Merit Board Hearing - M. Tracey-20240823_090650-Meeting Recording.mp4 at 1:19:47–1:20:08.

Disputed because Defendant Tracey's actions throughout the encounter with Plaintiff provide circumstantial evidence that she believed Plaintiff was suicidal and that she wanted him to attempt suicide.

12. Shortly after 10:30 p.m., Smith's mother called the jail and spoke to Officer Tracey. Tracey Dep. at 74-75; Pittman Dep. at 34 & Doc. 89-1 (call log).

**Undisputed.**

13. Tracey had other work going on so she was only half listening. Tracey Dep.

at 51:15 52:13.

    **Disputed.** Tracey told Plaintiff that she had spoken to his mother and knew everything about him. Smith Dep. 48:8–14. Defendant Tracey knew from that call that Plaintiff had been discharged from a psychiatric hospital due to suicidal ideations and that he remained suicidal. Pittman George Dep. 35:23–36:12, 37:15–38:8. Tracey's statement that she was "half listening" does not rebut this evidence.

14.     The call lasted under 10 minutes. George Dep. at 34.

    **Undisputed.** Pittman George Dep. At 34:16–23.

15.     Eventually all of the inmates in Holding 7 were cleared out, except for Smith. Holding Cell Video at 1:25:00.

    **Undisputed.**

16.     Plaintiff had already been dressed in an orange jail uniform. Holding Cell Video at 1:25:00.

    **Undisputed.**

17.     Smith started kicking the door and striking the door with his head. Smith Dep. at 37, 60; Tracey Dep. at 49.

    **Undisputed.**

18.     Officer Tracey went to the cell in an attempt to defuse the situation and get Plaintiff to stop banging his head. Tracey Dep. at 49.

**Disputed.** Defendant Tracey's alleged desire to "defuse the situation" is contradicted by her statements and actions to Plaintiff. Defendant Sanchez testified that she was vulgar and nasty when talking to Plaintiff. Sanchez Dep. 68:20–69:1; Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 00:40:15. Defendants Sanchez, Gomez, and Jackson all agree that Defendant Tracey told Plaintiff to kill himself. Plaintiff further testified that she called him a "piece of shit" and gestured that he should hang himself. Smith Dep. 48:11–25; Doc. 89-6, Ezra Smith Booking Area 07-09-2024.mp4 at 01:28:41.

19. According to Plaintiff, in the heated discussion that followed Tracey told him she spoke to his mother, knew everything about him, thought he was a "piece of shit" and "need[ed] to kill himself." Smith Dep. at 48:11-15, 52:14-16.1

**Undisputed.**

20. Plaintiff claims he stated he was going to "do it." Smith Dep. at 54:20-22.

**Undisputed.**

21. Nurse Sanchez could hear this discussion and believes she heard Plaintiff's assertion that he would attempt suicide. Sanchez Dep. at 69:14-15.

**Undisputed.**

22. According to Plaintiff this back and forth repeated several times. Smith Dep. at 55:4-6.

**Undisputed.**

23. Plaintiff asserts Deputy Tracey told him he would be there for hours. Smith Dep. at 53:9-12.

**Undisputed.**

24. Deputy Tracey left the window and went back to a desk. Booking Area Video at 1:29:32 et seq.

**Undisputed.**

25. Plaintiff asserts that shortly after that he pressed the intercom and stated he was suicidal. Smith Dep. at 57:16-18. (footnote: Defendant Tracey denies telling Smith to kill himself (Tracey Dep. at 64:15), but under the summary judgment standard Plaintiff's testimony is credited.)

**Undisputed.**

26. Plaintiff claims that Deputy Tracey yelled something about killing himself. Smith Dep. at 58:1-6.

**Disputed.** Plaintiff testified that he overheard Defendant Tracey instruct Defendant Jackson, who had answered the intercom, to tell Plaintiff to kill himself and then hang up the intercom. Smith Dep. 57:18–23.

27. Plaintiff continued to yell and bang in the cell. Smith Dep. at 67-68; Holding Cell Video at 1:29:32 et seq.

**Undisputed.**

28. Video shows that roughly two (2) minutes after Deputy Tracey had left the window, Plaintiff went to the cell area where a telephone was mounted to the wall. Holding Cell Video at 1:31:24; see Jackson Bodycam Video at 1:36:25 (showing telephone configuration).

**Undisputed.**

29. From the video camera mounted in the holding cell, only Plaintiff's feet could be seen. Holding Cell Video at 1:31:40 et seq.

**Disputed.** The video first shows Plaintiff wrapping the telephone around his neck, then his head and body move off-screen until only his prone legs and feet can be seen. Doc. 89-6, Holding Cell Video 01:31:13–01:31:46.

30. The Holding Cell Video shows that Plaintiff's feet moved continuously for some time but eventually stopped moving. Holding Cell Video at 1:31:40 et seq.

**Undisputed.**

31. Plaintiff had wrapped the telephone cord around his neck and eventually passed out. Smith Dep. at 63:17-24.

**Disputed.** "Passed out" understates what happened. After having wrapped the cord around his neck, Plaintiff had turned blue, lost consciousness, urinated on himself, had a bloody nose, and no longer had a pulse by the time CPR began.

Sanchez Dep. 82:13–18; Tracey Dep. 41:15-20.

32. Deputy Tracey believed the phone cords had been shortened in the past so as to prevent inmates using the cord for self-harm. Tracey Dep. at 56-57, 84:17-19.

**Disputed.** Defendant Tracey's gestures to Plaintiff to hang himself and choking sounds suggest that she thought he could hang himself using the phone or his clothing while in the cell. Smith Dep. 48:11–25; Doc. 89-6, Ezra Smith Booking Area 07-09-2024.mp4 at 01:28:41; Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 25:24–25:55.

33. Within five (5) minutes of leaving the cell window, Deputy Tracey realized that Plaintiff had stopped yelling and banging, so she went to his cell to investigate. Booking Area Video at 1:33:55 et seq.; Tracey Dep. at 41; Jackson Dep. at 79-80.

**Undisputed.**

34. Deputy Tracey saw that Plaintiff was in the cell with the phone cord wrapped around his neck. Tracey Dep. at 41.

**Undisputed.**

35. Deputy Tracey yelled for the keys to be brought to open the cell. Tracey Dep. at 41.

**Undisputed.**

36. Deputy Jackson opened the cell and removed the phone cord from Plaintiff's

neck. Jackson Bodycam Video at 1:34:30 et seq.

**Undisputed.**

37. Deputy Tracey yelled for the nurse. Sanchez Dep. at 92:18-20, 85:20.

**Undisputed.**

38. Plaintiff was unconscious. Jackson Bodycam Video at 1:34:30 et seq.

**Undisputed.**

39. Nurse Sanchez and Deputy Jackson did chest compressions on Plaintiff. Jackson Bodycam Video at 1:35 et seq.

**Undisputed.**

40. Soon Plaintiff was revived. Tracey Dep. at 42:8-12.

**Undisputed.**

41. Plaintiff's only non-transitory physical injury from trying to strangle himself consisted of ruptured blood vessels in his eyes. Plaintiff Response to Gomez Interrogatory 12.

**Disputed.** Plaintiff likewise continues to suffer from back pain, difficulty raising his left arm above his head, difficulty breathing, and head trauma and pain. Plaintiff Response to Gomez Interrogatory 12.

42. Rockdale Sheriff's Jail Policy 5.22 (I)(A) is somewhat unclear, but arguably it provides that an inmate's suicide threat should be reported to a "Mental Health

Professional" who then is supposed to interview the inmate and review the medical chart at some unspecified time. Exhibit 1 (Policy 5.22).

**Disputed.** Defendant Jackson agreed at the merit board hearing that when Plaintiff said he wanted to kill himself, the officers should have taken action under the Sheriff's policy. Doc. 89-11, Merit Board Hearing – M. Tracey-20240830_100444-Meeting Recording.mp4 00:34:11. That action would have been to remove items that were potentially hazardous from Plaintiff, place him in a different cell, and have medical come over and talk with him. Jackson Dep. 85:9–23; Sanchez Dep. 80:20–81:6. Then, a mental health professional would come see them. Sanchez Dep. 25:1–10. Lieutenant Daniel explained that according to RCSO procedure, Plaintiff should have been placed on suicide prevention. Gomez Dep. 65:7-17.

43. An "emergency" mental health referral was supposed to be acted upon within 25 hours. Sanchez Dep. At 25:1-10.

**Disputed.** Standing alone, this statement of fact obfuscates the other actions taken under the policy before the mental health professional would see the inmate. Namely, it leaves out that Plaintiff would have had dangerous items removed from his possession and been placed into another cell that did not have a corded phone in it prior to meeting with the mental health professional. Jackson Dep. 85:9–23;

11

Sanchez Dep. 80:20–81:6.

44. In cases when events occur "other than normal working hours" so that there is no mental health professional on site—which was the circumstance in this case—Subsection (I)(A)(2) provides that "Jail staff will notify the Medical Department … ." Id.; Tracey Dep. at 24-25.

**Disputed.** Defendant Sanchez testified that officers were able to place inmates on suicide watch before alerting medical. Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 49:47–50:33. Defendant Jackson testified that after a suicide threat, if an inmate was already in booking, they would be placed in another cell and then staff would let medical know. Jackson Dep. 85:14-23. In this case Nurse Sanchez was notified because she was close by and heard Plaintiff's suicidal statement(s). Tracey Dep. at 26:2-8; Sanchez Dep. at 69:14-15.

**Disputed.** Plaintiff agrees that Defendant Sanchez was aware of Plaintiff's statement that he was suicidal but disagrees that this served as "notification" under the policy. Plaintiff would have had dangerous materials removed from his person and been placed in a different cell prior to contacting medical. Jackson Dep. 85:9–23; Sanchez Dep. 80:20–81:6.

Submitted this 9th day of January, 2026.

                                             **Jeff Filipovits**
Jeff Filipovits
Georgia Bar No. 825553

**Wingo Smith**
Wingo Smith
Georgia Bar No. 147896

Spears & Filipovits, LLC
315 W. Ponce de Leon Ave.
Suite 865
Decatur, GA 30030
404.905.2225
jeff@civil-rights.law
wingo@civil-rights.law

**James M. Slater**
James M. Slater
Georgia Bar No. 169869

Slater Legal PLLC
2296 Henderson Mill Rd. NE #116
Atlanta, GA 30345
(404) 458-7283
james@slater.legal