IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EZRA SMITH,<br><br>    Plaintiff,<br>v.<br><br>DEPUTY MONIQUE TRACEY, *et al.*,<br><br>    Defendants. | Civil Action No.:<br><br>1:24-cv-05158-TWT |

# PLAINTIFF'S RESPONSE TO DEFENDANTS GOMEZ AND JACKSON'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff Ezra Smith responds to Defendants Raul Gomez and Shenequa Jackson's Statement of Material Facts to Which There is no Genuine Issue to be Tried (Doc. 75-2) as follows:

1.  In May 2024, Plaintiff was booked into the Rockdale County Jail ("County Jail") and, after evaluation, was admitted into mental health observation/suicide watch. Doc. 71, ¶¶ 11-12.

    **Undisputed**.

2.  Plaintiff was released and was arrested again and transported back to the County Jail on July 8, 2024. Id., ¶¶ 14-15.

    **Undisputed.**

1

3. At that time, Plaintiff did not ask to be placed on suicide watch, despite being aware of same. Plaintiff's depo., p. 117, 1-3.

**Undisputed**.

4. Specifically, he did not ask to be placed on suicide watch "because [he] was fine." Plaintiff's depo., p. 117, l. 3.

**Undisputed.**

5. Plaintiff was placed in Holding Cell 7 with several other inmates/detainees while they were being processed by County Jail staff. Doc. 71, ¶ 16.

**Undisputed.**

6. Booking was very busy when Plaintiff was being detained. Jackson depo., p. 55, ll. 7-10; Gomez depo., p. 22, ll. 4-6.

**Undisputed**.

7. Deputy Jackson was initially assigned to the kitchen but was then told to report to booking. Jackson depo., p. 17, ll. 23-25 – p. 18, ll. 1-2.

**Undisputed**.

8. Deputy Gomez was also assigned to booking and Deputy Tracey was assigned a security role and movement. Jackson depo., p. 60, ll. 4-8; Gomez depo.,

2

p. 21, ll. 23-25.

**Undisputed**.

9. Security role and movement officer would generally assist with tasks in booking. Jackson depo., p. 63, ll. 8-17.

**Undisputed**.

10. Deputy Gomez was primarily working on fingerprinting. Jackson depo., p. 62, ll. 9-13; Gomez depo., p. 35, ll. 17-24.

**Undisputed**.

11. Plaintiff was in the holding cell prior to Deputies Gomez/Jackson's arrival for their shift; however, there was nothing in the pre-shift debriefing that indicated any issues had been identified with Plaintiff. Jackson depo., p. 20, ll. 12-25 – p. 21, ll. 1-7; Gomez depo., p. 76, ll. 19-23; p. 77, ll. 19-21.

**Undisputed**.

12. At some point, an inmate announced on the holding cell intercom box that Plaintiff allegedly stated that he was thinking about committing suicide. Jackson depo., p. 72, ll. 11-16.

**Undisputed, except that the inmate reported that Plaintiff stated that he was suicidal. The inmate did not state that Plaintiff "allegedly" stated it.**

13. Deputy Jackson and/or Deputy Tracey then reported to the holding

3

cell and found all of the inmates laughing, including Plaintiff, and confirmed that nobody needed assistance or a suicide watch. Jackson depo., p. 73, ll. 1-7; p. 81, ll. 1-3; p. 82, ll. 15-23.

**Disputed**. Defendants Tracey and Jackson did not leave the platform to check on Plaintiff; they told the inmates to stop playing with the intercom. Tracey Dep. 59:22-24; 60:11-25; *see generally* Doc. 89-7, Ezra Smith Booking Area 07-09-2024.mp4 (showing Defendants remaining on the platform during the relevant time).

14. Plaintiff, familiar with suicide services available, specifically stated that he was not suicidal. Jackson depo., p. 82, ll. 24-25 – p. 83, l. 1; Tracey depo., p. 58, ll. 16-18.

**Disputed**. Plaintiff did not shake his head or otherwise deny that he was having suicidal thoughts, Smith Dep. 147:16–148:5, and never Plaintiff never told any of the officers that he was joking. Doc. 89-1, Declaration of Ezra Smith ¶ 7.

15. Deputy Gomez does not recall an inmate calling in through the intercom. Gomez depo., p. 45, ll. 17-23; IA File, p. 2.

**Undisputed**.

16. Under general practices up to that time, it was up to a deputy's discretion whether to report when an inmate states that they are suicidal. Jackson

4

depo., p. 82, ll. 17-24.

**Disputed**. Defendant Jackson agreed at the merit board hearing that when Plaintiff said he wanted to kill himself, the officers should have taken action under the Sheriff's policy. Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 00:34:11. According to Defendant Tracey General Order 5.22 meant that when a detainee threatens suicide, the detention deputy should view such threat as a mental health emergency and not assess whether the threat was legitimate or not legitimate. Tracey Dep. 26:2-13. Her understanding was confirmed by Major Jason Welch of the RCSO, who acknowledged RCSO detention staff have no discretion in determining the legitimacy of a suicide threat. Doc. 89-10, Merit Board Hearing - M. Tracey-20240823_090650-Meeting Recording.mp4 at 0:33:48–0:34:09, 1:18:00-1:20:00, 0:51:02-0:51:15.

17. An officer would initially assess and get control of the situation. Gomez depo., p. 73, ll. 3-7; Tracey depo., p. 22, ll. 2-13.

**Disputed**. The officer is to remove items that are potentially hazardous from the inmate, place him in a different cell, and have medical come over and talk with him. Jackson Dep. 85:9-23; Sanchez Dep. 80:20–81:6. Then, a mental health professional would come see them. Sanchez Dep. 25:1-10.

5

18. If it was determined the inmate is actually threatening suicide, it should be reported. Tracey depo., p. 26, ll. 2-13.

**Disputed**. Defendant Gomez testified that when an inmate says he is suicidal, the officer tells their supervisor and if the supervisor confirms, the officer begins the suicide protocol.

According to Defendant Tracey, General Order 5.22 meant that when a detainee threatens suicide, the detention deputy should view such threat as a mental health emergency and not assess whether the threat was legitimate or not legitimate. Tracey Dep. 26:2-13. Defendant Jackson also agreed at the merit board hearing that when Plaintiff said he wanted to kill himself, the officers should have taken action under the Sheriff's policy. Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 00:34:11.

The Defendants' understanding is bolstered by Major Jason Welch of the RCSO, who acknowledged RCSO detention staff have no discretion in determining the legitimacy of a suicide threat. Doc. 89-10, Merit Board Hearing - M. Tracey-20240823_090650-Meeting Recording.mp4 at 1:18:00-20:00, 51:02-51:15.

19. Booking took a long time because of a significant number of inmates requiring booking; Plaintiff was the last person in the holding cell and began banging on the door. Jackson depo., p. 77, ll. 9-12; Gomez depo., p. 69, ll. 9-13.

**Disputed**. Defendant Tracey testified that Defendant Jackson intentionally delayed processing Plaintiff because she did not want to deal with his "white privilege" and that Defendant Gomez confirmed that Jackson instructed him to leave Plaintiff for the next shift to process. Doc. 89-10, Merit Board Hearing - M. Tracey-20240823_090650-Meeting Recording.mp4 at 53:00–54:00; Tracey Dep. 46:4-11, 54:1–55:1.

20. Deputy Tracey then went over to the holding cell to check on Plaintiff and began arguing with Plaintiff. Jackson depo., p. 78, ll. 4-10; Gomez depo., p. 50, ll. 2-3; p. 69, ll. 14-18.

**Disputed**. Defendant Tracey was not arguing, she was vulgar and nasty to Plaintiff. According to Defendant Sanchez, Defendant Tracey said things like "stop kicking on the fucking door" and "your fucking mommy was calling up here asking about you." Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 00:40:15. Plaintiff recalled Defendant Tracey calling him a "piece of shit," and saying his mother was crazy, which prompted him to tell her he was suicidal. Smith Dep. 48:11–25. In response to Plaintiff stated that he was going to kill himself, Defendant Tracey said "Don't talk about it, be about it. Fucking do it." Doc. 89-11, at 00:40:15. See also Smith Dep. 48:11–25; Doc. 89-2, Verified Response No. 7 to Defendant Gomez's First

7

Set of Interrogatories.

21. Deputy Jackson was not aware of what they were saying to each other. Jackson depo., p. 78, ll. 8-14; IA File, p. 3.

**Disputed**. Deputy Jackson testified that Plaintiff was upset because he was the last one in the cell, she heard him say he was suicidal, and she heard Defendant Tracey tell him to "do it" and made a choking noise at Plaintiff. Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 25:24–25:55; Jackson Dep. 76:15–23. Jackson also heard Plaintiff say that he was suicidal. *Id.* The exchange between Defendant Tracey and Plaintiff was loud and heard throughout the booking area of the jail. Doc. 89-11, at 00:37:02.

22. It seemed like a normal disruption/dispute that Deputy Tracey would handle/report by herself and not one that indicated Plaintiff would attempt to harm himself. Gomez depo., p. 81, ll. 20-25; p. 82, ll. 12-16.

**Disputed**. Defendant Gomez's description is undermined by his testimony that he heard Defendant Tracey respond to Plaintiff's statement that he was suicidal by saying "well, be a man about it; do it then." Gomez Dep. 50:13-18. Then she repeated that several times to "go ahead; do it; do it; I want to see you do it." Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 17:14-44. Defendant Jackson heard Defendant Tracey yelling at

8

Plaintiff to "do it" and made a choking noise at him. Plaintiff. Doc. 89-11, at 25:24–25:55. After the incident, Defendant Gomez approached her after the incident, laughing. Tracey Dep. 42:13-16. Gomez said "I can't believe you was just telling him to do it, and he did it" and that he couldn't believe Plaintiff was "dumb enough to do it." Tracey Dep. 42:17-24. Defendant Gomez thought it was "hilarious" that Plaintiff attempted suicide. Tracey Dep. 61:21-25.

23.    Plaintiff does not have any other knowledge about what Deputy Gomez was aware of other than the interaction between Plaintiff and Tracey, generally. Plaintiff's depo., p. 112, ll. 4-17.

**Undisputed.**

24.    Plaintiff only had minor dispute interactions with Deputy Jackson. Plaintiff's depo., p. 114.

**Disputed.** After Defendant Tracey told him to kill himself, Plaintiff told Defendant Jackson he was suicidal over the intercom. Smith Dep. 57:7–58:9; 58:23–59:17. Defendant Tracey told Defendant Jackson to tell Plaintiff to kill himself and then told Defendant Jackson to hang up the intercom, which she did. Smith Dep. 57:7–58:9; 58:23–59:17.

25.    Nurse Sanchez observed some disagreement between Deputy Tracey and Plaintiff but did not see Deputy Gomez or Deputy Jackson involved in the

9

interaction. Sanchez depo., p. 110.

**Disputed**. Defendant Sanchez overheard and saw Plaintiff banging on the cell door and Defendant Tracey say "stop kicking on the fucking door," "your fucking mommy was calling up here asking about you," and in response to Plaintiff stating that he was going to kill himself, "Don't talk about it, be about it. Fucking do it." Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 00:40:15.

26. Deputy Jackson was not aware of the context of the argument and told Deputy Tracey to stop the argument. Jackson depo., p. 79, ll. 8-11; Gomez depo., p. 49, ll. 23-25; Tracey depo., p. 46, ll. 9-11.

**Disputed and unfounded**. The citations to Jackson and Gomez's depositions do not support the alleged fact.

The citation to Jackson's deposition was part of a conversation about Jackson's work and social relationship to Tracey. Jackson Dep. at 79:8–11. Likewise, Gomez's transcript does not support this statement, his cited testimony is about his memory that Plaintiff said he was suicidal. Gomez Dep. at 49:23–25.

Jackson in her testimony said that she took no action after hearing Plaintiff say he was suicidal. Jackson Dep. 83:2–6; 79:22–80:5.

27. Even with the arguing, Deputy Tracey did not believe that Plaintiff

10

was suicidal and did not communicate any concerns about suicide to Deputies Gomez/Jackson. Tracey depo., p. 87, ll. 21-23.

**Immaterial and disputed.** Whether Defendant Tracey believed Plaintiff was suicidal is immaterial to the claims against Defendant Jackson. However, even if it were relevant, Plaintiff also disputes Defendant Tracey's alleged belief. Defendant Tracey knew from her conversation with Plaintiff's mother about Plaintiff's recent involuntary hospitalization for suicidal ideations. Pittman George Dep. 35:23–36:12, 37:15–38:8. She likewise heard from Jackson that Plaintiff had a history of suicidal thought. Tracey Dep. 57:7-15. She heard Plaintiff say he was suicidal, Tracey Dep. 49:17–50:6, and then taunted him to hang himself, Smith Dep. 48:11–25, while knowing that the cell in which Plaintiff was located had a corded telephone. Tracey Dep. 84:9–13. It is undisputed, however, that Defendant Tracey did not communicate any concerns about suicide.

28. At this time, Deputy Gomez was at the fingerprinting machine with another inmate and was not paying attention to the holding cell. Gomez depo., p. 50, ll. 19-24.

**Disputed**. Defendant Gomez walked up to Cell 7 at the time of this exchange. Doc. 89-7, Ezra Smith Booking Area 07-09-2024.mp4 at 01:28:42; Gomez Dep. 70:17–71:7.

11

29.     Deputy Tracey then went back to the booking platform; checked the cell camera; could not see Plaintiff and went back to the cell; and, found Plaintiff kneeling by the phone. Jackson depo., p. 79, ll. 24-25 – p. 80, ll. 1-5.

**Disputed**. Plaintiff does not dispute that Defendant Tracey went back to the platform and eventually came back to the cell, where she found him hanging. However, this sequence of events omits when Plaintiff spoke to Defendant Jackson on the intercom, telling her he was suicidal, and Defendant Jackson hanging up the intercom after instructed to do so by Defendant Tracey and after Tracey told Defendant Jackson to tell Plaintiff to kill himself. Smith Dep. 57:7–58:9; 58:23–59:17.

30.     Deputy Gomez secured the inmate he was working with and responded to the holding cell. Gomez depo., p. 52, ll. 13-22.

**Undisputed.**

31.     Plaintiff did, then, in fact, attempt to hang himself by wrapping the telephone cord around his neck. Doc. 71, ¶ 32.

**Disputed**. It is undisputed that Plaintiff attempted suicide by hanging. However, the use of "then" asserts it came in sequence after paragraphs 29 and 30, which is not accurate.

32.     County Jail staff promptly responded and were able to revive Plaintiff.

Id., ¶¶ 33-36.

**Undisputed.** It is undisputed that once Defendants found Plaintiff unresponsive, staff promptly responded to the medical emergency.

33.     Following an internal investigation, it was determined suicide-prevention procedures could have begun after Plaintiff and Deputy Tracey were arguing. Gomez depo., p. 66, ll. 5-9.

**Disputed**. The investigation found that Defendants Tracey, Jackson, and Gomez violated the policy by failing to place Plaintiff in suicide watch protocol after having knowledge that he stated he was going to kill himself. Doc. 75-03 at 5.

34.     At the time Deputy Gomez did not believe he needed to intervene and report the argument between Deputy Tracey and Plaintiff. Gomez depo., p. 86, ll. 7-16.

**Disputed and Immaterial**. Defendant Gomez received both hands on training and two weeks of training on the Rockdale County Sheriff's Office policies. Gomez Dep. 11:7-11, 12:21–13:19. Defendant Gomez agreed that he had a duty to follow RCSO policies while working as a detention deputy. Gomez Dep. 14:3-5. He further agreed that such policies were important to protect both inmates and officers. Gomez Dep. 14:6-17.

35.     It was determined that Deputy Tracey violated the "5.22 – Suicide

Prevention and Intervention" policy and she was terminated. Doc. 71, ¶¶ 40-42; IA File, p. 5.

**Undisputed.**

36.   Deputies Gomez/Jackson were issued a written reprimand. Id.

**Undisputed.** Both Defendants Gomez and Jackson received written reprimands for failing to implement follow the Sheriff's suicide watch protocols.

Submitted January 9, 2026.

|  |  |
|---|---|
| Spears & Filipovits, LLC<br>315 W. Ponce de Leon Ave.<br>Suite 865<br>Decatur, GA 30030<br>404.905.2225<br>jeff@civil-rights.law<br>wingo@civil-rights.law | **Jeff Filipovits**<br>Jeff Filipovits<br>Georgia Bar No. 825553<br>**Wingo Smith**<br>Wingo Smith<br>Georgia Bar No. 147896 |
| Slater Legal PLLC<br>2296 Henderson Mill Rd. NE #116<br>Atlanta, GA 30345<br>(404) 458-7283<br>james@slater.legal | **James M. Slater**<br>James M. Slater<br>Georgia Bar No. 169869 |