IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EZRA SMITH,<br><br>    Plaintiff,<br>v.<br><br>DEPUTY MONIQUE TRACEY, *et al.*,<br><br>    Defendants. | Civil Action No.:<br><br>1:24-cv-05158-TWT |

**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS RELEVANT TO DEFENDANT SANCHEZ'S <u>MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Local Rule 56.1, Plaintiff Ezra Smith provides the following additional material facts as to Defendant Sanchez, which present a genuine issue for trial.

1. Plaintiff has a history of mental health disorders and suicidal behavior. Smith Dep. 75:24–76:18, 90:2-9; 91:2-16, 96:7-12.

2. On July 6, 2024, Plaintiff was released from a psychiatric hospital after being treated for suicidal ideations. Smith Dep. 92:1-7.

3. On July 8, 2024, after his release from treatment, Plaintiff was transported to the Rockdale County Jail to be detained for a for a probation violation. Pittman George Dep. 27:13–28:5.

1

4. On July 8, 2024, Plaintiff was being held in a booking cell with 9 to 10 other detainees. Tracey Dep. 58:19-23; Gomez Dep. 29:18-21.

5. Eventually, after 1:00 a.m., everyone else in Holding Cell 7 was processed except for Mr. Smith. Tracey Dep. 39:21–40:24; Gomez Dep. 80:21-23.

6. Plaintiff became increasingly depressed after he was left alone in the holding cell. Smith Dep. at 45:19–25; Tracey Dep. 40:25-41-7. Plaintiff then started to kick the cell door to get the officers' attention. Smith Dep. at 46:10-13. After Plaintiff began kicking the door, Defendant Tracey came to the cell. *Id.* at 46:10-13.

7. Plaintiff asked Defendant Tracey why he was the only person in the cell who hadn't been processed and asked if he could make a phone call. Smith Dep. at 47:9–14.

8. Defendant Tracey told Plaintiff not to kick the door and then told Plaintiff she had spoken with Plaintiff's mother. *Id.* 47:25–48:12. Defendant Tracey insinuated and gestured to Plaintiff that his mother was crazy. *Id.* at 48:11–25.

9. Defendant Tracey then told Plaintiff that he was a "piece of shit," told him to kill himself multiple times, and gestured that he should hang himself. *Id.* at 48:11-25; Doc. 89-2, Verified Response No. 7 to Defendant Gomez's First Set of Interrogatories. When Plaintiff said he was suicidal, Defendant Tracey told him to

do it. *Id.* at 49:1-3; Gomez Dep. 49:17-25, 50:11-12; 50:13-18.

10. As shown in the below screen shot, at about 1:28 a.m., Defendant Tracey gestured that Plaintiff should hang himself and told him to commit suicide. Doc. 89-7, Ezra Smith Booking Area 07-09-2024.mp4 at 01:28:41; Smith Dep. 55:2–8. At that point, Defendant Tracey knew that Plaintiff had stated that he was suicidal. Smith Dep. 49:1–3.



11. Defendant Sanchez, a licensed practical nurse working for Napchare through a contract with the jail, was on shift in booking during this time. Sanchez Dep. at 61:6–10.

12. Defendant Sanchez heard and could see Plaintiff banging on the cell door. *Id.* at 67:22–68:6.

13. Defendant Sanchez heard Plaintiff say he was going to kill himself and heard Defendant Tracey respond by telling Plaintiff to kill himself. *Id.* at

3

69:12-17; 68:24–69:1.

14. Specifically, Defendant Sanchez heard the following exchange between Defendant Tracey and Plaintiff: Defendant Tracey said things like "stop kicking on the fucking door" and being very nasty, Tracey said "your fucking mommy was calling up here asking about you," and in response to Plaintiff stated that he was going to kill himself, Defendant Tracey said "Don't talk about it, be about it. Fucking do it." Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 00:40:15.

15. When Defendant Sanchez heard the exchange between Defendant Tracey and Plaintiff, she was at the medical desk of the booking area of the jail. Ex. XXX, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 00:42:56; Sanchez Dep. 72:7-10.

16. Defendant Sanchez knew there was a phone with a phone cord in Plaintiff's holding cell. Sanchez Dep. 103:25–104:2.

17. Defendant Sanchez understood that if an officer or Naphcare employee hears a patient verbalizing a desire or intent to commit suicide, she as the nurse on duty is supposed to assesses the patient. *Id.* at 42:6-10; 43:12-18.

18. While Plaintiff was not yet in her "medical queue," in an emergency a nurse is required to attend to an inmate at the jail. Jackson Dep. 45:14–46:2.

19. Defendant Sanchez knew Naphcare's policies and procedures as part

4

of her job at the jail. Sanchez Dep. at 33:3-6.

20. According to Naphcare's policy on suicidal intervention "Any staff who hears a patient verbalizing a desire or intent to commit suicide, observes a patient making an attempt or gesture, or otherwise feels a patient is at risk for suicide, will take immediate steps to ensure the patient is continuously observed and prevented from harm until appropriate medical, mental health, and or supervisory assistance is obtained." Doc. 90-1, Naphcare Policy B-05 Suicide Prevention and Intervention § 8, at Napchare000172 (filed under seal).

21. Defendant Sanchez understood that if an officer or Naphcare employee hears a patient verbalizing a desire or intent to commit suicide, she as the nurse on duty is supposed to assesses the patient. Sanchez Dep. at 42:6-10; 43:12-18.

22. After Defendant Tracey left the cell, Plaintiff called Defendant Jackson using the intercom in the cell. Smith Dep. 57:7–58:9; 58:23–59:17. Plaintiff told Defendant Jackson that he was feeling suicidal. *Id.* at 57:7–58:9; 58:23–59:17.

23. Defendant Tracey told Defendant Jackson to tell Plaintiff to kill himself and then told Defendant Jackson to hang up the intercom. *Id.* at 57:7–58:9; 58:23–59:17. Defendant Jackson hung up the intercom. *Id.* Defendant Jackson told Defendant Tracey "forget him" and that he could "bang all night." Tracey Dep. at

5

41:1-7, 46:4-11.

24. After Defendants Tracey and Jackson stopped answering the intercom, Plaintiff began hitting his head against the cell door and then the cell wall. Smith Dep. at 59:10–17; 61:23–62:2. Plaintiff was kicking and repeating "I'm going to kill myself" and "let me out." Tracey Dep. 49:17–50:6.

25. At 1:30 a.m., a minute after Defendant Tracey left Plaintiff's cell after taunting him to commit suicide, Defendant Sanchez agreed that she could have called a supervisor or someone at the jail to alert them of Plaintiff's threat. Sanchez Dep. 78:11-22.

26. At that time, Plaintiff was still moving in the cell and had not hanged himself yet. *Id.* at 78:23–79:10.

27. At 1:31, two minutes after Defendant Tracey left the area outside Plaintiff's cell, Defendant Sanchez admitted she could have called for help. *Id.* at 79:20-23.

28. Although she had time, Defendant Sanchez did not evaluate Plaintiff, did not speak to anyone at Naphcare or at the Rockdale County Jail about Plaintiff's suicidal ideations, and did not take any steps to ensure Plaintiff was placed on observation. Sanchez Dep. at 72:16–73:9.

29. If Defendant Sanchez had placed Plaintiff on medical observation or suicide watch, he would have been moved to a different cell and not have had

access to a phone cord with which to hang himself. *Id.* at 80:20–81:6.

30. But between 1:29 a.m. and 1:34 a.m., when Defendant Sanchez finally ran towards the cell, she did nothing. *Id.* at 81:22–82:11. There was nothing preventing Defendant Sanchez from calling her supervisor during that five-minute period. Sanchez Dep. at 72:16–73:9.

31. After Plaintiff stopped hitting his head against the cell wall, he took the phone cord in the cell, wrapped it around his throat, and hanged himself. Smith Dep. 62:17-25.

32. When Defendant Sanchez responded to Plaintiff's suicide attempt, she observed that Plaintiff had turned blue and that he didn't have a pulse; his nose was bleeding and he had urinated on himself. Sanchez Dep. at 82:13-18.

33. Plaintiff's suicide attempt was the first suicide attempt Defendant Sanchez had ever seen. Sanchez Dep. 54:18-22.

Dated: January 9, 2026

SPEARS & FILIPOVITS, LLC
315 W. Ponce de Leon Ave., Ste. 865
Decatur, Georgia 30030
(404) 905-2225
jeff@civil-rights.law
wingo@civil-rights.law

**Jeff Filipovits**
Jeff Filipovits
Georgia Bar No.  825553

**Wingo Smith**
Wingo Smith
Georgia Bar No. 147896

8

| | |
|---|---|
| | **James M. Slater** |
| SLATER LEGAL PLLC | James M. Slater |
| 2296 Henderson Mill Rd. NE #116 | Georgia Bar No. 169869 |
| Atlanta, Georgia 30345 | |
| (404) 458-7283 | |
| james@slater.legal | |