IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EZRA SMITH,

     Plaintiff,

v.

DEPUTY MONIQUE TRACEY, *et al.*,

     Defendants.

Civil Action No.:

1:24-cv-05158-TWT

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT ERICA SANCHEZ'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Ezra Smith responds in opposition to Defendant Erica Sanchez's motion for summary judgment (Doc. 84) as follows:

## I.    INTRODUCTION

Defendant Sanchez—a licensed practical nurse stationed in the booking area at the Rockdale County Jail during the evening shift of July 8, 2024—heard an inmate say he was going to commit suicide after hearing him banging and mule kicking the cell door. She knew he was in obvious mental distress. Then she heard an officer respond by taunting him and telling him to commit suicide: "Don't talk about it, be about it. Fucking do it." Defendant Sanchez knew the inmate had the means to commit suicide. She was within earshot of the entire exchange. And she

was the only medical provider on duty. Instead of intervening, as her training required, she sat at her nearby desk and did nothing for almost five minutes. She admits that she had ample time to respond, which would have mitigated the risk of harm. But she simply did not. As a result of Defendant Sanchez's inaction, Plaintiff hanged himself at the jail, resulting in injuries.

On this record, a reasonable jury could conclude that the facts known to Defendant Sanchez at the time demonstrate actual knowledge of a substantial or strong risk of self-harm. Defendant Sanchez was aware of specific warning signs and information indicating a heightened risk of self-harm— requiring immediate intervention under her employer's policy—yet she failed to take *any* steps in response for several minutes.

The evidence would allow a reasonable jury could find in favor of Plaintiff on liability and damages on his Fourteenth Amendment claim against Defendant Sanchez, her motion should be denied.

## II.    BRIEF RECITATION OF FACTS

Plaintiff Ezra Smith had a history of mental health disorders and suicidal behavior. *See* Smith Dep. 75:24–76:18, 90:2-9; 91:2-16, 96:7-12. After he was released from a psychiatric hospital, Plaintiff was taken into custody at the Rockdale County Jail on or about July 8, 2024. Smith Dep. 92:1-7. Plaintiff was

placed in Holding Cell 7, where he was held with others who were waiting to be processed by jail staff. Tracey Dep. 58:19-23; Gomez Dep. 29:18-21.

Eventually, everyone else in Holding Cell 7 was processed except for Mr. Smith. Tracey Dep. 39:21–40:24; Gomez Dep. 80:21-23. Defendant Jackson told Defendant Tracey that she would not process Plaintiff. Tracey Dep. 40:10-17. Defendant Jackson told Defendant Tracey that Plaintiff was "a prick. He can stay there. You need to go to the kitchen and just start the kitchen work." *Id.* at 40:18-24. She told Defendant Tracey to just leave the folder, that it was "that prick's folder," that Plaintiff was a "white privilege prick." *Id.* at 54:1–55:1.

Plaintiff became increasingly depressed after he was left alone in the holding cell. Smith Dep. at 45:19–25; Tracey Dep. 40:25-41-7. Plaintiff then started to kick the cell door to get the officers' attention. Smith Dep. at 46:10-13. After Plaintiff began kicking the door, Defendant Tracey came to the cell. *Id.* at 46:10-13.

Plaintiff asked Defendant Tracey why he was the only person in the cell who hadn't been processed and asked if he could make a phone call. Smith Dep. at 47:9–14. Defendant Tracey told Plaintiff not to kick the door and then told Plaintiff she had spoken with Plaintiff's mother. *Id.* 47:25–48:12. Defendant Tracey insinuated and gestured to Plaintiff that his mother was crazy. *Id.* at 48:11–25. Defendant Tracey then told Plaintiff that he was a "piece of shit," told him to kill

himself multiple times, and gestured that he should hang himself. *Id.* at 48:11–25. When Plaintiff said he was suicidal, Defendant Tracey told him to do it. *Id.* at 49:1-3; Gomez Dep. 49:17-25, 50:11-12; 50:13-18.

Defendant Sanchez, a licensed practical nurse, was stationed she was at the medical desk of the booking area of the jail and heard and could see Plaintiff banging on the cell door. Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 00:42:56; Sanchez Dep. 72:7–10;. 61:6–10; 67:22–68:6.

After Tracey approached Plaintiff's cell window, Defendant Sanchez heard Plaintiff say he was going to kill himself and heard Defendant Tracey respond by telling Plaintiff to kill himself. *Id.* at 69:12-17; 68:24–69:1. Specifically, Defendant Sanchez heard the following exchange between Defendant Tracey and Plaintiff: Defendant Tracey said things like "stop kicking on the fucking door" and being very nasty, Tracey said "your fucking mommy was calling up here asking about you," and in response to Plaintiff stated that he was going to kill himself, Defendant Tracey said "Don't talk about it, be about it. Fucking do it." Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 00:40:15. she was at the medical desk of the booking area of the jail. *Id.* at 00:42:56; Sanchez Dep. 72:7–10.

Defendant Sanchez understood that if an officer or Naphcare employee hears a patient verbalizing a desire or intent to commit suicide, she as the nurse on duty is supposed to assesses the patient regardless of whether they are in here "medical queue." *Id.* at 33:3-6, 42:6-10; 43:12-18; Jackson Dep. 45:14–46:2. *See also* Doc. 90-1, Naphcare Policy B-05 Suicide Prevention and Intervention § 8, at Napchare000172 (filed under seal) (requiring staff who hear a suicide threat to take immediate action). Defendant Sanchez also knew there was a phone with a phone cord in Plaintiff's holding cell. Sanchez Dep. at 103:25–104:2. If Had Defendant Sanchez had placed Plaintiff on medical observation or suicide watch, he would have been moved to a different cell and not have had access to a phone cord with which to hang himself. *Id.* at 80:20–81:6. Defendant Sanchez likewise admitted she could have called for help after she heard what Plaintiff and Defendant Tracey said several minutes earlier. *Id.* at 78:11-22, 79:20-23. **Nevertheless, Defendant Sanchez did nothing and continued sitting at her desk.**

After Defendant Tracey left the cell, Plaintiff called Defendant Jackson using the intercom in the cell. Smith Dep. 57:7–58:9; 58:23–59:17. Plaintiff told Defendant Jackson that he was feeling suicidal. *Id.* at 57:7–58:9; 58:23–59:17. Defendant Tracey told Defendant Jackson to tell Plaintiff to kill himself and then told Defendant Jackson to hang up the intercom. *Id.* at 57:7–58:9; 58:23–59:17.

Defendant Jackson hung up the intercom. *Id.* Defendant Jackson told Defendant Tracey "forget him" and that he could "bang all night." Tracey Dep. at 41:1-7, 46:4-11.

After Defendants Tracey and Jackson stopped answering the intercom, Plaintiff began hitting his head against the cell door and then the cell wall. Smith Dep. at 59:10–17; 61:23–62:2. Plaintiff was kicking and repeating "I'm going to kill myself" and "let me out." Tracey Dep. 49:17–50:6. After Plaintiff stopped hitting his head against the cell wall, he took the phone cord in the cell, wrapped it around his throat, and hanged himself. Smith Dep. 62:17-25.

When Defendant Sanchez responded to Plaintiff's suicide attempt, she observed that Plaintiff had turned blue and that he didn't have a pulse. His nose was bleeding and he had urinated on himself. Sanchez Dep. at 82:13-18. Defendant Sanchez admitted she could have called for help after she heard what Plaintiff and Defendant Tracey said several minutes earlier. *Id.* at 78:11-22, 79:20-23.

Following the incident, Plaintiff was diagnosed with myalgia, conjunctival hemorrhage, elevated blood pressure, transaminitis, and major depressive disorder. *See* Doc. 89-2, Verified Response No. 12 to Defendant Gomez's First Set of Interrogatories. Plaintiff continues to suffer from back pain, difficulty raising his

left arm above his head, difficulty breathing, and head trauma and pain. *Id.* Plaintiff

also continues to experience psychological trauma, including anxiety. *Id.*

Following the incident, Plaintiff continued to have suicidal ideations, which

increased because the experience of dying at the jail made him feel like death was

easy. *Id.* Plaintiff has battled with thoughts of committing self-harm again,

particularly because of the ease in which he was able to do it at the jail in July

2024. *Id.*

## III.    ARGUMENT AND CITATIONS OF AUTHORITY

### a.    Standard of review.

Under Rule 56(a), summary judgment "is appropriate only if 'the movant

shows that there is no genuine [dispute] as to any material fact and the movant is

entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57,

134 S.Ct. 1861, 188 L.Ed.2d 895 (2014) (per curiam) (quoting Fed. R. Civ. P.

56(a)). A court considering a summary judgment motion must "draw all reasonable

inferences in favor of the party opposing summary judgment." *Glasscox v. Argo*,

903 F.3d 1207, 1212 (11th Cir. 2018). Even when the parties agree on a set of facts,

a court should deny summary judgment if "reasonable minds might differ on the

inferences arising from undisputed facts." *Id*. (quotation omitted). If a factfinder

could draw more than one inference from a set of facts, and those multiple

inferences create a genuine issue of material fact, summary judgment must be denied. *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1315 (11th Cir. 2007). Credibility determinations, weighing of evidence, and drawing of legitimate inferences are reserved for the jury, and a judge should not appropriate those functions when ruling on a motion for summary judgment. *Id.*

### b. The Fourteenth Amendment standard for deliberate indifference to risk of self-harm.

Pretrial detainees like Plaintiff "plainly have a Fourteenth Amendment due process right 'to receive medical treatment for illness and injuries, which encompasses a right to psychiatric and mental health care, and a right to be protected from self-inflicted injuries, including suicide.'" *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)); *see also Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015).

To establish liability for a prisoner's suicide (or attempt) under section 1983, "the plaintiff must show that the jail official[1] displayed 'deliberate indifference' to

---

[1] While Defendant Sanchez was not a detention deputy of the jail, she was acting under color of law by virtue of her employer's contract with the Sheriff's Office. *See, e.g.*, *Ancata v. Prison Health Services, Inc*., 769 F.2d 700 (11th Cir. 1985) (collecting cases). Because Defendant Sanchez was employed by a private company under contract with the Sheriff, she is not entitled to qualified immunity.

the prisoner's taking of his own life." *Cook*, 402 F.3d at 1115 (quoting *Cagle v. Sutherland*, 334 F.3d 980, 986 (11th Cir. 2003) (per curiam)) (internal quotation mark omitted). The plaintiff must prove that the official had subjective knowledge of a risk of serious harm and disregarded that risk. *Snow ex rel. Snow v. City of Citronelle, Ala.*, 420 F.3d 1262, 1268 (11th Cir. 2005) (quoting *Cook*, 402 F.3d at 1115).

  "[D]eliberate indifference requires that the defendant deliberately disregard 'a strong likelihood rather than a mere possibility that the self-infliction of harm will occur.'" *Cook*, 402 F.3d at 1115 (quoting *Cagle*, 334 F.3d at 986) (emphasis omitted); *see also Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir. 2008). "[T]he mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." *Gish*, 516 F.3d at 954 (quoting *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1540 (11th Cir. 1994) (en banc).

  The Fourteenth Amendment requires that a jailer have "personal, subjective knowledge of a suicide risk," *Jackson*, 787 F.3d at 1356–57 n.6, and be subjectively aware that "the combination of the [detainee's] suicidal tendencies and the feasibility of suicide in the context of the [detainee's] surroundings [will] create[] a strong likelihood that the [detainee] will commit suicide." *Gish*, 516 F.3d

(Doc. 47 at 8 n.2) (quoting *Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999)).

at 954–55. A defendant's subjective knowledge of the seriousness of risk of self-harm "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Lancaster v. Monroe Cty., Ala.*, 116 F.3d 1419, 1426 (11th Cir. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 840, (1994)).

      c.    ***Wade v. McDade* and the appropriate standard on culpability.**

Defendant Sanchez argues that the requisite degree of culpability here should be subjective recklessness as used in the criminal law, as announced in *Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024) (en banc). (*See* Doc. 84-2 at 3).

While a recent panel of the Eleventh Circuit Court of Appeals has applied the Eighth Amendment *Wade* standard to a Fourteenth Amendment jail suicide case, *see Gantt v. Everett*, — F.4th — 2025 WL 3676948, at *2 (11th Cir. Dec. 18, 2025) (quoting *Wade*, 106 F.4th at 1262), the result of applying *Wade* here would not change the outcome. Indeed, it appears that the court in *Wade* merely rephrased the same test that this Circuit previously used, except this time substituting "unreasonable" for the phrase "more than negligent." The subjective knowledge standard analyzed in *Wade* remains unchanged because this Circuit has always required subjective knowledge. As Judge Jordan's concurrence advised, "courts and attorneys look carefully at prior Eleventh Circuit cases to see if they are consistent with the subjective component of deliberate indifference set out in

*Farmer*. If they are consistent, then they should continue to be cited as binding precedent." *Wade*, 106 F.4th at 1265 (Jordan, J., concurring). Every case relied upon by Plaintiff here uses that standard, and thus the Court can rely on them as binding authority.

To the extent that *Wade* has any effect on this litigation, to preserve the argument for appeal, Plaintiff argues that the Court should adopt the Fourteenth Amendment deliberate indifference standard based on civil recklessness, rather than the criminal recklessness standard that the Supreme Court adopted under the Eighth Amendment in *Farmer*.[2]

---

[2] The foundational assumption of *Hamm v. DeKalb Cnty.*, 774 F.2d 1567 (11th Cir. 1985), that the two rights were coextensive was abrogated by the Supreme Court in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), where the court held that the Eighth and Fourteenth Amendments require different standards for excessive force claims because "the language of the two Clauses differs, and the nature of the claims often differs." *Id.* In the wake of *Kingsley*, many circuits reevaluated the Fourteenth Amendment deliberate indifference standard. Rather than applying the criminal recklessness standard announced in *Farmer* (and reiterated by *Wade*), which requires subjective knowledge of a serious risk of harm, those circuits follow the civil recklessness standard that defendant knew *or should have known* of a substantial risk of harm. *See, e.g.*, *Lawler as next friend of Lawler v. Hardeman Cnty., Tennessee*, 93 F.4th 919, 927 (6th Cir. 2024) ("officers can face liability even if they did not actually know of a risk of harm to a pretrial detainee. Pretrial detainees need only prove that the officers recklessly disregarded a risk so obvious that they either knew or should have known of it.") (emphasis added). *See also Miranda v. Cty. of Lake*, 900 F.3d 335, 353 (7th Cir. 2018); *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1120, 1122–25 (9th Cir. 2018) (adopting the "knew or should have known" standard).

###### d.    A reasonable jury could conclude that Defendant Sanchez violated the Fourteenth Amendment.

Based on the Eleventh Circuit's Fourteenth Amendment framework, a reasonable jury, construing the facts in the light most favorable to Plaintiff, could conclude that Defendant Sanchez had sufficient awareness of the substantial and strong risk that Plaintiff would commit self-harm and unreasonably disregarded that risk—by doing nothing in response. In her brief, Defendant Sanchez raises three principal arguments to evade liability. First, she claims she did not know who Plaintiff was, and therefore she could not be deliberately indifferent after she heard a jailer urging Plaintiff to kill himself. Second, she claims that once she heard Plaintiff threaten suicide and Defendant Tracey tell him to go through with it, she had no obligation to respond because she did not believe Plaintiff was serious. Third, she claims that even if she should have intervened, her failure to do so did not cause Plaintiff's injury and he needs an expert to establish even garden variety emotional damages. As explained below, none of these arguments have merit.

###### 1.    *Defendant Sanchez knew there was a strong likelihood that Plaintiff would commit self-harm.*

When construing the inferences in Plaintiff's favor, the record evidence demonstrates that Defendant Sanchez had subjective awareness of Plaintiff's serious risk of self-harm. First, she observed Plaintiff banging violently on the

window and door of the cell. Sanchez Dep. at 67:22–68:6; *see also id.* 61:19–62:23 (testifying that she could see the cell from her office, which was not far away). Second, she heard Plaintiff tell Defendant Tracey that he was going to commit suicide. *Id.* at 69:12–17; 68:24–69:1. Third, she witnessed Defendant Tracey urge Plaintiff to commit suicide. *Id.* Fourth, she knew that there was a telephone with a cord in Plaintiff's cell. *Id.* at 103:25–104:2. And last, her employer's policy dictated that she was required to intervene upon hearing a suicidal threat. *Id.* at 76:15–22; *see also* Doc. 90-1, Naphcare Policy B-05 Suicide Prevention and Intervention § 8, at Napchare000172 (filed under seal).[3]

This evidence sufficiently demonstrates under *Snow* and its progeny that a reasonable jury could conclude that Defendant Sanchez had actual awareness sufficient to hold her liable. *Greason v. Kemp,* 891 F.2d 829, 835–36 (11th Cir. 1990) (with knowledge of a threat of suicide, "failure to take steps to prevent [a detainee from] committing suicide can amount to deliberate indifference.").

Defendant Sanchez heard a suicidal threat and taunting by a jail official, understood that there was a means to accomplish self-harm in the cell, and knew

---

[3] Section 8 of the policy states: "Any staff who hears a patient verbalizing a desire or intent to commit suicide, observes a patient making an attempt or gesture, or otherwise feels a patient is at risk for suicide, will take immediate steps to ensure the patient is continuously observed and prevented from harm until appropriate medical, mental health, and or supervisory assistance is obtained."

that she was required under the applicable policy to intervene upon hearing this. Sanchez Dep. at 42:6–10; 43:12–18. *See also Stewart v. Johnson*, 2021 WL 3081882, at *3 (S.D. Ga. July 21, 2021) ("evidence of a policy violation may be evidence of deliberate indifference"); *Hope v. Pelzer*, 536 U.S. 730, 743-44, (2002) (holding that official's disregard of prison regulation "provides equally strong support for the conclusion that they were fully aware of the wrongful nature of their conduct.").

To evade liability, Defendant Sanchez points to three things: first, she claims that she could not act in such a short period of time (several minutes); second, she argues that—despite the policy requiring her to intervene regardless of the legitimacy of a threat—based on her training and experience as a correctional nurse, she believed Plaintiff's threat of suicide was attention-seeking behavior, not a real threat; and third, Plaintiff's previous "jokes about suicide"—of which Sanchez was completely unaware—somehow meant that there was no danger of self-harm. Each is addressed in turn.

First, Defendant Sanchez claims that she could not reasonably act in such a short period of time. Yet, she had several minutes to respond but instead returned to her work. At 1:30 a.m., a minute after Defendant Tracey left Plaintiff's cell, Defendant Sanchez agreed that she could have called a supervisor or someone at

the jail to alert them of Plaintiff's threat. Sanchez Dep. 78:11-22. At that time,

Plaintiff was still moving in the cell and had not hanged himself yet. *Id.* at 78:23–

79:10. At 1:31, two minutes after Defendant Tracey left the area outside Plaintiff's

cell, Defendant Sanchez admitted she could have called for help. *Id.* at 79:20-23. If

she had called for help, he would have been taken from the cell and placed in a cell

without a phone with a cord. *Id.* at 80:10–81:8. But between 1:29 a.m. and 1:34

a.m., when Defendant Sanchez ran towards the cell, she did nothing. *Id.* at 81:22–

82:11. And as she admits, there was nothing preventing her from calling her

supervisor during that period. Sanchez Dep. at 72:16–73:9. Her argument that she

lacked sufficient time to respond is outrageous.

Second, despite not knowing who Plaintiff was, Defendant Sanchez decided

he was angry and attention-seeking, and not suicidal. To support this argument, she

relies on her purported experience in this area as a correctional nurse. Putting aside

that Naphcare's policy does not provide any discretion—if a staff member hears a

threat she must respond, s*ee* footnote 2, *supra*—this argument fails because

Defendant Sanchez could not know whether the threat was legitimate or

illegitimate having known nothing about Plaintiff.

Further, contrary to her argument, she admits she has no experience in this

area. This was the first suicide attempt she had ever seen. Sanchez Dep. at 54:18-

22. She certainly had not witnessed a suicide attempt after a guard taunted the detainee, urging him to go through with it. Thus, to the extent it is even appropriate for her to rely on her purported experience, her admissions that she has none extinguish that argument.

Third, while Plaintiff has joked about suicide, Defendant Sanchez admits she knew nothing about him or any purported jokes. And Plaintiff never told anyone at the jail he was joking when he made comments or threats of suicide. Doc. 89-1, Declaration of Ezra Smith ¶¶ 5-7. She cannot rely on what Plaintiff may have said or done earlier when it has no bearing on what she heard and saw later in the day. Moreover, while Plaintiff may have joked with the detainees in the cell earlier in the day, he never told any officer he was joking. And although Plaintiff often talked about committing suicide by joking, it was because he was actively considering committing suicide. Smith Dep. 79:2-4; 84:16-23; 103:15– 104:16.

### 2. *Defendant Sanchez unreasonably disregarded the risk of self-harm.*

Binding precedent shows that doing nothing, like here, in light of a known, substantial suicide risk is an unreasonable response that constitutes deliberate indifference. This includes the failure to alert other officers to a suicide risk. *See, e.g.*, *Snow*, 420 F.3d at 1270 (11th Cir. 2005) (holding that failing to alert others at the jail or mitigate a known risk of suicide constituted deliberate indifference);

*Greason*, 891 F.2d at 840 (finding a warden deliberately indifferent for failing to institute corrective measures after learning of an inmate's risk of suicide).

Indeed, communicating the risks of inmate harm to other jail employees is a well-established way to mitigate a known harm. For example, in *Nelson v. Tompkins*, 89 F.4th 1289, 1298 (11th Cir. 2024), the court denied qualified immunity to an officer who responded unreasonably to a known risk of harm because that officer "could have told a classification officer about the risk of harm." The court held that "[i]t is enough to prove that the official had the authority to make recommendations with respect to placement and classification decisions." *Id.* (citing *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 623 (11th Cir. 2007) and *Farmer*, 511 U.S. 825).  Here, Defendant Sanchez admits that she could have acted, like alerting her supervisor or someone at the jail, but she did not. Sanchez Dep. 72:16–73:9, 78:11-22, 79:20-23. Such inaction satisfies this element.

In her brief, Defendant Sanchez lodges two principal arguments to counter this simple fact.

First, she claims that she did not have sufficient notice of the risk that Plaintiff would commit self-harm because she did not know who he was until he began banging on the cell door and then threatening suicide when Defendant

17

Tracey was at the cell door. To support this proposition, Defendant Sanchez points to her employer's contract with the jail to explain that Plaintiff was not in her "medical queue" because he was not processed. (Doc. 84-2 at 4–5).

But simply because Plaintiff was not on Defendant Sanchez's "medical queue" does not mean she can evade liability once she witnessed Plaintiff's erratic behavior, verbalized threats of suicide, and Defendant Tracey's taunts. The panel's decision in *Snow*, which Defendant Sanchez relies on this argument, explains that her knowledge of Plaintiff and his history is merely one pathway to liability. There, the Eleventh Circuit held that there was sufficient evidence to show that the officer had subjective knowledge of the strong likelihood of self-harm because of knowledge of a prior attempt and because the inmate told the officer he was suicidal. *Snow* 420 F.3d at 1270. Indeed, simply knowing about previous suicidal history or tendencies is not enough to establish liability. *Id.* at 1269 (quoting *Cook*, 402 F.3d at 1115).

Second, Defendant Sanchez claims that she did not disregard the risk of self-harm because "[e]ven though the time was five minutes, that is not enough to identify who was in the cell, gather necessary information, and work to have him assessed either in cell or having him brought to her desk." (*Id.* at 7). She claims that there was "not sufficient time for any actions of consequence." (*Id.*).

18

The evidence shows the contrary. While Defendant Sanchez claims that Plaintiff was already hanging himself and she could not take any action, that argument is (1) false, *see id.* at 78:23–79:10 (admitting that a minute after Defendant Tracey left the area, the video showed that Plaintiff had not yet started hanging himself) and (2) legally incorrect.

Defendant Sanchez admits that she could have alerted her supervisor or someone at the jail and there was nothing preventing her from doing so. Sanchez Dep. 72:16–73:9, 78:11-22, 79:20-23. And if she had done so, Plaintiff would have been placed in a suicide gown and taken to a suicide prevention cell without access to a phone cord. *Id.* at 80:20–81:6. Her argument that she needed to go through Plaintiff's paperwork and process him is simply belied by her own testimony. She heard Plaintiff threaten suicide after observing him banging on the door and window and then observed Defendant Tracey encourage him to go through with the act. She could have called someone. She admits this. But instead, she did nothing, despite the law, in cases like *Snow* and *Nelson*, requiring her to respond.

Because Defendant Sanchez *nothing* in response to significant risk of self-harm, her motion should be denied.

   **3.**  ***Defendant Sanchez's admissions demonstrate causation, and an expert is not required to prove damages.***

Without citing any legal authority, Defendant Sanchez argues that there is no evidence of causation or damages. (Doc. 84-2 at 8).

First, she argues, in conclusory fashion, that there is no evidence that Defendant Sanchez's inactions caused any injury to Plaintiff. That even if she had taken steps to mitigate the harm, it is speculative "that he still would not have made his suicide attempt." (*Id.*).

To establish causation, Plaintiff must show that Defendant Sanchez had at least "recklessly disregarded the inadequacy of the approach [she] took, the availability of other approaches, and their capacity to provide a cure." *See LaMarca v. Turner*, 995 F.2d 1526, 1541 (11th Cir. 1993). Here, there is sufficient evidence that Defendant Sanchez recklessly disregarded the strong likelihood of self-harm. *See Cook*, 402 F.3d at 1115. As Defendant Sanchez admits, had she taken *any* steps in response to the strong risk, Plaintiff would have been stripped and placed in a suicide prevention cell without access to a phone with a cord. Sanchez Dep. at 80:20–81:6.

Second, Defendant Sanchez argues, again without support, that Plaintiff's statements about his own medical, mental, and physical conditions are insufficient to recover damages because he lacks "admissible expert testimony or evidence" about the impacts of the suicide attempt. (Doc. 84-2 at 8). This argument fails

because there is no requirement that Plaintiff provide expert testimony concerning his injuries. This argument discounts that Plaintiff can rely on the hospital doctors and medical records to describe the specific medical injuries suffered from the suicide attempt. And as to Plaintiff's own testimony, Defendant Sanchez "seems to be confused that a plaintiff's own testimony about the emotional distress that []he suffered must be corroborated by other evidence. The law does not require corroboration. A jury can find substantial damages for emotional distress based solely on the testimony of the victim who suffered it." *Harris v. Sam's E., Inc.*, 2023 WL 2163918, at *3 (M.D. Ga. Feb. 22, 2023).

## IV.    CONCLUSION

For all these reasons, Defendant Erica Sanchez's motion for summary judgment (Doc. 84) should be denied.

Dated: January 9, 2026

Respectfully submitted,

SPEARS & FILIPOVITS, LLC
315 W. Ponce de Leon Ave., Ste. 865
Decatur, Georgia 30030
(404) 905-2225
jeff@civil-rights.law
wingo@civil-rights.law

**Jeff Filipovits**
Jeff Filipovits
Georgia Bar No.  825553

**Wingo Smith**
Wingo Smith
Georgia Bar No. 147896

SLATER LEGAL PLLC
2296 Henderson Mill Rd. NE #116
Atlanta, Georgia 30345
(404) 458-7283
james@slater.legal

**James M. Slater**
James M. Slater
Georgia Bar No. 169869

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been

prepared in compliance with Local Rule 5.1(B) in Times New Roman 14-point

typeface.

Dated: January 9, 2026.

SLATER LEGAL PLLC
2296 Henderson Mill Rd. NE #116
Atlanta, Georgia 30345
(404) 458-7283
james@slater.legal

**<u>James M. Slater</u>**
James M. Slater
Georgia Bar No. 169869