IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EZRA SMITH, ) | |
|     Plaintiff, ) | CIVIL ACTION FILE NO. |
| v. ) | |
| ) | 1:24-cv-05158-TWT |
| MONIQUE TRACEY, *et al.*, ) | |
|     Defendants. ) | |

**DEFENDANT TRACEY'S REPLY BRIEF IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Tracey in the above-styled action and files this Reply Brief in Support of her Motion for Summary Judgment. This case features a pretrial detainee's claim arising from his suicide attempt in the Rockdale County Jail. Defendant Tracey moved for summary judgment, Plaintiff responded and this is Tracey's reply.

**ARGUMENTS AND CITATIONS TO AUTHORITY**

Deputy Tracey responds to Plaintiff's arguments, generally in the order presented by Plaintiff. For the reasons detailed here and in her initial brief, Defendant is entitled to summary judgment on all claims.

**I. THE CRIMINAL RECKLESSNESS STANDARD APPLIES**

Plaintiff argues that the mental intent standard in the pretrial detainee context is different from the criminal recklessness standard in *Wade v. McDade*, 106 F.4th 1251 (11th Cir. 2024) (*en banc*). Under *Wade,* Plaintiff has to identify

facts from which a jury could conclude that Deputy Tracey was "actually, subjectively aware that [her] own conduct caused a substantial risk of serious harm to" the Plaintiff. Given the lack of evidence for that point, Plaintiff argues for a different standard. Strangely, Plaintiff never actually states the content of that different standard or how it would matter to this case.

Regardless, *Wade*'s criminal recklessness standard controls the subjective intent inquiry in this case. As Plaintiff points out, the Eleventh Circuit has applied *Wade*'s criminal recklessness standard in the pretrial detainee suicide context. *Gantt v. Everett*, 162 F.4th 1107, § III (11th Cir. 2025). That seems to settle the matter against Plaintiff.

Beyond that, for decades the federal courts in the Eleventh Circuit have held that "the standards for deliberate indifference claims under the Fourteenth Amendment for pretrial detainees are identical to those under the Eighth for convicted prisoners." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 n.1 (11th Cir. 2013) (cleaned up). The Eleventh Circuit's Fourteenth Amendment jail cases rely heavily upon standards announced in *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1970), and *Farmer* is the primary basis for the Eleventh Circuit's extensive analysis in *Wade*. The standards are the same, and Plaintiff offers no legitimate reason to confuse the law by employing two different standards for what (in the great majority of cases) are identically situated officers and inmates.

2

**II.   DEFENDANT TRACEY REASONABLY BELIEVED PLAINTIFF WAS NOT AT RISK FOR SUICIDE UNDER THE CIRCUMSTANCES**

It is one thing for the Plaintiff to say he wanted to kill himself in the course of a heated exchange. It is another thing for that to actually happen in a bare cell under video surveillance with no apparent means for the inmate to do so, in the five minutes following a yelling match. Suicide did not seem feasible, particularly suicide by a phone mounted at chest level above a bench.

The question is whether Deputy Tracey actually drew the conclusion that there was a "strong likelihood" that Plaintiff both would and *could* carry out suicide under these circumstances. See *Gish v. Thomas*, 516 F.3d 952, 954-55 (11th Cir. 2008) ("To be deliberately indifferent to a strong likelihood that the prisoner will commit suicide, the official must be subjectively aware that the **combination** of the prisoner's suicidal tendencies and the **feasibility of suicide in the context of the prisoner's surroundings** creates a strong likelihood that the prisoner will commit suicide." (emphasis supplied)).

Here, Defendant Tracey did not know that suicide by hanging was a realistic probability under the circumstances, and Plaintiff has no evidence to show otherwise. Doc. 86-4 at 14-15, 21 (Tracey Dep. at pp. 56:21 – 57:2, 84:17-19 (Tracey testifying she did not know that the jail phone could allow for hanging, particularly since authorities had deliberately shortened the phone cords to

3

eliminate risk of hanging)). The fact is that this was a highly improbable way to commit self harm due to the low level of the phone, the short cord and the difficulty in finding a way to fasten and apply constrictive pressure. Plaintiff managed to do it, but an exotic suicide is not a "strongly likely" and "feasible" suicide. See *Gish*, 516 F.3d at 954-55. Because the risk of suicide was not a "strong likelihood" under the circumstances, Defendant Tracey is entitled to summary judgment.

## III. TRACEY RESPONDED REASONABLY TO PLAINTIFF'S CLAIM THAT HE WAS SUICIDAL AND TO DISCOVERY OF HIS SUICIDE ATTEMPT

Plaintiff claims that Deputy Tracey did "nothing" in response to Plaintiff's suicidal statements. If that was true then Plaintiff would not be alive. This is the weakest point of Plaintiff's federal case, and it is no accident that Plaintiff resorts to false contentions and exaggeration.

The truth—not subject to any dispute—is that after the argument, Deputy Tracey monitored Plaintiff by video and listened to him yelling and kicking the door for the next two minutes or so. Smith Dep. at 67-68; Holding Cell Video at 1:29:32 *et seq*. When he stopped, Tracey wondered why. She looked at the monitor, could not figure out what was going on, and so she physically went to check on Plaintiff. Booking Area Video at 1:33:55 *et seq*.; Tracey Dep. at 41. All of this happened within five minutes.

After she saw Plaintiff was not moving, Tracey immediately called for help, the cell door was opened and with medical aid Plaintiff was revived.

Generally Plaintiff argues the situation was "emergent" so Tracey should have acted faster than the few minutes involved in this case. The fact is that nothing known to Tracey before she discovered Plaintiff hanging suggested the situation was "emergent." Plaintiff kept yelling and banging on the door for roughly two minutes. That was completely harmless so far as suicide risk was concerned, not "emergent."

The in-cell video shows Plaintiff with the phone cord for less than one second. In that split second of video it is not obvious Plaintiff is making a feasible suicide attempt. That fleeting video footage is consistent with Plaintiff preparing to make a phone call, or perhaps trying to damage the phone. Holding Cell Video at 1:31:14 *et seq*. Without hindsight and at face value, the video footage does not show an obvious suicide attempt, and there is no evidence Tracey believed it was. After that the video shows Plaintiff moving around on the bench and whatever he did with the phone cord is not visible on video. *Id*.

Even when carefully focusing on the video, it is not evident that Plaintiff is involved in a suicide attempt. Of course Deputy Tracey had no duty to carefully focus on the video, given that she had a variety of other work to do on this very busy shift.

5

Plaintiff seems to contend that the federal constitution required Deputy Tracey within a five-minute span to either (1) put Plaintiff in a different cell even though he was extremely violent and she had insufficient personnel to subdue him or (2) stand in front of the cell and watch Plaintiff based on the unlikely chance that he could figure out a way to harm himself with the telephone. The federal constitution has never been held to require any such thing, which is one reason why this is a qualified immunity case.

## IV. PLAINTIFF FAILS TO OVERCOME DEFENDANT TRACEY'S QUALIFIED IMMUNITY

"This is not an obvious case. Thus, to show a violation of clearly established law, [Plaintiff] must identify a case that put [Defendant Tracey] on notice that [her] specific conduct was unlawful." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6, 142 S. Ct. 4 (2021). The qualified immunity question is whether there is any binding case that told Deputy Tracey that her specific response to Plaintiff's suicide threat would violate the federal constitution, such that there is no reasonable space for debate. See *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S.Ct. 305 (2015) (law must be clearly established "beyond debate"); *Wade v. Daniels*, 36 F.4th 1318, 1337 (11th Cir. 2022) (requiring a high level of particularity in most qualified immunity cases).

If there is such a case, then Plaintiff has not identified it. In his qualified

immunity briefing, Plaintiff's two cases are *Greason v. Kemp,* 891 F.2d 829 (11th Cir. 1990), and *Snow v. City of Citronelle*, 420 F.3d 1262 (11th Cir. 2005). Neither case overcomes Tracey's qualified immunity.

*Greason* deals with the practice of psychiatric medicine and has no application to a jail officer like Tracey, who was not a psychiatrist. See *Belcher v. City of Foley*, 30 F.3d 1390, 1398 (11th Cir. 1994) (holding *Greason* did not clearly establish the law applicable to a jail administrator since "[t]he clinical director and the warden of the mental health facility who were defendants in *Greason* were in positions materially different from Chief Anderson's.").

*Snow* does not help Plaintiff any more than *Greason*. In *Snow*, Officer Chennault was told about the detainee's recent suicide attempt, believed the detainee was at strong risk for suicide, but then "did not inform [a fellow officer] to check on Poiroux every fifteen minutes … remove items from the cells with which Poiroux could have harmed herself ... place Poiroux in the drunk tank [or] return Poiroux to USA Medical Center for treatment and observation." *Id*. at 1270. Instead, after his shift ended Chennault went home, after which the detainee killed herself. *Id*. at 1267.

In contrast to *Snow*, here Deputy Tracey closely monitored Plaintiff, discovered his suicide attempt while it was in progress, immediately called for medical assistance and was involved in saving Plaintiff's life. That is completely

different from the officer in *Snow*. Plaintiff's reliance upon *Greason* and *Snow* amounts to straw-grasping.

In fact there is a case that tells the Court what to do with qualified immunity. That case is ***Cope v. Cogdill***, **3 F.4th 198 (5th Cir. 2021)**, where the Fifth Circuit granted qualified immunity to an officer who stood and watched as an inmate hanged himself with a telephone cord in a jail cell. *Id*. at 203. In light of Defendant Tracey's very different (and far more effective and energetic) response to Plaintiff's suicide attempt, it follows that *Tracey* is entitled to qualified immunity. See *Youmans v. Gagnon*, 626 F.3d 557, 565 (11th Cir. 2010) (explaining that out-of-circuit authorities may show that the law was not clearly established and "We must not hold police officers to a higher standard of legal knowledge than that displayed by the federal courts in reasonable and reasoned decisions . . . .").

Defendant prominently identified *Cope* in her initial brief. (Doc. 74-3 at 16) About *Cope*, Plaintiff's 25-page brief is completely silent. Plaintiff has no answer. The answer is the Deputy Tracey is entitled to qualified immunity, just like the far less diligent and ineffective officer in *Cope*. Plaintiff's silence on the point should qualify as a concession that qualified immunity is due.

### V.   OFFICIAL IMMUNITY BARS PLAINTIFF'S CLAIM UNDER STATE LAW

According to Plaintiff, Deputy Tracey had a "ministerial duty" to put him in

8

a different cell and do other things after any suggestion Plaintiff was suicidal. That is not what the Rockdale County Sheriff's Office policy required and Plaintiff cannot show breach of a genuine "ministerial duty." [1]

What the policy said is that where an inmate threatens or attempts suicide at a time like 1:30 a.m., then the medical department should be notified and "the inmate **may** also be placed on a "Suicide Watch" to monitor his/her behavior." Doc. 74-1 (Policy 5.22 (I) (A), (D)) (emphasis supplied). Here, Nurse Sanchez heard Plaintiff's suicidal statement(s) and Tracey knew it (see Sanchez Dep. at 69:14-15), so that part of the policy was accomplished. In the alternative, Plaintiff was not harmed by failure to repeat to Sanchez something that Sanchez already knew.

Aside from informing medical staff, the policy made Deputy Tracey's other action discretionary. A policy that says an officer "**may**" do something provides discretion to officers. See Doc. 74-1 at 2 (Policy 5.22 (I) (D)); ***Hill v. Jackson***, 336 Ga. App. 679, 687-88, 783 S.E.2d 719, 727 (2016) (holding that where a policy provision stated "immediate medical or mental health attention *may* also be deemed necessary" (emphasis in original), "[o]n its face, this language creates a

---

[1] Plaintiff does not dispute that there is no evidence sufficient to show "actual malice" by Tracey within the meaning of the extremely high bar set by the official immunity doctrine. See *Black v. Wigington,* 811 F.3d 1259, 1265 (11th Cir.2016).

discretionary duty, requiring personnel to exercise judgment."). Plaintiff appears to concede this point, arguing instead that some unwritten "policy" was in force. As discussed later, there is no legitimate basis for that contention.

Aside from the discretionary policy language, Plaintiff was a violent, agitated detainee who threatened to fight if the cell door was opened. Holding Cell Video at 1:27:30 *et seq.*; Doc. 86-4 at 12 (Tracey Dep. at 45). Had Tracey chosen to put Plaintiff in a different cell, etc., she had discretion to wait for other officers to appear in the area, as opposed to risking personal injury by trying to deal with Plaintiff immediately by herself or with the inadequate backup she had on hand at the time.

To the extent Plaintiff claims his joke around 8:00 p.m. in a cell full of other inmates should have triggered some different response by Tracey, he is mistaken because a fellow inmate reporting a joke (in a context intended to harass or manipulate officers) was not a suicide threat, much less a threat *by Plaintiff*. Aside from that, Tracey could see on the video monitor that Smith was denying any claim he was suicidal. Tracey Dep. at 57-58, 59-60. All of the inmates including Smith were standing around laughing. Tracey Dep. at 60:13-14. It is nonsense to suggest that officers had to react to this by triggering suicide prevention protocols. The policy did not require any such thing, and ordinary good sense supports what Tracey did.

Last, there was no policy aside from written Policy 5.22. Plaintiff relies upon hearsay comments at Merit Board hearings, which (1) are not admissible against Tracey except to the extent of a statement(s) by Tracey (see *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1279 (11th Cir. 2009) (holding that codefendant's unsworn statement was hearsay that was not admissible against objecting defendant)); and (2) are not evidence about any policy because none of the people involved there (including Tracey) were authorized to establish policy.

Beyond that, Tracey's comments in the Merit Board proceedings establish only that she was not medically qualified to assess the credibility of a suicide threat, and she also explained what occurs when an inmate is placed on "suicide watch." None of that helps Plaintiff with his negligence claim.

Under the plain language of RCSO Policy 5.22, officers had discretion ("may") to put an inmate on suicide watch. After hearing Plaintiff's actual suicide threat around 1:30 a.m., Tracey exercised her discretion by deciding to monitor Plaintiff where he was. Plaintiff has not shown any basis to overcome Defendant Tracey's official immunity, which bars Plaintiff's state law negligence claim.

## VI. PLAINTIFF'S ADMISSIONS ESTABLISH ASSUMPTION OF THE RISK AS A MATTER OF LAW

In Georgia, assumption of the risk is established where the Plaintiff "(1) had actual knowledge of the danger; (2) understood and appreciated the risks

associated with such danger; and (3) voluntarily exposed himself to those risks." *Muldovan v. McEachern*, 271 Ga. 805, 808, 523 S.E.2d 566, 569 (1999).

Unlike cases where suicide resulted in death, in this case Plaintiff testified about his assumption of the risk and video confirms what happened. Plaintiff admits (and pleaded) that he voluntarily tried to end his life, in the same manner he had on a prior occasion. Doc. 71 at ¶¶ 10, 29; Smith Dep. at 62:17-23. Plaintiff testified that he voluntarily wrapped the cord around his neck to hang himself. Smith Dep. at 156:5-21. In other words, it is undisputed that Plaintiff knew the danger of injury or death, and he actively and voluntarily tried to make the danger materialize. That establishes assumption of the risk and requires summary judgment.

Plaintiff's jail suicide case (*Brantley v. Jones,* 363 Ga. App. 466) does not stand for anything other than the point that, under the facts of that case (where there was no testimony from the decedent), an issue of fact remained for the jury on assumption of risk. By contrast, here every element of the defense is established with evidence that Plaintiff cannot dispute, because the evidence is Plaintiff's own pleading and testimony. Since there is no issue of fact and every element is conclusively established, assumption of the risk bars Plaintiff's negligence claim.

## CONCLUSION

Plaintiff has failed to identify binding precedent that told Deputy Tracey, "beyond debate," that her conduct clearly violated the Fourteenth Amendment. Plaintiff cannot overcome official immunity and the assumption of risk defense bars his state negligence claim. Consequently, Defendant Tracey is entitled to summary judgment.

    Respectfully submitted,

    WILLIAMS, MORRIS & WAYMIRE, LLC

    /s/ Jason C. Waymire
    JASON C. WAYMIRE
    Georgia Bar No. 742602
    Attorney for Defendant

Building 400, Suite A
4330 South Lee Street, NE
Buford, Georgia 30518
(678) 541-0790
(678) 541-0789
jason@wmwlaw.com

CERTIFICATION OF COMPLIANCE WITH L.R. 5.1(B).

Counsel for Defendant certifies that the foregoing Brief complies with the font and point size requirements of Local Rule 5.1(B).

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **REPLY BRIEF** upon all parties to all counsel through the Court's CM/ECF system.

This January 27, 2026.

/s/ *Jason Waymire*
JASON WAYMIRE
Georgia Bar No. 742602