IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EZRA SMITH,  )<br>  )<br>　Plaintiff,  )<br>  )<br>v.  )<br>  )<br>DEPUTY MONIQUE TRACEY,  )<br>DEPUTY RAUL GOMEZ, DEPUTY  )<br>SHENEQUA JACKSON, and ERICA  )<br>SANCHEZ,  )<br>  )<br>　Defendants.  )  | CIVIL ACTION FILE NO.<br>1:24-cv-05158-TWT |

**DEFENDANT ERICA SANCHEZ'S**
**RESPONSES TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

Defendant Erica Sanchez ("Defendant Sanchez") submits her Responses to Plaintiff's Statement of Material Facts. Because "[e]vidence submitted in support of a summary judgment motion must set out facts that would be admissible under the Federal Rules of Evidence,"[1] Defendant Sanchez submits the following responses.

1.　Plaintiff has a history of mental health disorders and suicidal behavior. Smith Dep. 75:24–76:18, 90:2-9; 91:2-16, 96:7-12.

**RESPONSE: If Plaintiff is offering this statement as proof that he actually suffered from a mental health disorder on July 8-9, 2024, Defendant**

---

[1] *Funderburk v. Fannie Mae*, 654 F. App'x 476, 477 (11th Cir. 2016); Fed. R. of Civ. P. 56(c)(4).

1

**objects as the statements are based on hearsay (out of court statement from some unknown individual regarding the purported diagnosis) and is an improper opinion (to the extent Plaintiff is attempting to provide a self-diagnosis) because the appropriate foundation for expert testimony has not be offered.**

**Defendant agrees that Plaintiff believes that at some point in the past he had a mental health disorder and that he attempted to commit suicide. Defendant disagrees with the remainder of the alleged facts.**

2.  On July 6, 2024, Plaintiff was released from a psychiatric hospital after being treated for suicidal ideations. Smith Dep. 92:1-7.

    **RESPONSE: Defendant objects to these alleged facts because the best evidence of where Plaintiff went, how long he was there, and for what reason he was there are the records, if any, from the purported psychiatric hospital. If Plaintiff contends that being treated for "suicidal ideations" means he was suicidal, Defendant objects to this request because it is speculative, and Plaintiff has not provided an adequate expert foundation for this opinion.**

3.  On July 8, 2024, after his release from treatment, Plaintiff was transported to the Rockdale County Jail to be detained for a for a probation violation. Pittman George Dep. 27:13–28:5.

    **RESPONSE: Defendant agrees with this statement.**

4. On July 8, 2024, Plaintiff was being held in a booking cell with 9 to 10 other detainees. Tracey Dep. 58:19-23; Gomez Dep. 29:18-21.

**RESPONSE: Defendant agrees with this statement.**

5. Eventually, after 1:00 a.m., everyone else in Holding Cell 7 was processed except for Mr. Smith. Tracey Dep. 39:21–40:24; Gomez Dep. 80:21-23.

**RESPONSE: Defendant agrees with this statement.**

6. Plaintiff became increasingly depressed after he was left alone in the holding cell. Smith Dep. at 45:19–25; Tracey Dep. 40:25-41-7. Plaintiff then started to kick the cell door to get the officers' attention. Smith Dep. at 46:10-13. After Plaintiff began kicking the door, Defendant Tracey came to the cell. Id. at 46:10-13.

**RESPONSE: Defendant objects to the alleged fact stating that Plaintiff became "increasingly depressed" because it is inconsistent with Plaintiff's testimony and pursuant to the doctrine of completeness a full review of the context of the statement better explains the alleged facts. As to the remaining facts, Defendant agrees with them.**

7. Plaintiff asked Defendant Tracey why he was the only person in the cell who hadn't been processed and asked if he could make a phone call. Smith Dep. at 47:9–14.

**RESPONSE: Defendant objects these alleged facts because the recitation is inconsistent with the deposition testimony. Defendant refers the Court to the deposition testimony, which is the best evidence of Plaintiff's testimony.**

8. Defendant Tracey told Plaintiff not to kick the door and then told Plaintiff she had spoken with Plaintiff's mother. Id. 47:25–48:12. Defendant Tracey insinuated and gestured to Plaintiff that his mother was crazy. Id. at 48:11–25.

**RESPONSE: Defendant agrees that Plaintiff has paraphrased some of the statements he made during his deposition but refers the Court to Plaintiff's deposition for full context of his statements.**

9. Defendant Tracey then told Plaintiff that he was a "piece of shit," told him to kill himself multiple times, and gestured that he should hang himself. Id. at 48:11-25; Doc. 89-2, Verified Response No. 7 to Defendant Gomez's First Set of Interrogatories. When Plaintiff said he was suicidal, Defendant Tracey told him to do it. Id. at 49:1-3; Gomez Dep. 49:17-25, 50:11-12; 50:13-18.

**RESPONSE: Defendant agrees that Plaintiff has paraphrased some of the statements he made during his deposition but refers the Court to Plaintiff's deposition for full context of his statements.**

10. As shown in the below screen shot, at about 1:28 a.m., Defendant Tracey gestured that Plaintiff should hang himself and told him to commit suicide. Doc. 89-7, Ezra Smith Booking Area 07-09-2024.mp4 at 01:28:41; Smith Dep. 55:2–8. At

4

that point, Defendant Tracey knew that Plaintiff had stated that he was suicidal. Smith Dep. 49:1–3.

**RESPONSE: Defendant objects to Plaintiff's interpretation of the video because the best evidence of what the video shows is the video itself. Defendant further objects to Plaintiff's speculation as to whether Defendant Tracey (or any person) knew he was suicidal.**

**As to the remaining statements, Defendant agrees that Plaintiff has paraphrased some of the statements he made during his deposition but refers the Court to Plaintiff's deposition for full context of his statements.**

11. Defendant Sanchez, a licensed practical nurse working for Napchare through a contract with the jail, was on shift in booking during this time. Sanchez Dep. at 61:6–10.

**RESPONSE: Defendant agrees with this statement.**

12. Defendant Sanchez heard and could see Plaintiff banging on the cell door. Id. at 67:22–68:6.

**RESPONSE: Defendant agrees with this statement.**

13. Defendant Sanchez heard Plaintiff say he was going to kill himself and heard Defendant Tracey respond by telling Plaintiff to kill himself. Id. at 69:12-17; 68:24–69:1.

**RESPONSE: Defendant agrees with this statement but not the citation.**

5

14. Specifically, Defendant Sanchez heard the following exchange between Defendant Tracey and Plaintiff: Defendant Tracey said things like "stop kicking on the fucking door" and being very nasty, Tracey said "your fucking mommy was calling up here asking about you," and in response to Plaintiff stated that he was going to kill himself, Defendant Tracey said "Don't talk about it, be about it. Fucking do it." Doc. 89-11, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 00:40:15.

**RESPONSE: Defendant agrees that Plaintiff has cited to a part of Defendant Sanchez's merit hearing statement. Defendant refers the Court to full merit hearing statement for necessary context about the statement and how quickly things transpired between Plaintiff's statements and the attempt at suicide.**

15. When Defendant Sanchez heard the exchange between Defendant Tracey and Plaintiff, she was at the medical desk of the booking area of the jail. Ex. XXX, Merit Board Hearing - M. Tracey-20240830_100444-Meeting Recording.mp4 at 00:42:56; Sanchez Dep. 72:7-10.

**RESPONSE: Defendant agrees that Plaintiff has cited to a part of Defendant Sanchez's merit hearing statement and her deposition testimony. Defendant refers the Court to full merit hearing statement and deposition**

6

**testimony for necessary context about the statement and how quickly things transpired between Plaintiff's statements and the attempt at suicide.**

16.     Defendant Sanchez knew there was a phone with a phone cord in Plaintiff's holding cell. Sanchez Dep. 103:25–104:2.

**RESPONSE: Defendant agrees with this statement.**

17.     Defendant Sanchez understood that if an officer or Naphcare employee hears a patient verbalizing a desire or intent to commit suicide, she as the nurse on duty is supposed to assesses the patient. Id. at 42:6-10; 43:12-18.

**RESPONSE: Defendant objects to this statement because it is inconsistent with a plain reading and interpretation of Defendant Sanchez's testimony in that it intimates that *she* is the one and only person to assess the patient or that she was required to assess Plaintiff under the then-existing circumstances of this case.**

18.     While Plaintiff was not yet in her "medical queue," in an emergency a nurse is required to attend to an inmate at the jail. Jackson Dep. 45:14–46:2.

**RESPONSE: Defendant objects to this statement because it is inconsistent with a plain reading and interpretation of Defendant Sanchez's testimony in that it intimates that Plaintiff's statements alone were an emergency and that she was required to provide him medical care based on the**

7

communications he had with the deputies. **Defendant further objects to the citations.** *See* **Sanchez Dep. T. 97-100.**

19. Defendant Sanchez knew Naphcare's policies and procedures as part of her job at the jail. Sanchez Dep. at 33:3-6.

**RESPONSE: Defendant agrees with this statement.**

20. According to Naphcare's policy on suicidal intervention "Any staff who hears a patient verbalizing a desire or intent to commit suicide, observes a patient making an attempt or gesture, or otherwise feels a patient is at risk for suicide, will take immediate steps to ensure the patient is continuously observed and prevented from harm until appropriate medical, mental health, and or supervisory assistance is obtained." Doc. 90-1, Naphcare Policy B-05 Suicide Prevention and Intervention § 8, at Napchare000172 (filed under seal).

**RESPONSE: Defendant objects to this statement because it is not a full recitation of the Suicide Prevention and Intervention Policy.**

21. Defendant Sanchez understood that if an officer or Naphcare employee hears a patient verbalizing a desire or intent to commit suicide, she as the nurse on duty is supposed to assesses the patient. Sanchez Dep. at 42:6-10; 43:12-18.

**RESPONSE: Defendant objects to this statement because it is inconsistent with a plain reading and interpretation of Defendant Sanchez's testimony in that it intimates that *she* is the one and only person to assess the**

**patient or that she was required to assess Plaintiff under the then-existing circumstances of this case.**

22. After Defendant Tracey left the cell, Plaintiff called Defendant Jackson using the intercom in the cell. Smith Dep. 57:7–58:9; 58:23–59:17. Plaintiff told Defendant Jackson that he was feeling suicidal. Id. at 57:7–58:9; 58:23–59:17.

**RESPONSE: Defendant objects to this statement to the extent it speculates that Plaintiff knew it was Defendant Jackson who answered the call. As to the remainder of the statements, Defendant agrees with them.**

23. Defendant Tracey told Defendant Jackson to tell Plaintiff to kill himself and then told Defendant Jackson to hang up the intercom. Id. at 57:7–58:9; 58:23–59:17. Defendant Jackson hung up the intercom. Id. Defendant Jackson told Defendant Tracey "forget him" and that he could "bang all night." Tracey Dep. at 41:1-7, 46:4-11.

**RESPONSE: Defendant objects to this request because it contains hearsay statements (Deputy Tracey attempts to offer out of court statements from Deputy Jackson). Defendant further objects to this statement to the extent that Plaintiff intimates that Defendant Sanchez was aware of this information in real time.**

24. After Defendants Tracey and Jackson stopped answering the intercom, Plaintiff began hitting his head against the cell door and then the cell wall. Smith

Dep. at 59:10–17; 61:23–62:2. Plaintiff was kicking and repeating "I'm going to kill myself" and "let me out." Tracey Dep. 49:17–50:6.

**RESPONSE: Defendant objects to this statement to the extent that Plaintiff intimates that Defendant Sanchez was aware of this information in real time.**

25. At 1:30 a.m., a minute after Defendant Tracey left Plaintiff's cell after taunting him to commit suicide, Defendant Sanchez agreed that she could have called a supervisor or someone at the jail to alert them of Plaintiff's threat. Sanchez Dep. 78:11-22.

**RESPONSE: Defendant objects to this statement as it is speculative, and a timely objection was made during Defendant Sanchez's deposition. Defendant further objects to the extent Plaintiff intimates that Defendant Sanchez believed in real time that he was a legitimate risk to commit suicide.**

26. At that time, Plaintiff was still moving in the cell and had not hanged himself yet. Id. at 78:23–79:10.

**RESPONSE: Defendant objects to this statement because it is speculative, and the Court can make its own determination of what the video shows.**

27. At 1:31, two minutes after Defendant Tracey left the area outside Plaintiff's cell, Defendant Sanchez admitted she could have called for help. Id. at 79:20-23.

10

**RESPONSE: Defendant objects to this statement as it is speculative, and a timely objection was made during Defendant Sanchez's deposition. Defendant further objects to the extent Plaintiff intimates that Defendant Sanchez believed in real time that he was a legitimate risk to commit suicide.**

28. Although she had time, Defendant Sanchez did not evaluate Plaintiff, did not speak to anyone at Naphcare or at the Rockdale County Jail about Plaintiff's suicidal ideations, and did not take any steps to ensure Plaintiff was placed on observation. Sanchez Dep. at 72:16–73:9.

**RESPONSE: Defendant objects to this statement because it is inconsistent with a plain reading and interpretation of Defendant Sanchez's testimony in that it intimates that she was required to certain steps and had adequate to complete said steps.**

29. If Defendant Sanchez had placed Plaintiff on medical observation or suicide watch, he would have been moved to a different cell and not have had access to a phone cord with which to hang himself. Id. at 80:20–81:6.

**RESPONSE: Although it is speculative, Defendant agrees that the statement recites a portion – out of context – of her deposition testimony.**

30. But between 1:29 a.m. and 1:34 a.m., when Defendant Sanchez finally ran towards the cell, she did nothing. Id. at 81:22–82:11. There was nothing preventing

11

Defendant Sanchez from calling her supervisor during that five-minute period. Sanchez Dep. at 72:16–73:9.

**RESPONSE: Defendant disagrees with this statement.**

31. After Plaintiff stopped hitting his head against the cell wall, he took the phone cord in the cell, wrapped it around his throat, and hanged himself. Smith Dep. 62:17-25.

**RESPONSE: Defendant agrees with this statement.**

32. When Defendant Sanchez responded to Plaintiff's suicide attempt, she observed that Plaintiff had turned blue and that he didn't have a pulse; his nose was bleeding and he had urinated on himself. Sanchez Dep. at 82:13-18.

**RESPONSE: Defendant agrees with this statement.**

33. Plaintiff's suicide attempt was the first suicide attempt Defendant Sanchez had ever seen. Sanchez Dep. 54:18-22.

**RESPONSE: Although this statement is irrelevant, Defendant agrees with it.**

Respectfully submitted this 23rd day of January, 2026.

                                           */s/Antonio E. Veal*
                                           Michael G. Frankson
                                           Georgia Bar No.: 173835
                                           Antonio E. Veal
                                           Georgia Bar No.: 460007

                                           *Counsel for Defendant Erica Sanchez*

                        HUFF, POWELL & BAILEY, LLC
                        999 Peachtree Street, Suite 950
                        Atlanta, Georgia 30309
                        Telephone: (404) 892-4022
                        Fax: (404) 892-4033
                        Email: mfrankson@huffpowellbailey.com
                        Email: aveal@huffpowellbailey.com

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that the foregoing DEFENDANT ERICA SANCHEZ'S RESPONSES TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS was electronically filed using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

James M. Slater
Slater Legal PLLC
2296 Henderson Mill Road, NE, Number 116
Atlanta, Georgia 30345
james@slater.legal

Jason Waymire
Williams & Waymire, LLC
Bldg. 400, Suite A
4330 South Lee Street
Buford, GA 30581
jason@wmwlaw.com

Timothy Buckley
Eric O'Brien
Buckley, Christopher & Hensel, P.C.
2970 Clairmont Road, NE Suite 650
Atlanta, GA 30329
tbuckley@bchlawpc.com
eobrien@bchlawpc.com

Respectfully submitted this 23rd day of January, 2026.

/s/Antonio E. Veal
Michael G. Frankson
Georgia Bar No.: 173835
Antonio E. Veal
Georgia Bar No.: 460007

14

*Counsel for Defendant Erica Sanchez*

HUFF, POWELL & BAILEY, LLC
999 Peachtree Street, Suite 950
Atlanta, Georgia 30309
Telephone: (404) 892-4022
Fax: (404) 892-4033
Email: mfrankson@huffpowellbailey.com
Email: aveal@huffpowellbailey.com